R. William Potter
Peter D. Dickson
POTTER AND DICKSON
194 Nassau Street, Suite 31
Princeton, NJ 08542-7003
Phone: (609) 921-9555
Fax: (609) 921-2181
Email: rwppddlaw@cs.com
and potterrex@cs.com
Attorneys for the Plaintiffs

**THE UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
TRENTON VICINAGE**

| | |
|---|---|
| BRRAM, Inc., a corporation organized under the laws of the Commonwealth of Pennsylvania, Ms. Holly Bussey, Mr. William Lynch, Mr. Richard DeLello, Ms. Julie Power, Mr. John Giacobetti and Mrs. Jennifer Giacobetti, Ms. Deborah Leamann, Ms. Caroline Bondi, Ms. Delores Brienza, and Mr. Richard Wayne, | : Civil action number<br>: _____<br>: |
| Plaintiffs, | : **COMPLAINT** |
| v. | : |
| United States Federal Aviation Administration (FAA), the Mercer County Board of Chosen Freeholders, and Frontier Airlines, Inc., | : |
| Defendants. | : |

## A. THE PARTIES

    1.  Plaintiff BRRAM, Inc., is a not-for-profit corporation organized under the laws of the

Commonwealth of Pennsylvania, headquartered at 25 South Main Street, Suite # 208, in Yardley,

PA 19067.

2. Individual plaintiff Holly Bussey is a resident of 20 Knoll Drive in Yardley, Bucks County, Pennsylvania, 19067.  Her residence lies beneath the flight path of many of defendant Frontier Airlines' flights from and into TTN.

3.  Individual plaintiff William Lynch is the Treasurer of BRRAM, Inc.,  with his principal place of business at 19 South Main Street in Yardley, PA 19067, also beneath the flight path of Frontier Airlines' flights originating and ending in TTN.  Mr. Lynch resides in Wrightstown Township, Bucks County, PA.

4. Individual plaintiff Richard DeLello is a resident of Bucks County at 1315 Albright Drive, Yardley, PA 19067.  His residence lies beneath the flight path of many of defendant Frontier Airlines' flights from and into TTN.

5. Individual Plaintiff Julie Power is a resident of Bucks County at 3 Harlow Court, Yardley, PA 19067.  Her residence lies beneath the flight path of many of defendant Frontier Airlines' flights from and into TTN.

6. Individual Plaintiffs John and Jennifer Giacobetti are residents of Bucks County at 9 Ludlow Road, Yardley, PA 19067.  Their residence lies beneath the flight path of many of defendant Frontier Airlines' flights from and into TTN.

7. Individual Plaintiff Deborah Leamann is a resident of Mercer County, New Jersey, who resides at 630 Bear Tavern Road, West Trenton, NJ 08628.  Her residence lies beneath the flight path of many of defendant Frontier Airlines' flights from and into TTN.

8. Individual Plaintiff Caroline Bondi is a resident of Mercer County, New Jersey, residing at 630 Bear Tavern Road, West Trenton, NJ 08628.  Her residence lies beneath the flight

path of many of defendant Frontier Airlines' flights from and into TTN.

9. Delores Brienza is a resident of Mercer County, New Jersey, residing a 173 W. Upper Ferry Road, Ewing, NJ 08628. Her residence lies beneath the flight path of many of defendant Frontier Airlines' flights from and into TTN.

10. Individual Plaintiff Richard Wayne is a resident of Bucks County at 115 Windsor Road, Yardley, PA 19067. His residence lies beneath the flight path of many of defendant Frontier Airlines' flights from and into TTN.

11. Defendant The Federal Aviation Administration (FAA) of the United States Department of Transportation (DOT) is an executive agency of the Government of the United States, with its headquarters at 800 Independence Avenue, S.W., in Washington, DC 20591, with the responsible regional office at the Office of the Regional Administrator, Eastern Region, 1 Aviation Plaza, Jamaica, NY 11434-4809:

12. Defendant Mercer County Board of Chosen Freeholders is the governing body of Mercer County in the State of New Jersey and is the owner of the Trenton Mercer Airport ("TTN") located in West Trenton, Ewing Township, NJ 08628. The offices of the Freeholders are in the McDade Administration Building at 640 S. Broad Street in Trenton, New Jersey 08611.

13. Defendant Frontier Airlines, Inc., is a foreign for-profit corporation registered since 2010 to do business in New Jersey and operating as a common carrier at the Trenton Mercer Airport in West Trenton, Ewing Township, NJ 08628. Its main business address is Suite 300, 8909 Purdue Road, Indianapolis, IN 46268, and its registered agent for service of process in New Jersey is Corporation Service Company at 830 Bear Tavern Road, West Trenton, NJ 08628.

B. SUMMARY OF COMPLAINT:

14. This is an action for declaratory and injunctive relief against the United States Federal Aviation Administration (FAA) for its failure to perform the comprehensive environmental impact analysis mandated by the "National Environmental Policy Act" (NEPA) through the preparation of an Environmental Impact Statement (EIS), prior to authorizing the owners and operators of the Trenton Mercer Airport (TTN), the Mercer County Board of Chosen Freeholders (Board), to (1) initially approve and authorize the use of commercial scheduled passenger jet service at an airport where none was in service, (2) authorize and expand commercial scheduled passenger jet service by any and all previous carriers, and (3) authorize and expand commercial scheduled passenger jet service by current carrier, Frontier Airlines, at TTN, located in Ewing Township, Mercer County, New Jersey.

The Plaintiffs seek a judicial order compelling the FAA and the Board to comply with NEPA by promptly commencing the EIS review process and by curtailing operation and expansion of Frontier Airlines passenger service at the TTN until such time as an EIS is prepared, published, subjected to public hearing and comment, and duly adopted, with emphasis on noise impacts and needed mitigation measures.

C. JURISDICTION:

15. This Court has subject matter jurisdiction of the complaint and jurisdiction of the parties to this action:

16. This action is brought before this court pursuant to the law of the United States, specifically section 102 (C) (2) of the National Environmental Policy Act of 1969 (NEPA), 42 U.S.C.A. § 4321, et seq.; the implementing regulations of the FAA, 14 C.F.R. 150, et seq.; the

regulations of the United States Council on environmental quality (CEQ), 40 C.F.R. 1500 , et

seq.; and section 5 of the United States Administrative Procedure Act (APA)),  5 U.S.C.A. § 701,

et seq.

D.  VENUE:

17.  Because all of the defendants reside within or regularly conduct business within the

State of New Jersey, venue is proper in the United States District Court of New Jersey, located in

Trenton.

E.  FACTUAL ALLEGATIONS:

18.  Since at least 1999 various of the Plaintiffs, individually and collectively, together

with many others, have been actively urging the FAA to prepare an Environmental Impact

Statement ("EIS") regarding planned expansion of operations of commercial passenger jet

service into and out of TTN, primarily due to the offensive noise impacts caused by such

commercial airline service.

19.  In November 1999 the FAA sponsored "scoping sessions" to assist in determining

the proper scope of environmental impact and safety reviews of recently announced TTN plans

for expansion and enhancement of the airline terminal which was expressly intended for the

purpose of attracting a low-fare/high-frequency (LF/HF) commercial airline.

20. At that time the LF/HF was intended to be Southwest Airlines.

21. Subsequently the FAA caused to be published a draft environmental assessment

(DEA) which was the subject of a public hearing on June 12, 2002 in Trenton, at which plaintiff

BRRAM members or representatives testified or submitted written comments critical of the

limited scope of the DEA and calling for preparation of a complete EIS prior to the

commencement of LF/HF service by Southwest or by any other air line.

22.  On or about February 23, 2006 (published on April 7, 2006) the Regional Administrator of the FAA released a "Record of Decision" (ROD) inclusive of a "Finding of No Significant Environmental Impact" (FONSI) to explain the FAA decision to adopt the DEA, as amended, and not to prepare an EIS.

23.  In response to issuance of the ROD/FONSI, Plaintiffs BRRAM and Lynch, joined by Bucks' resident Mr. Paul Krupp and the elected Board of Supervisors of the Township of Lower Makefield in Bucks County, PA, filed a formal "Petition for Review" in the United States Court of Appeals for the Third Circuit, captioned "Board of Supervisors of Lower Makefield Township, et al. Petitioners v.  Federal Aviation Administration Respondent," a copy of which is enclosed as Plaintiffs' Exhibit 1.

24.  Following a period of court-ordered mediation, the FAA on or about June 9, 2008 issued a decision captioned "Order Withdrawing Finding of No Significant Impact/Record of Decision dated February 23, 2006 for the Trenton Mercer Airport" (Order) which is enclosed as Plaintiffs' Exhibit 2.

25.  In the Order, the FAA concluded that there was a "change of circumstances" in that the project sponsor, Mercer County, had withdrawn its original plans to expand the TTN terminal and attendant facilities (the subject of the DEA) because Mercer County no longer sought to attract an LF/HF commercial air carrier, such as a Southwest Airlines and, as a result, there was no need to expand or enhance the TTN airport terminal or related facilities.

26. The FAA Order expressed its position that no EIS was made necessary because "to FAA's knowledge no other large commercial air carrier has expressed interest to enter this

market," referring to TTN, and thus there was no "major federal action significantly affecting the environment" which would trigger further compliance with the National Environmental Policy Act ("NEPA"), 42 U.S.C.A. 4321, et seq., and the regulations of the FAA. 14 C.F.R. 150 et seq., through preparation of an EIS.

27. The FAA Order characterized a LF/HF air carrier "as an air carrier with operations similar to those of Southwest Airlines; specifically, section 1.5.2 of the DEA defines a LF/HF air carrier operation as a commercial air carrier characterized by offering low fares with a high frequency of flights to popular business and leisure destinations."

28. The FAA Order explained that "if the airport sponsor [Mercer County] desired to pursue other projects for any purpose in the future, appropriate environment review and full documentation would be required" to obtain FAA approval.

29. The Order added that "based on my consideration of the substantial new information that changed circumstances concerning the purpose and need for the replacement terminal project discussed above as well as my consideration of FAA orders cited above, I [Mr. Murray Weiss, FAA Regional Administrator, FAA Eastern Region] am withdrawing the February 23, 2006 FONSI/ROD ... Should the airport sponsor wish to proceed with any component of the project approved in the now withdrawn ROD, the sponsor must seek FAA approval for that component."

30. Most importantly, the Order stated that if the project sponsor, Mercer County, attracted a LF/HF air carrier, this action "would likely cause sufficient noise impacts that would require the preparation of an environmental impact statement (EIS)." However, because "to date, no LF/HF air carrier is operating at TTN and, to the FAA's knowledge, no LF/HF air carrier has recently expressed interest in starting operations at TTN," no EIS was needed in order to satisfy

NEPA requirements.

31. "Finally," the Order stated that "an Environmental Assessment [EA] remains valid for 3 years in the absence of major steps to implement a project.  Therefore in approximately 9 months ... [by February 9, 2010] the TTN EA would need to be reevaluated, at the very least to ensure that environmental analyses are accurate, valid, adequate, and current."

32.  To date, on information and belief, no such reevaluation of the EA has been performed or even commenced.

33.  Since issuance of the Order on June 9, 2008, Mercer County has succeeded in attracting Frontier Airlines, a LF/HF air carrier, to commence and expand commercial passenger operations at TTN.

34.  Mercer County has also embarked upon a federally-assisted series of capital improvement programs for the express purpose of facilitating Frontier Airlines efforts to operate and to further expand operations.

35.  The LF/HF operations of Frontier Airlines have caused, are causing, and will continue to cause "sufficient noise impacts that would require the preparation of an environmental impact statement," as the FAA projected they would in the FAA Order of June 9, 2009.  However, the FAA has not commenced any environmental analysis of the impacts of Frontier's LF/HF operations.

36.  Frontier Airlines operations at TTN constitute the equivalent of a Southwest Airlines LF/HF with attendant increased noise and other environmental impacts substantially affecting the human and natural environment, including extensive noise caused during takeoffs and landings over and above the Plaintiffs' homes, businesses, schools, and recreation areas that lie within the

flight path into and out of TTN.

37.  By April of 2013, Frontier was already providing at least 47 flights per week into and out of Trenton Mercer Airport to the following destinations: Fort Myers, Florida; Fort Lauderdale, Florida; Orlando, Florida; Tampa, Florida; New Orleans, Louisiana; Atlanta, Georgia; Chicago, Illinois; Columbus, Ohio; Detroit, Michigan; and Raleigh, North Carolina.

38.  In order to further expand LF/HF operations Frontier has loaned or will loan Mercer County sizable sums of money, including $450,000 to provide improvements to the passenger terminal, $3 million for a new parking facility, and $300,000 for improvements to the airport's taxiways, roads and ramps.

39.  Moreover, the FAA and the United States Congress have provided or will provide substantial federal funding for various capital improvement projects at TTN for the express or implied purpose of facilitating Frontier Airlines and its ambitious LF/HF commercial ventures, thereby "federalizing" these projects.

40.  Among these FAA-financed projects at TTN intended to facilitate Frontier Airlines operations as an LF/HF are the following:

– a.  $880,000 for the purchase of an emergency response vehicle to help the airport to improve its emergency response preparation as Frontier Airlines expands operations at TTN;

– b.  $8,550,000 for the construction of a parallel taxiway necessitated for the safe operation of Frontier Airlines;

– c.  $427,500 for the construction of a connector taxiway to the terminal apron and associated lighting;

– d.  $665,000 for improvement to a connector taxiway and associated lighting to

complete a full parallel taxiway;

– e. $6,650,000 to complete a full parallel taxiway for the north side of the Ttn terminal.

41. To summarize the list of federally-financed capital improvements necessitated by Frontier Airlines operations at the airport are (1) taxiway lengthening and improvements as ordered by the FAA to safely accommodate the planes used by Frontier; (2) installing an engineering materials arrestor system (EMAS), also necessitated by Frontier; (3) expanding the surface parking lot to handle increased patronage due to Frontier; (4) terminal passenger improvements to assist expanded Frontier passenger service.

42. In addition, recently the Mercer County Executive announced that Frontier will expand and may have expanded service to provide 3 additional nonstop flights to Cincinnati, Ohio, and four nonstop flights to Charlotte, North Carolina, all commencing on February 12, 2014.

43. On information and belief, Frontier Airlines has continued to expand operations as a LF/HF beyond the list of flights and destinations specified in this complaint, and now includes service to the following additional cities: Cleveland, Ohio; Milwaukee, Wisconsin; Minneapolis/St. Paul, Minnesota; Indianapolis, Indiana; St. Louis, Missouri; Nashville, Tennessee; Raleigh/Durham, North Carolina; St. Augustine/Jacksonville, Florida.  See Plaintiffs' Exhibit 3, Frontier.com website.

44. Individually and collectively, the Plaintiffs are suffering and will suffer injury in fact due to the environmental impacts of current and expanded operations of Frontier Airlines which include multiple, daily takeoffs and landings, early morning and late night, in the direction of, at low altitude over and above Bucks County homes, businesses, schools, and other public

Page 10 of  16

facilities, which are located only a few miles away from TTN across the Delaware River, thereby causing excessive and substantial noise and other pollution. Therefore, Plaintiffs have standing to sue.

45.  On April 24, 2013 and October 31, 2013, plaintiff BRRAM wrote to the FAA Regional Administrator setting forth detailed objections to the Frontier Airlines operations and seeking NEPA compliance by the FAA.  Copies of these letters are attached as plaintiff's Exhibits 4 and 5, respectively.

46.  The FAA Regional Administrator replied to the April 24, 2013 letter in a letter dated May 28, 2013 (FAA Letter), a copy of which is included as plaintiff's Exhibit 6. (To date, there has been no FAA reply to the plaintiff's October 31, 2013 letter.)

47.  Although the FAA Letter conceded that "an amendment of an air carrier's operations specifications (Ops Specs) is a major Federal action that is subject to NEPA" it did not address how or whether the FAA intended to comply with NEPA prior to granting approval of the Ops Specs for Frontier to utilize TTN as its new "hub."

48.  The FAA Letter further stated that in "in order to approve an amendment to add an airport to an airline's Ops Specs, the FAA must find the airline has demonstrated that it can safely and efficiently operate to/from that airport," but made no mention of the FAA performing any environmental impact analysis whatever.

49.  The FAA Letter goes on to state that "at the time Frontiers Ops Specs were amended to add Trenton Airport, the FAA believed that the approval was subject  to a Categorical Exclusion" from the requirements of NEPA, but without citation to any of the possible Categorical Exclusions provided in the FAA regulations; see, e.g., FAA Order 1050.20, 5050.4B

(Table 6-1), 1050.1E (Ch. 3).

50.  Nor does the FAA Letter explain how the FAA reached its conclusion that its approval of amended Ops Specs for Frontier was properly excluded from any environmental impact analysis; nor was a copy of any such Categorical Exclusion ruling provided.

51.  The FAA Letter concluded that "once an airport has been added to the airline's Ops Specs, under the Airline Deregulation Act of 1978, the airline is free to determine the level of service provided at that airport without any further FAA approval."

52.  The foregoing  statement implies that even though the FAA has determined that the Ops Specs amendment for Frontier is a "major federal action," presumptively subject to NEPA, Frontier Airline's operations are exempt from any NEPA review no matter how many flights into or out of TTN airport are added by Frontier.

F .  ALLEGATIONS OF LAW:

**The FAA's grant of a "Categorical Exclusion" for Frontier Airlines' Operational Specifications amendment violates NEPA, contravenes the FAA's regulations and is arbitrary and capricious:**

53. The Plaintiffs incorporate by reference the allegations of paragraphs 1 through 52 as if set forth verbatim herein.

54.   In the FAA Letter, the FAA Regional Administrator reported that FAA approval of an amendment to a commercial airliner's Ops Specs is a "major Federal action," which determination triggers the commencement of an Environmental Assessment (EA) and NEPA compliance.

55.  The term "major Federal action is defined by the Council on Environmental Quality

Page 12 of  16

("CEQ") as " actions with effects that may be major and which are potentially subject to federal control and responsibility. Major reinforces but does not have a meaning independent of significantly (section 1508.27)...." 40 C.F.R. 1508.18.

56.  The CEQ regulations further clarify that "federal actions tend to fall within one of the following categories: ... (4) approval of specific projects, such as construction or management activities located in a defined geographic area. Projects include actions approved by permit or other regulatory decision as well as Federal and federally assisted activities." 40 C.F.R. 1508.18 (b) (4)

57.  "'Significantly' as used in NEPA requires consideration of both context and intensity," including "(a) context. This means that the significance of an action must be analyzed in several contexts such as society as a whole (human, national), affected region, the affected interest, and the locality.  Significance varies with the setting of the proposed action for instance, in the case of a site specific action, significance would usually depend upon the effects in the locale rather than the world as a whole. Both short and long term effects are relevant." 40 C.F.R. 1508.27 (a).

58.  "Intensity" include "(1) impacts that may be both beneficial and adverse. A significant effect may exist even if the Federal agency believes that on balance the effect will be beneficial. ... (4) the degree to which the effects on the quality of the human environment are likely to be controversial ... (7) whether the action is related to other actions with individually insignificant but cumulatively significant impacts. Significance exists if it is reasonable to anticipate a cumulatively significant impact on the environment. Significance cannot be avoided by terming an action temporary or by breaking it down into small component parts...." 40 C.F.R.

1508.27.

59.  Accordingly, a major Federal action which significantly affects the human environment requires the reviewing FAA, as the lead federal agency, promptly to comply with the NEPA by commencing the environmental analysis process which may conclude with the preparation of an EIS.

60.  The FAA failed to comply with NEPA and its own NEPA regulations by arbitrarily and capriciously granting a "Categorical Exclusion" for the "major Federal action" of approving Frontier Airlines operational specifications ("Ops Specs") for use of Trenton Mercer airport without consideration of the environmental impacts of Frontier's expanded and expanding LF/HF passenger service at TTN.

61.  A Categorical Exclusion is defined as "the category of actions which do not individually or cumulatively have a significant effect on the human environment and which have been found to have no such effect in procedures adopted by a Federal agency and implementation of these regulations and for which therefore, neither an environmental assessment nor an environmental impact statement is required...." 40 C. F.R. Part 1508, Sec. 1508.4, et seq.

62. The FAA's Categorical Exclusion of the amended Ops Specs approved for Frontier Airlines has enabled Frontier Airlines to operate as a LF/HF commercial air carrier using Trenton Mercer airport without any environmental impact analysis, even though the FAA previously determined in its June 9, 2008 Order that operation of an LF/HF airliner at TTN would likely cause sufficient noise impacts to require preparation of an EIS.

G.  Judicial relief / Remedies:

WHEREFORE, Plaintiffs petition this Honorable Court to issue an Order:

Page 14 of  16

1. Enjoining Frontier Airlines from any increase or expansion of service beyond current service levels at TTN until such time as the FAA has prepared, or caused to be prepared an Environmental Assessment (EA) which may result in the preparation of an Environmental Impact Statement (EIS) pursuant to the requirements of NEPA and implementing regulations.

2. Enjoining the owner / operator of TTN, the Mercer County Board of Chosen Freeholders, from taking any action which is for the purpose of facilitating or enabling Frontier to increase or expand service at TTN until the requirements of NEPA are satisfied.

3. Compelling the FAA to prepare or cause to be prepared an EA which may result in an EIS and will address the full range of environmental impacts, including, inter alia, noise and community disruption and potential mitigation measures resulting from or caused by Frontier Airlines use of TTN at current and anticipated levels of service.

4. Retaining jurisdiction of the case to ensure compliance.

And

5. Such other relief or remedies as may be Just and Equitable under the circumstances.

Date  4-28-14

Respectfully submitted,

POTTER AND DICKSON

By  R. William Potter

R. William Potter
194 Nassau Street, Suite 31
Princeton, NJ 08542-7003
Email addresses: rwppddlaw@cs.com
and potterrex@cs.com
Telephone: (609) 921-9555
Fax: (609) 921-2181

Page 15 of 16

## CERTIFICATION

I hereby certify that the matter in controversy is not the subject of any other court, arbitration or administrative proceeding.

Date 4-28-14

R. William Potter
Attorney for the Plaintiffs