United States Court of Appeals
for the Third Circuit

FILE COPY

| | |
|---|---|
| The Board of Supervisors of Lower Makefield Township, et al. Petitioners, | ) ) ) |
| v. | ) ) Petition for Review |
| Federal Aviation Administration Respondent | ) ) ) |

    1.  The Board of Supervisors of the Township of Lower Makefield, Bucks County, the Commonwealth of Pennsylvania; The Bucks Residents For Responsible Airport Management ("BRRAM"); and William G. Lynch, Jr., and Paul E. Krupp, individually and as officers of BRRAM; (hereafter "Petitioners") hereby petition the court for review of the Order of the Regional Administrator of the Federal Aviation Administration Eastern Region (600 Old Country Rd., Suite 446, Garden City, NY 11530) as published on or about April 7, 2006 (dated February 23, 2006), and directed to Mr. Justin Edwards, Airport Manager, of the Trenton Mercer Airport in West Trenton, Ewing Township, NJ 08628 in which the Regional Administrator issued a "Finding of No Significant Impact" ("FONSI")/ Record of Decision for the Construction of a New Replacement Terminal and other Capital Projects included in the Capital Improvement Plan at Trenton Mercer Airport.  A copy of the Order is appended hereto.

    2.  Jurisdiction:

    a.  The Court of Appeals of the Third Circuit has subject

1

Exhibit 1

matter jurisdiction to hear and decide this petition for review pursuant to 49 U.S.C.A. § 46110(a) which provides in relevant part as follows:

> [A] person disclosing a substantial interest in an order issued by the Secretary of Transportation (or the Administrator of the Federal Aviation Administration ... may apply for review of the order by filing a petition for review in the United States Court of Appeals for the District of Columbia or in the court of appeals of the United States for the circuit in which the person resides or has its principal place of business.

b. The Petitioners assert and disclose a "substantial interest in [the] order" appealed from. Petitioners both reside and have their "principal place of business" within the region administered by the Third Circuit. The Board of Supervisors are the elected officials of Lower Makefield Township which is a township within Bucks County in Pennsylvania. The officers of BRRAM and the majority if not entirety of BRRAM members are residents of Lower Makefield Township, Bucks County or elsewhere within Bucks County.

c. The substantial interest of the Petitioners:

(1) Board of Supervisors of Lower Makefield Township:

The Board of Supervisors is the elected governmental body by and for the residents of Lower Makefield Township ("the Township") with authority to act in their official capacity on behalf of the Township and its residents. The Supervisors, all of whom reside in the Township, are:

2

Steve Santarsiero, Chairman

Ronald Smith, Vice Chairman

Greg Caiola, Secretary/Treasurer

Grace Godshalk, Supervisor

Pete Stainthorpe, Supervisor

On May 3, 2006, the Supervisors, in an open public meeting, heard testimony and engaged in discussion and deliberation prior to voting unanimously to authorize and direct that the undersigned attorneys file an appeal with the Third Circuit Court of Appeals in Philadelphia to petition for review of the above-captioned Record of Decision and "Finding of No Significant Impact" ("FONSI").

The FONSI which is the subject of this petition addressed the FAA's review of a Draft Environmental Assessment ("DES")prepared by DMJM + Harris, Inc., (formerly Frederick R. Harris, Inc.) and concluded that the FAA may proceed to approve and underwrite the proposed capital enhancement and expansion program for the Trenton Mercer Airport ("TTN"), involving the construction of a new terminal building for the TTN and other enhancements which in turn are for the purpose of safely meeting current and projected growth in the usage of the TTN for commercial passenger and cargo service.  The FONSI represents the FAA's final determination that the TTN projects will cause "no significant impact" on the human or natural environment and,

3

therefore, the projects may proceed without the necessity of first preparing, considering and adopting an Environmental Impact Statement ("EIS") pursuant to the National Environmental Policy Act ("NEPA"), 42 U.S.C.A. 4321, et seq., and the regulations of the FAA. 14 C.F.R. s 150 et seq.

Lower Makefield Township disputes the finding of no significant impact.  Since at least 2002 the Township has been active in seeking to persuade the FAA (1) to conduct an EIS and to perform a Comprehensive "Part 150" Noise Compatibility Study of the impact of the commercial aircraft which will use TTN upon completion of a new terminal buildings and other capital improvements intended for TTN, and (2) to prepare an EIS prior to rendering any determination with respect to the TTN projects.  In furtherance of such active engagement, representatives of the Township have filed written comments and testified orally at the public hearing held on June 12, 2002 regarding the draft Environmental Assessment ("DES") for the terminal enhancement and capital improvement program at TTN.

The homes, schools, playgrounds, parks, governmental and cultural facilities, and businesses of Township residents are located directly beneath one of the primary flight paths of aircraft using the TTN which is located in Mercer County, New Jersey and is within one mile of the Township on the eastern side of the Delaware River.  Therefore, the government and residents

4

of the Township are directly impacted by the TTN operation and commercial jet service flight paths.

Based on historical experience to date and as planned for the future expansion of the TTN operations, the residents of the Township will continue to be impacted adversely by overflights, both incoming and departing, due to the commercial jet aircraft which will make use of the new TTN terminal and other capital developments intended for the airport both for passenger service and for expanded cargo and corporate jet service.

Accordingly, the government and residents of Lower Makefield Township have a "substantial interest" in the within petition seeking review of the FONSI and the determination by the FAA to not prepare an EIS prior to approving the TTN terminal and capital improvement projects.

(2) Petitioner Bucks Residents For Responsible Airport Management ("BRRAM"): Co-petitioner BRRAM is an unincorporated association of persons who reside in Bucks County, including but not limited to Lower Makefield Township.

Mr. Lynch is the Treasurer of BRRAM with his principal place of business at 19 South Main Street in Lower Makefield Township, Yardley, PA 19067.

Mr. Krupp is a resident of Lower Makefield Township with his principal residence at 1171 University Drive, Yardley, PA 19067.

Based on their residence and business location under the TTN

flight path, BRRAM and its members, including but not limited to Mr. Lynch and Mr. Krupp, have a "substantial interest" in the matter appealed from.

BRRAM and its members, individually and collectively, have been active in seeking an EIS of the impacts of the TTN capital improvement program since at least November, 1999 when they testified at the "scoping" session to assist in determining the "scope" of environmental and safety reviews of the plans for TTN terminal expansion and enhancement.  At the public hearing on the draft Environmental Assessment ("DES") on June 12, 2002, BRRAM and its members, including but not limited to Mr. Krupp, provided oral testimony and filed written comments at that time and during the official "comment period" thereafter.[1]

Due to the potential and actual impacts of commercial jet aircraft traffic and overflights, BRRAM, its officers and members, have a "substantial interest" in the outcome of this petition.

3.  The nature of the proceedings as to which relief is sought:

Petitioners seek judicial review and reversal of the FAA's administrative determination to issue a Finding of No Significant Impact ("FONSI") pursuant to NEPA and the FAA's implementing

---

[1]     Mr. Lynch attended the public hearing, but was not permitted to testify orally, ostensibly due to time limitations, but he submitted written comments.

regulations.   The FONSI rejects the positions asserted by the Petitioners, which were amply supported in the record.   In particular, the Petitioners aver as follows:

a. The proposed terminal expansion and capital improvement program for TTN will have a significant impact on the petitioners due to the intended and potential usage of the terminal and other capital improvements for increased usage of the facilities leading to increased overflights affecting the Petitioners with noise and pollution; and

b. Because the Environmental Assessment on which the FONSI is based is inadequate, the FAA should be directed to conduct a full environmental impact study and to draft, circulate, adopt and consider an Environmental Impact Statement ("EIS") consistent with the requirements of NEPA and the FAA's regulations prior to rendering a determination to approve or reject the proposed TTN terminal enhancement and capital improvement program for the TTN airport.

The gravamen of the petition is that the FONSI fails to consider or to consider adequately several important facts and factors which the Township and the members of BRRAM forcefully and timely brought to the attention of the FAA, including but are not limited to the following:

(1)   The FONSI and Final Environmental Assessment arbitrarily limited the scope of the FAA review to what it

characterizes as "Build Alternative 1," which it defines narrowly as a "two-gate, 44,000 square foot [terminal] that meets existing and future needs but does not accommodate a LF/HF [Low Fare/High Frequency] commercial carrier."  The FAA has acknowledged that attraction of a LF/HF to TTN will require preparation of an EIS with accompanying noise impact studies and other environmental and safety reviews.  The record does not justify the the selection of the Build Alternative 1 ("BA-1"), which BA-1 contradicts the fundamental reasons for which TTN representatives and the Mercer County Executive asserted that the new terminal and associated facilities were necessary: i.e., "to accommodate a LF / HF commercial carrier" such as a Southwest Airlines to establish service into and out of TTN.

(2)   The FONSI relies on a single letter dated January 24, 2001, from the Mercer County Executive as the putative basis for its determination that the TTN has chosen Build Alternative 1 and will not seek to attract a high frequency commercial carrier to use TTN.  This letter has no legal enforcement authority and does not prevent TTN from negotiating with and attracting such a LF/HF carrier at any time in the future.

(3)   The FONSI provides no basis for its determination that the construction of a new two-gate 44,000 square foot terminal will not attract and "accommodate" a LF /HF nor that what is anticipated as "normal growth" in TTN usage will not become the

8

functional equivalent of high frequency usage of TTN and the new terminal building, with consequent environmental impacts sufficient to require an EIS.

(4)   The FONSI has not provided a basis for its determination that the new terminal building is reasonably necessary to meet current passenger traffic or normal growth in such passenger usage, without accommodation of a high volume air carrier or equivalent carriers to TTN.

(5)   The FONSI has not provided a basis for its determination that the current terminal buildings must be replaced with a new 44,000 square foot building, in order to provide improved seating, waiting area, air conditioning and heating, and other minor repairs, and that reasonable repairs cannot be made more cost effectively in order to meet current or expected incremental growth in air service into and out of TTN without the risk of the new terminal building attracting a LF/HF.

(6)   The FONSI contains no legally enforceable prohibition or condition against TTN attempting to arrange for a LF/HF commercial air carrier to use the new terminal building and other TTN improvements without the necessity of TTN or FAA first preparing an EIS.

(7)   The FONSI does not address the cumulative environmental impacts of the TTN enhancement and capital improvements project particularly as these relate to or are

derived from a long history of the FAA approving and funding numerous incremental improvements to TTN without first examining their environmental impacts, both individually and cumulatively, and as they relate to the continuing growth in private and corporate air traffic into and out of TTN.

(8)   Further grounds for rejecting the FONSI are set forth in the comprehensive comments filed by the Township on July 12, 2002 and incorporated by reference herein.

4.   Venue: Venue is properly in the Court of Appeals for the Third Circuit pursuant to 49 U.S.C.A. 46110(a), which provides in relevant part that venue of a proceeding under this section is in the court of appeals of the United States for the circuit in which the person resides or has its principal place of business...."

a.   Residence of the Petitioners:

Co-petitioners Lower Makefield Township, BRRAM and its membership reside in Bucks County, Pennsylvania, within the geographic area of the Third Circuit.

b.   The subject of the decision appealed from:

Trenton Mercer Airport ("TTN") is located on Sam Weinroth Drive in Ewing Township, New Jersey, within the geographic area of the Third Circuit with its terminal building.  TTN is owned by the County of Mercer, New Jersey, and the County's principal offices are located in the McDade Admin. Building at 640 South Broad Street in Hamilton Township, with a mailing address as PO Box

10

8068, Trenton, New Jersey 08650-0068.

    b. Location of the impacts:

    The environmental impacts associated with the proposed TTN projects are within the local area of Lower Makefield Township, Bucks County and Mercer County, New Jersey.

    5. The relief prayed for:

    The petitioners respectfully request that the court reverse and remand the FONSI for the purpose of directing the FAA to reconsider the issuance of the FONSI, to conduct a full environmental impact study and to prepare an environmental impact statement in accordance with NEPA and the FAA's regulations which will adequately address the objections filed by the petitioners and other parties to the proposed TTN expansion projects.

    6. Filing fee:  The required filing fee of $450.00 is herewith submitted.

 

R. William Potter
Attorney for Petitioners
Potter and Dickson
194 Nassau Street, Suite 32
Princeton, NJ 08542-7003
Telephone: (609) 921-9555
Fax: (609) 921-2181

Certificate of Service

     I hereby certify that I have served a copy of the foregoing Petition for Review by certified mail, return receipt requested, upon the following this 6th day of June, 2006:

The Honorable Alberto R. Gonzales
Attorney General of the United States
950 Pennsylvania Ave. N.W.
Washington, DC 20530-0001

and

The United States Attorney
615 Chestnut Street, Suite 1250
Philadelphia, PA 19106

and

Federal Aviation Administration
Administrator
800 Independence Avenue S.W.
Washington, DC 20591

and

Federal Aviation Administration Eastern Region
New York Airports District Office
600 Old Country Road, Suite 446
Garden City, NY 11530


                                          _____
                                          R. William Potter

# ORDER WITHDRAWING
## Finding of No Significant Impact/Record of Decision (FONSI/ROD)
### dated February 23, 2006
### for the
### Trenton-Mercer Airport (TTN)
### Terminal Replacement and Other Projects in the Capital Improvement Program

This Order withdraws the Finding of No Significant Impact/Record of Decision (FONSI/ROD) issued by the Federal Aviation Administration (FAA) on February 23, 2006. The FAA issued the FONSI/ROD subsequent to its independent review of the Environmental Assessment and its Appendices ("the EA") for the Trenton-Mercer County Airport (TTN) *Construction of a New Replacement Terminal and Other Projects in the TTN Capital Improvement Program* ("the project"). The EA was issued pursuant to the National Environmental Policy Act of 1969 (NEPA), Council on Environmental Quality (CEQ) Regulations, and other applicable laws, FAA Orders, regulations and policies. The EA assessed the potential environmental impacts associated with the project, which is described in detail below. The FONSI/ROD was issued pursuant to 49 U.S.C. §40101 et.seq. (Part A) and 49 U.S.C. §47101 et.seq. (Part B) and constitutes a final order of the Administrator subject to review by the courts of appeals of the United States, pursuant to 49 U.S.C. §46110.

## Project Description

The ROD allows for the construction of a new 44,000 square foot terminal building accommodating two aircraft gates to replace the existing two-gate terminal; expanded apron area; realignment of existing airport terminal access road; additional automobile parking spaces (proposed northern and southern parking areas); demolition and removal of the existing Tennis Center (for southern parking area); new snow removal equipment and storage building; and taxiway improvement plan (including relocation of Taxiway D, widening Taxiway B and F, extension of Taxiway F to Runway 24, extension of Taxiway J to Taxiway B, and the addition of connectors to Runway 6/24 and the Terminal Ramp, Taxiway E to H connector; and Taxiway G connector.)

## Background

In early 1998, TTN requested FAA funding and Airport Layout Plan (ALP) approval for replacement of its terminal and other capital improvement plan (CIP) projects. In 1999, after considering and discussing this request with the airport sponsor, the FAA determined that an EA should be prepared to evaluate current conditions and analyze the impact of recent past and potential foreseeable future projects at TTN. On April 13, 2000, the airport sponsor submitted the draft EA to the FAA for review and comment.

During the preparation and review of the environmental analyses for this project, the purpose and need for the project changed. At various times during this process, TTN/Mercer County expressed interest in developing increased air carrier service at TTN. In fact, one of the alternatives analyzed during the NEPA process proposed a new, four-gate terminal facility. TTN described the purpose and need for this alternative, in part, as enabling it to accommodate the entry of a low fare/high frequency (LF/HF)[1] air carrier into the TTN

---

[1] A low fare-high frequency (LF/HF) air carrier is an air carrier with operations similar to those of Southwest Airlines. Specifically, Section 1.5.2 of the EA defines a LF/HF air carrier operation as "a commercial air carrier

Exhibit 2

market.  This terminal design alternative encompassed 64,000 square feet of terminal space and four aircraft gates. Thereafter, but still during the NEPA process, TTN advised the FAA that it was no longer interested in pursuing the four-gate alternative.  Rather, it was interested in pursuing a two-gate replacement alternative, the project described above.[2]  This change in purpose and need required major modifications to the draft EA documentation.  The FAA advised TTN that, in the interest of transparency and full compliance with applicable laws and regulations, the four-gate terminal alternative and its analyses should be included in the EA. This alternative is referred to as the "Build Alternative 2".[3]

The final draft Final EA was transmitted to the FAA on December 19, 2001. On March 11, 2002, the FAA provided the airport sponsor with its official comments and acknowledged that the sponsor was no longer interested in pursuing "Build Alternative 2". Therefore, while the final draft EA did include the analysis for the "Build Alternative 2" project *and* the potential impacts of the entry and operation of a LF/HF air carrier, the County's preferred alternative was the 44,000 square foot replacement terminal building accommodating two aircraft gates (also referred to as "Build Alternative 1"). This alternative is a "replacement terminal project" and reflects the fact that the airport sponsor no longer anticipated the entry of a LF/HF air carrier into the TTN market.[4]

The final draft EA was made available to the public via Public Notice on May 9, 2002 for a 60-day comment period including a public hearing held on June 12, 2002.  The preliminary final EA, which included responses to comments, was transmitted to FAA on November 1, 2002.  While undergoing FAA review, the County, via Public Notice on February 10, 2003, initiated an additional ten-day public comment period.  On August 29, 2003, FAA received the final appendices to the preliminary final EA that included additional comments and responses.   The FAA once again conducted an independent review of the NEPA documentation submitted for this project. The document still required additional information, modification, and coordination with other agencies.

Finally, in February, 2006, after all required information was obtained and agency coordination was completed, the FAA issued a FONSI/ROD approving the airport sponsor's preferred alternative/"Build Alternative 1". Based on the facts and circumstances at the time, as documented in the administrative record, the FONSI/ROD was accurate, well supported, and warranted. The FONSI/ROD made it clear that if the airport sponsor desired to pursue other projects for any purpose in the future, appropriate environmental review and documentation would be required.

---

characterized as offering low fares with a high frequency of flights to popular business and leisure destinations....A LF/HF commercial carrier typically starts up a new market like TTN with a minimum of 10 flights per day. LF/HF commercial air carriers also typically exhibit relatively high load factors (percent of seats occupied) from the start due to the low fares and wide selection of destination choices."

[2] Letter from Robert D. Prunetti, Mercer County Executive to Philip Brito, Manager, FAA New York Airports District Office, dated January 24, 2001

[3]  The analyses of Build Alternative 2 revealed that [that] alternative would likely cause [sufficient] noise impacts that would require the preparation of an Environmental Impact Statement (EIS).

[4]  To date, no LF/HF air carrier is operating at TTN and, to the FAA's knowledge, no LF/HF air carrier has recently expressed interest in starting operations at TTN.  Additionally, as of early 2006, several commercial service airlines have commenced and ceased operations, or reduced the number of operations into and out of TTN. These carriers include Shuttle America, Boston-Maine Airways (PanAm), Big Sky, and Comair (Delta).

**Current Status and Changed Circumstances**

In making my decision to withdraw the February 23, 2006 FONSI/ROD, I have considered the changed status of the replacement terminal project and substantial new information that has been brought to my attention.

Specifically, it is the FAA's understanding that to date, the airport sponsor has taken no major steps to implement the project, nor does it have any plans to do so. By letter dated April 25, 2008, FAA requested Mercer County Counsel to provide information with respect to the implementation of the replacement terminal project. FAA specifically asked whether the County had initiated major steps to implement the replacement terminal project or, if no major steps had been taken, whether the County had any plans to begin work on the replacement terminal project prior to February 23, 2009. By letter dated April 29, 2008, Mercer County Counsel advised the FAA that it has no plans for the replacement terminal at this time. Additionally, to FAA's knowledge, no other large commercial air carrier has expressed interest to enter this market. Finally, pursuant to FAA Orders 5050.4B and 1050.1E,[5] an EA remains valid for three years in the absence of major steps to implement a project. Therefore, in approximately nine months (of which, only about five months could be considered "construction season" for the project), and in the absence of major steps to implement the project, the TTN EA would need to be reevaluated, at the very least to ensure that environmental analyses are accurate, valid, adequate, and current.

Based on my consideration of this substantial new information and the changed circumstances concerning the purpose and need for the replacement terminal project discussed above, as well as my consideration of FAA Orders cited above, I am withdrawing the February 23, 2006 FONSI/ROD. Accordingly, all FAA actions approved in the FONSI/ROD are also withdrawn. Should the airport sponsor wish to proceed with any component of the project approved in the now-withdrawn ROD, the sponsor must seek FAA approval for that component.

_David Ore_

Manny Weiss
FAA Regional Administrator
FAA Eastern Region

<u>JUN   9 2008</u>
Date

This decision is taken pursuant to 49 U.S.C. §40101 et.seq. (Part A) and 49 U.S.C.§47101 et.seq. (Part B), and constitutes a final order of the Administrator which is subject to review by the courts of appeals of the United States in accordance with the provision of 49 U.S.C. §46110.

---

[5] FAA Order 5050.4B, *National Environmental Policy Act (NEPA) Implementing Instructions for Airport Actions*, Paragraph 1401(c)(1) and FAA Order 1050.1E, *Environmental Impacts: Policy and Procedures*, Paragraph 402b.(1)



 Editor **Greta Cuyler** **greta.cuyler@patch.com**           Like 1.5k

# PrincetonPatch  ☀ 79°

| **Home** | **News** | **Events** | **Directory** | **Pics & Clips** | **Commute** | **Real Estate** | **More** |



News

# Frontier Airlines Announces Expansion at Trenton-Mercer Airport

The Denver-based airline adds routes to Fort Lauderdale, Fort Myers, New Orleans and Tampa.

November 15, 2012

Recommend  2      Tweet  1          **Email**          **Print**          **Comment**

Related Topics: **Frontier Airlines** and **Trenton-Mercer Airport**



Frontier Airlines announced on Thursday it will expand its low-fare service at Trenton-Mercer Airport, with the add launching in late January and early February 2013.

In addition to service to Orlando, Fla., Frontier will now fly to Fort Lauderdale, Fort Myers, New Orleans, and Tan through Nov. 29 at www.flyfrontier.com

Exhibit 3

4/9/2013 12:54 PM

Case 3:14-cv-02686-PGS-DEA   Document 1-1   Filed 04/28/14   Page 17 of 35 PageID: 33

- Tampa service will begin Jan. 31, 2013 with flights on Tuesday, Thursday and Saturday.
- New Orleans service will begin Feb. 1, 2013 with flights on Monday and Friday.
- Fort Lauderdale service will begin Feb. 2, 2013 with flights on Monday, Wednesday and Saturday.

Frontier will also increase service to Orlando from two weekly flights to four beginning Feb. 1, 2013. Flights will b
Sunday.

Frontier executives joined county officials at Trenton-Mercer Airport to make the announcement this morning.  Th
that it will base an Airbus A319 aircraft at the airport to operate the new service.

"Frontier is the right partner at the right time. We are confident the traveling public will embrace these new destin
County economy will get an added boost,"  Mercer County Executive Brian Hughes said.

**Email me updates about this story.**                          Keep me posted

Recommend  2        Tweet  1          **Email**          **Print**

Follow comments          **Submit tip**           **Comment**

## Leave a comment

Submit ›

ched In

ws, events, and deals sent to you daily and
s as it happens. **See more options**

**Terms of Service**  **Privacy Policy**

POTTER AND DICKSON

ATTORNEYS AT LAW

194 NASSAU STREET

PRINCETON, NEW JERSEY 08542

(609) 921-9555

R. WILLIAM POTTER
MEMBER N.J. AND CA. BARS

PETER D. DICKSON
MEMBER N.J. AND D.C. BARS

TELECOPIER
(609) 921-2181

April 24, 2013

Brian M. Hughes, County Executive
Mercer County, McDade Admin. Bldg.
640 S. Broad Street, PO Box 8068
Trenton, NJ 08650-0068

Carmine Gallo
FAA Regional Administrator
FAA Eastern Region
1 Aviation Plaza
Jamaica, NY 11434-4809

      Re:    Frontier Airlines Operations at Trenton Mercer Airport

Dear Mr. Hughes and Administrator Gallo:

      As you may recall, this law firm represents "Bucks Residents for Responsible Airport

Management" (BRRAM), the grass-roots citizens organization located in Bucks County, PA,

dedicated to protection against high noise levels resulting from aircraft overflights into and out of

the Trenton Mercer Airport.  You may also recall that in 2006 BRRAM joined with the Board of

Supervisors of the Township of Lower Makefield, Bucks County, PA, in filing suit in the Third

Circuit Court of Appeals in Philadelphia against the United States Federal Aviation

Administration (FAA).  The basis for the 2006 lawsuit was the FAA's failure to prepare an

Environmental Impact Statement (EIS), as required by FAA Order 1050D and the National

Environmental Policy Act (NEPA), 42 U.S.C.A. Sec. 4321, et. seq., including specifically a "Part

150" Noise Compatibility Study, prior to granting Trenton Mercer Airport approval to construct a

Page 1 of  6

Exhibit 4

new and enlarged passenger terminal intended for the purpose of attracting Southwest Airlines as a "Low Fare/High-Frequency" (LF/HF) commercial air carrier at the Airport.

Now, the same issue has risen again with respect to the FAA's approval of Frontier Airlines and its actual and planned heavy usage of the Airport for commercial passenger service. This service is now well underway, with more frequent service planned in the near future as a Southwest-type of LF/HF air carrier. Thus, no such service at the Airport should have been permitted without prior compliance with NEPA, specifically including the preparation and dissemination for public hearing and comment of an EIS that would address the full range of impacts, direct, indirect and cumulative, of this high volume usage of the Airport.

While the 2006 lawsuit was eventually dismissed voluntarily, this was because the FAA on June 9, 2008 withdrew the approvals it had granted the Airport which were at that time being vigorously challenged in federal court. The FAA withdrawal is contained in a formal document captioned  "ORDER WITHDRAWING Finding of No Significant Impact / Record of Decision (FONSI/ROD) dated February 23, 2006 for the Trenton-Mercer Airport (TTN) Terminal Replacement and Other Projects in the Capital Improvement Program" (hereafter ORDER). **Exhibit 1**, enclosed.

The ORDER cited "new information" disclosing "changed circumstances" which eliminated the reason for the Terminal enhancement project. The "new information" revealed that Mercer County officials had abandoned plans to replace and enlarge the Terminal which was planned  to attract Southwest or another LF/HF air carrier to make heavy use of the Airport. The "new information" was contained in a letter (dated April 29, 2008) from the Mercer County Executive; as summarized in the ORDER, the Executive "advised the FAA that [Mercer County]

has no plans for the replacement terminal at this time," eliminating a requirement for Southwest use of the Airport. Moreover, "no other large commercial air carrier has expressed interest to enter this market." Thus, the FAA relied upon assurances from Mercer County that at that time it "has no plans" to replace the terminal to attract Southwest Airlines, the prototypical LF/HF air carrier (described by FAA as "Build Alternative 2").

Importantly, the FAA's environmental analysis "revealed that that alternative" – attracting a LF/HF air carrier – "would likely cause sufficient noise impacts that would **require the preparation of an Environmental Impact Statement (EIS)**." The ORDER, fn. 3, emphasis added. But because the ORDER found that "to date, no LF/HF air carrier is operating at TTN and, to the FAA's knowledge, no LF/HF air carrier has recently expressed interest in starting operations at TTN," no EIS was needed to satisfy NEPA. The ORDER fn. 4. To repeat: *at that time* ("to date") and based solely on those factual circumstances, the FAA reasoned that no EIS was then required.

All that has now changed and an EIS is demonstrably required *at this time* to assess the impacts of Frontier Airlines operations, current and planned, at the Airport. Indeed, the FAA should not have authorized any service by Frontier without first complying fully with NEPA's environmental assessment mandates.

The ORDER further states that "an EA [Environmental Assessment] remains valid for 3 years in the absence of major steps to implement a project. Therefore in approximately 9 months ... and in the absence of major steps to implement the project, the TTN EA would need to be reevaluated, at the very least to ensure that environmental analyses remain accurate, valid, adequate, and current." Thus, any alleged validity the EA had has long since lapsed. This is yet

another reason why an EIS is now required: With the passage of time, the "old" EA needs "to be reevaluated" in light of newly changed circumstances, i.e., the introduction of a LF/HF air carrier at the Airport.

Accordingly, as the ORDER concludes, in withdrawing the FONSI/ROD, the FAA explained that "[s]hould the airport sponsor [Mercer County] wish to proceed with **any component** of the project approved in the now withdrawn ROD, the sponsor must seek FAA approval for that component." (Emphasis added)   Since attraction of a LF/HF to the Airport was the key "component of the [terminal replacement] project," this is further indication that an EIS was required.  (After issuance of the ORDER, FAA funding for the new terminal was withdrawn, the new terminal was not constructed, and Southwest Airlines chose not to make use of Trenton Mercer Airport.)   In short, as the ORDER provides, Mercer County and the FAA must now proceed to  prepare an EIS related to the introduction of Frontier Airlines as an LF/HF at the Airport.

Frontier's status as a LF/HF is readily seen.  For starters, the ORDER described a LF/HF air carrier as "an air carrier with operations *similar* to those of Southwest Airlines ... characterized by offering low fares with high-frequency of flights to popular business and leisure destinations.... A LF/HF commercial carrier typically starts up a new market like TTN with a minimum of 10 flights per day...." See ORDER, n.1.  The public record amply supports a finding that Frontier Airlines qualifies as an LF/HF at the Trenton Mercer Airport.  Recent published reports indicate that Frontier is providing at least 47 flights per week into and out of Trenton Mercer to the following destinations, with more planned for the near future: To/from Fort Myers; Fort Lauderdale; Orlando; Tampa; New Orleans; Atlanta; Chicago-Midway; Columbus, OH;

Detroit; and Raleigh, NC.  Moreover, Frontier operates as a "low fare" air carrier at TTN; see "Frontier Airlines Announces Expansion at Trenton-Mercer Airport:" "Frontier Airlines announced on Thursday it will **expand its low-fair** service at Trenton Mercer Airport ... in late January and early February 2013." **Exhibit 2**, enclosed (Emphasis added).  Frontier's business plan to operate as a "profitable **ultra-low cost carrier**" was reiterated in another Frontier press release; see "Republic Airways names new Frontier CEO, President and interim COO." **Exhibit 3**, enclosed (Emphasis added)

   The deepening involvement of Frontier with the Airport, and Mercer County's entanglement with Frontier is further evidenced by recent news reports.  It appears that the air carrier will lend Mercer County "$450,000 for improvements to the passenger terminal [obviously to better serve Frontier] ... Additional plans include construction of a $3 million parking facility and $300,000 for improvements to the airport's taxiways, roads and ramps ... Frontier, the airport's only passenger airline, would fund about $450,00 in fixes to the terminal and *in exchange* the county would give frontier a 50 percent discount on passenger facility charges to use the airport, until the loan is repaid....  County officials said since Frontier began expanding the number of flights from ... two flights per week to approximately five flights per day, there have been some capacity issues," notably overcrowding in the airport parking lot due to Frontier's rapid expansion.  See "Frontier Airlines may loan $450K for airport fixes," Trenton Times, p. A3 (April 23, 2013) **Exhibit 4**, enclosed (Emphasis added)

   To sum up, the public record supports that:

   Frontier Airlines has begun operations as a LF/HF air carrier at TTN and intends to "ramp up" such operations in the near future.  Prior to any such operations, Mercer County and the

Page 5 of  6

FAA were obligated to satisfy the conditions set forth in the ORDER and to comply in full with

NEPA by preparing an EIS, a Part 150 Noise Compatibility Study, and addressing the direct,

indirect, incremental and cumulative impacts of the commercial flights by Frontier Airlines into

and out of the Trenton Mercer Airport.  But none of this environmental review was done.

Therefore, please be further advised that unless Mercer County and the FAA promptly agree to

limit Frontier Airlines to a minimal number of flights into and out of the airport while an EIS and

Part 150 Study are performed, my clients may have no alternative but to commence legal action a

second time and seek a preliminary injunction in federal court.

Respectfully submitted,

POTTER AND DICKSON

By R. William Potter

POTTER AND DICKSON

ATTORNEYS AT LAW
194 NASSAU STREET

PRINCETON, NEW JERSEY 08542

(609) 921-9555

R. WILLIAM POTTER
MEMBER N.J. AND CA. BARS

PETER D. DICKSON
MEMBER N.J. AND D.C. BARS

TELECOPIER
(609) 921-2181

October 31, 2013

Mr. Carmine W. Gallo
FAA Regional Administrator
FAA Eastern Region
1 Aviation Plaza
Jamaica, NY 11434-4809

    Re:  Frontier Operations at Trenton Mercer Airport

Dear Mr. Gallo:

    As you may recall, this law firm represents "Buck's Residents for Responsible Airport Management" (BRRAM), the citizens' organization located in Bucks County, PA, which is seeking enforcement of laws and regulations protecting the public against excessive noise levels and other pollution emanating from flights into and out of the Trenton Mercer Airport. As you also know we previously corresponded; this letter answers yours of May 28, 2013, which you wrote in reply to my letter of April 24, 2013. Copies of those letters are enclosed as Attachments 1 and 2.

    Summary: Recent facts of public record amply demonstrate why the Federal Aviation Administration (FAA) must comply with the National Environmental Policy Act (NEPA) by promptly commencing the preparation of an Environmental Impact Statement (EIS) addressing the full range of impacts from the high intensity use by Frontier Airlines of the Trenton Mercer Airport and the many airport enhancement projects now underway.

Exhibit 5

To date, the FAA has never prepared an EIS concerning the Airport despite the many – and  until now, unsuccessful – efforts made to attract and retain "Low Fare / High Frequency" (LF/HF) commercial airline service at the Airport.

In your most recent letter you state that an "amendment of an air carrier's operations specifications (Ops Specs) is a major Federal action that is subject to NEPA." You further state that "in order to approve an amendment to add an airport to an airline's Ops Specs, the FAA must find that the airline has demonstrated that it can safely and efficiently operate to/from that airport."  You go on to state that: "At the time Frontier's Ops Specs were amended to add Trenton Airport, the FAA believed that the approval was subject to a Categorical Exclusion." You then conclude, "Once an airport has been added to the airline's Ops Specs, under the Airline Deregulation Act of 1978, the airline is free to determine the level of service provided at that airport without any further FAA approval."

According to this reasoning, if an airline carrier applies for FAA Ops Specs approval and in its application states that it plans to initiate service into an airport at a trivial level of only one flight per day, and **on that asserted basis,** the FAA, assuming no safety or environmental impact, issues a Categorical Exclusion from NEPA, then the "the airline is thereafter forever "free" to increase the level of service to 200 or more flights per day – without **any** further FAA review to determine safety and environmental compliance.

Such logic defies common sense and would make a mockery of the NEPA

requirements and the FAA's continuing responsibilities to assure continuing safe and environmentally compliant operations. In effect, this statement would suggest that the FAA may abdicate all safety and environmental responsibilities based upon an Ops Specs application asserting a *de minimis* initial level of service even though the airline thereafter departs from the terms of its initial application by greatly expanding its service and intends to further intensify usage of an airport – to the obvious detriment of the quality of life for affected residents, along with possible safety impacts.

In the case of Frontier Airlines, recent facts of public record reveal that – whatever initial usage plans Frontier provided to the FAA that led to the Categorical Exclusion from NEPA – Frontier has become, and is now, a "Low-Fare/High-Frequency" (LF/HF) commercial air carrier causing significant and continuing environmental impacts for residents of Bucks County, Pennsylvania, who reside, work and recreate beneath the flight path of Frontier aircraft.

For these reasons, the FAA must promptly reconsider and withdraw whatever Categorical Exclusion it previously issued to Frontier and investigate recent facts of record which disclose (1) that Frontier submitted inaccurate or false information or (2) those earlier "facts" have changed dramatically and (3) therefore a Categorical Exclusion from NEPA can no longer be justified.  Among the facts of record supporting theses conclusions are the following:

1.   **Major Airport and Terminal Enhancement Projects with Federal Participation and Approval:**

As you know by now, the Mercer County Board of Chosen Freeholders has

embarked upon a series of major capital improvement projects at the Airport.  These

projects are intended expressly to facilitate Frontier Airlines's marketing efforts and to

coordinate closely with Frontiers' ambitious LF/HF business plans.

Moreover, the FAA has provided substantial funding for many of these projects

which directly implicates NEPA compliance.  Indeed, the Airport has been closed for

commercial air service until these capital improvements are completed, at which point

Frontier will resume operations and immediately expand its growing LF/HF service at the

Airport.

Much of this information was provided to you last spring.  Nevertheless, you stated

that "when such development" – referring to the Airport capital improvements – "is

proposed, the FAA will conduct the appropriate level of NEPA review prior to issuing

any approvals. We note that you specifically mention proposed improvements to the

passenger terminal. At this time the FAA has not received a proposal for improvements to

the passenger terminal.  You should be aware that some terminal projects would not

require FAA approval or receive federal financial participation, thus there would be no

major Federal action requiring NEPA review."

First, regardless of whether there is "federal financial participation," these airport

enhancement projects are compelling evidence of Frontiers' current and future status as a

"Low Fare/High Frequency" air carrier with attendant safety and environmental impacts

that require the drafting of an EIS pursuant to NEPA.  Even without "federal financial

participation," the capital  improvements are part of the plan to greatly increase service by

Frontier into and out of the Airport such that the original Ops Specs must be rescinded.

Second, contrary to your suggestion, there is extensive "federal financial participation" in at least some of the major Airport improvement projects, thereby further underscoring the need for an EIS and NEPA compliance.  To cite just one example, according to a report in NJ.com from August 27, 2013, entitled "Trenton-Mercer Airport in Ewing granted $880,000 for emergency response vehicle" "[t]he grant, from the Federal Aviation Administration, will be used to replace the airport's 11-year old vehicle.  U.S. Rep. Rush Holt said today.  The updated vehicle will help the airport improve its emergency response preparation **as Frontier Airlines, the airport's sole commercial carrier, expands operations there."**  Attachment 3.

The article goes on to report: "From early September to early November, Frontier will suspend operations as the terminal, some of the parking lots and parts of the main runway undergo construction.  The county is renovating to upgrade safety and also to **accommodate increased demand it has seen since Frontier began flying out of the airport last fall**."  (Emphasis added)  The website of Mercer County also posted under date of August 29, 2013, the report of this grant, noting that "Under FAA rules, airports must provide aircraft rescue and firefighting services during certain air carrier operations."  Attachment 4.

Additional evidence of "federal financial participation" in the Frontier-induced expansion of the Airport is found in the May 17, 2013 "Notice of Opportunity for Public Comment" which "will be considered by the County and will be forwarded with the

application to the FAA" regarding ten (10) identified capital improvement projects, each of which relates to Frontier and five of which will receive substantial FAA financial participation.  See Attachment 5.

Finally, the "FY 2008 - 2014 Capital Improvement Program Trenton Mercer Airport," Attachment 6, reveals a continuing pattern of FAA financial participation in the expanded Airport operations, much of it necessitated by Frontier's increased LF/HF operations.  In particular, the FY 2013 and FY 2014 Budgets, which are contemporaneous with Frontiers' Op Specs for use of the Airport, include the following:

Project 1 in FY 2013 is for construction, relocation and extension of TW "F" to provide a parallel taxiway, for which $8,550,000 will be provided from Federal funds.

Project 2 is for Design for connecting TW "B" & "J" connector taxiway to the terminal apron and associated lighting to complete a full parallel taxiway, with $427,500 in Federal funds.

Project 3 in FY 2013 is for design for TW "H", a connector taxiway between TW "E" & "H" and associated lighting to complete a full parallel taxiway; the Federal funds part is $665,000.

In FY 2014, Project 1 is to construct connector between TW "B" & "J", a connector taxiway to the terminal apron and associated lighting to complete a full parallel taxiway for north side;  $6,650,000 in Federal Funds is expected.

Project 2 in FY 2014 is to construct rehabilitation overlay for TW "H" to replace the existing pavement and for the connection between TW "E" and "H" and associated

lighting to complete a full parallel taxiway for east side of TW 16/34; Federal funds of $6,650,000 are expected.

In short, the County has applied for and received significant funding from the FAA for the express purpose of "accommodating increased demand" for the Airport due to then current and projected Frontier operations.  To summarize the capital improvements: (1) Lengthening a taxiway, as ordered by the FAA to safely accommodate the planes used by Frontier; (2) Installing an engineered materials arrestor system (EMAS), also necessitated by Frontier; (3) Building an expanded surface parking lot nearing the terminal to handle increased usage due to Frontier; (4) Building a new baggage handling facility to expedite Frontier's passenger service; and (5) Expanding the secure lower floor and installing new restrooms, again due to Frontier.

In conclusion:

The Ops Specs approved by the FAA and leading to a Categorical Exclusion from NEPA can no longer be justified.  Therefore, the FAA must suspend or rescind the Ops Specs and reexamine it in light of  recent developments.

### 2.     Frontier's current LF/HF level of service and projected increase:

As of the time of my earlier letter there was ample evidence that Frontier had become a LF/HF at the Trenton Mercer Airport.  At that time Frontier was providing or would soon provide at least 47 flights per week to the following destinations, with more planned for the near future:  Fort Myers; Fort Lauderdale; Orlando; Tampa; New Orleans;

Atlanta; Chicago – Midway; Columbus OH; Detroit; and Raleigh, NC. [1]   Frontier had

also announced plans to "expand its low-fare service at  the Trenton Mercer Airport ... in

late January and early February 2013," based on its business plan to operate as a

"profitable ultra low cost carrier" at the Airport.  More recently, Frontier has extended its

lease through 2018 and has announced that it hopes to put another plane into service in

2014 and add still more destinations.

In addition, Frontier Airlines and Mercer County, as part of its plans to serve 11

million people by 2025, to:

-- Add commuter rail service between the Airport and Trenton, with anticipated

links to Philadelphia, Newark and New York;

-- Build a new terminal at the former Naval Air Warfare site; and

-- Improve roads and bridges to serve increased Airport traffic. [2]

Finally, the Mercer County Executive has announced that Frontier will expand

service to provide three weekly nonstop flights to Cincinnati, Ohio, and four weekly

nonstop flights to Charlotte, N.C., all beginning February 12, 2014.  See Attachment 9.

Thus, there is no room for serious disagreement that Frontier is now a LF/HF air carrier,

that the Ops Specs must be withdrawn, and that there is major federal involvement which

trigger NEPA and its EIS mandates.

---

[1] The airport is estimated to handle 85,000 takeoffs and landings annually.  "Frontier
Airlines to continue growth at Trenton air tower closing," CourierPostonline, March 22, 2013;
Attachment 7.

[2] midJersey Business, August 2013, pp. 38-39; Attachment 8.

3.      **The FAA Order of 2008 Requires the FAA to Prepare an EIS and Comply Fully with NEPA:**

At the risk of further reiteration, we note that the FAA is on record in its formal determination that **before** an LF/HF may operate at the Airport, the FAA will prepare an "Environmental Impact Statement" (EIS).  This FAA determination is set forth in its "Order Withdrawing Finding of No Significant Impact/Record of Decision (FONSI/ROD) dated February 23, 2006 for the Trenton Mercer Airport Terminal Replacement and Other Projects in the Capital Improvement Program" (hereafter "Order"), dated June 9, 2008. A copy of the Order is enclosed as Exhibit 1 to Attachment 1.  It is clear that Frontier has already commenced operations as an LF/HF and with more intense usage planned in the near future.  As a result, the FAA must enforce its Order, rescind the Ops Specs and the Categorical Exclusion, and initiate the formal EIS process dictated in the 2008 Order.

**To sum up our position:** Whatever information Frontier submitted to the FAA to persuade it to issue a Categorical Exclusion from the requirements of NEPA, recent facts of public record contradict that information, demonstrating that:

(1) Already Frontier is operating as a Low-Fare/High-Frequency airline carrier using Trenton Mercer as its apparent hub.

(2) Trenton Mercer has commenced an ambitious capital improvement program for the airport terminal, taxiways, runway and parking, to facilitate Frontiers' LF/HF operations, with even more ambitious plans for the future.

(3) There is substantial "federal financial participation" in the Frontier-induced

enhancement projects at the Airport, thereby "federalizing" these projects.

(4) The FAA issued an Order that it will prepare an EIS prior to authorizing any LF/HF service at the Trenton Mercer Airport.

(5) Therefore, the FAA must immediately:

     a.  Revoke the Categorical Exclusion,

     b.  Commence the necessary NEPA / EIS process; and

     c.  Withdraw or suspend Frontier Airlines Ops Specs for the airport until

such time as NEPA has been fully complied with.

As a final matter, we note that in your letter of May 28, 2013, you stated that "we understand the community's concerns surrounding operations at Trenton Airport and are willing to undertake a noise analysis to determine if mitigation is necessary. We expect that we will be able to provide you with those results sometime in mid-August of this year." Accordingly, please provide us with a true and accurate copy of the FAA's "noise analysis" report.

                            Respectfully submitted,

                            POTTER AND DICKSON

                            By R. William Potter

cc:    Mercer County Executive Brian Hughes
       Mercer County Board of Chosen Freeholders



U.S. Department
of Transportation

**Federal Aviation
Administration**

Office of Regional Administrator
Eastern Region

1 Aviation Plaza
Jamaica, NY 11434-4809

received
5-31-13

MAY 2 8 2013

Mr. R. William Potter
Potter and Dickson
Attorneys at Law
194 Nassau Street
Princeton, NJ 08542

Re: Frontier Operations at Trenton Mercer Airport

Dear Mr. Potter:

This letter is in response to your April 24, 2013 letter, addressed to Carmine W. Gallo, Eastern Regional Administrator and Brian M. Hughes, County Executive, regarding Trenton Mercer County Airport.

In your letter, you allege that the Federal Aviation Administration (FAA) failed to comply with the National Environmental Policy Act (NEPA) when it authorized Frontier Airlines to operate at Trenton Mercer County Airport (Trenton Airport).  Additionally, you refer to several airport development projects that should have been subject to NEPA review before receiving FAA approval.  Finally, you state that unless the FAA agrees to limit the number of Frontier Airlines flights at the airport while an EIS and Part 150 Study are performed, your clients will commence legal action.

The amendment of an air carrier's Operations Specifications (Ops Specs) is a major Federal action that is subject to NEPA.  In order to approve an amendment to add an airport to an airline's Ops Specs, the FAA must find that the airline has demonstrated that it can safely and efficiently operate to/from that airport.  At the time Frontier's Ops Specs were amended to add Trenton Airport, the FAA believed that the approval was subject to a Categorical Exclusion.  Once an airport has been added to the airline's Op Specs, under the Airline Deregulation Act of 1978 the airline is free to determine the level of service provided at that airport without any further FAA approval.  Therefore, the recent changes announced by Frontier Airlines at Trenton Airport, to which you refer in your letter, are changes made by the air carrier absent FAA involvement.  Because there is no federal action, NEPA requirements are not triggered.  While FAA is not required to complete a NEPA analysis for the additional flights, we understand the community's concerns surrounding operations at Trenton Airport and are willing to undertake a noise analysis to determine if mitigation is necessary.  We expect that we will be able to provide you with those results sometime in mid-August of this year.

Exhibit 6

As to the airport development issues, Trenton Airport made application to the FAA for an airport layout plan (ALP) amendment to provide increased public parking, the creation of an additional pay parking lot and an employee/rental car/cell phone waiting lot. The FAA reviewed the proposal for additional parking pursuant to NEPA and Categorically Excluded that project. As for the other elements of airport development that your letter states have been the subject of recent news reports, Trenton Airport has not proposed such development to the FAA.  If and when such development is proposed, the FAA will conduct the appropriate level of NEPA review prior to issuing any approvals.   We note that you specifically mention proposed improvements to the passenger terminal.  At this time the FAA has not received a proposal for improvements to the passenger terminal.   You should be aware that some terminal projects would not require FAA approval or receive federal financial participation, thus there would be no major federal action requiring NEPA review.

Finally, your letter requests that a Part 150 Noise Compatibility Study and EIS be completed for Trenton Airport.  The Part 150 Pprogram is a voluntary program in which airport operators are encouraged to  participate with . FAA Advisory Circular [AC] 150/5020-1, –"Noise Control and Compatibility Planning for Airports".  Generally, an airport's decision not to conduct a Part 150 Study will not prevent the FAA from approving airport development projects.  As for an EIS, NEPA regulations do not require an EIS for every project.

I trust this letter addresses your concerns.

Sincerely,

Carmine W. Gallo
Regional Administrator