R. William Potter
Peter D. Dickson
POTTER AND DICKSON
194 Nassau Street, Suite 31
Princeton, NJ 08542
Telephone: (609) 921-9555
Fax: (609) 921-2181
Email: rwppddlaw@cs.com
and potterrex@cs.com
Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| BRRAM, INC., ET AL., | : | Civil Action No. 3:14-cv-02686 (JAP) |
| Plaintiffs, | : | |
| v. | : | Hon. Joel A. Pisano, U.S.D.J. |
| | : | Hon. Douglas E. Arpert, U.S.M.J. |
| UNITED STATES FEDERAL | : | |
| AVIATION ADMINISTRATION, | : | |
| ET AL., | : | DOCUMENT FILED |
| Defendants. | : | ELECTRONICALLY |

## MEMORANDUM IN RESPONSE TO
## MOTIONS TO DISMISS
## PURSUANT TO FED. R. CIV. P. 12(b)(1) AND 12(b)(6)

Replies to Response due on December 5, 2014.

Table of Contents

Page

INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

FACTUAL STATEMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

      A.     From 1999 to 2012. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

      B.     From 2012 to the present. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

      C.     Injury and harm to residents of Pennsylvania and New Jersey caused by Frontier's expansive use of TTN. . . . . . . . . . . . . . . . . . . . 11

      D.     The 2008 FAA Order commits the FAA to a NEPA analysis. . . . . . 16

      E.     There is no FAA Order reviewing or approving Frontier's expansion of service beyond two flights per week:. . . . . . . . . . . . . 18

ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Point 1.     The District Court has subject matter jurisdiction of this complaint because the FAA has never issued an order granting Frontier authorization to expand flights at TTN beyond the initial request for approval to make only two flights per week at TTN. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Point 2.     There are reasonable grounds for tolling the 60-day time limit for challenging the FAA's "order:". . . . . . . . . . . . . . . . . . . . . 24

Point 3.     The FAA's refusal to initiate environmental and safety reviews of the Frontier airlines's unilateral decision to exceed the two flights per week limit is arbitrary, capricious, and contrary to law. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

Point 4.     The cases cited by the FAA in its brief in support of the
             motion to dismiss are readily distinguishable and
             therefore not controlling. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

Table of Authorities

Page

## CASES

Assoc. of Data Processing Service Organizations, Inc. v. Bd of Governors,
745 F.2d 677 (D.C.Cir. 1984). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

Avia Dynamics, Inc. v. FAA, 641 F.3d 516 (D.C. Cir. 2011). . . . . . . . . . . . . . . 26

Bellocchio v. N.J. Dept. of Environmental Protection, 2014 WL 146481
(D.N.J. April 15, 2014). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

Citizens for Responsible Area Growth v. Adams, 434 F.Supp. 403
(D.D.C. 1977). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Citizens for Responsible Area Growth v. Adams, 477 F. Supp. 994
(D.N.H., 1979). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

City of Atlanta v. United States, 531 F.Supp. 506 (N.D. Ga. 1982). . . . . . . . . . 23

City of Boston v. Coleman, 397 F.Supp. 698 (D.Mass. 1975). . . . . . . . . . . . . . . 24

City of Elizabeth v. Blakey, 2007 WL 4415054 (D.N.J.  Dec. 14, 2007). . . . . . . 34

City of Irving, Tex. v. Federal Aviation Admin., 539 F.Supp. 17
(N.D.Tex. 1981). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

City of Romulus v. County of Wayne, 392 F.Supp. 578 (E.D.Mich. 1975). . . . . 24

Cross-Sound Ferry Services, Inc. v. U.S., 573 F.2d 725 (2nd Cir. 1978). . . . . . . 22

Fla. Manufactured Hous. Ass'n v. Cisneros, 53 F.3d 1565 (11th Cir. 1995). . . . . 26

Fleming v. US Department of Transportation, 348 F. App'x 736
(3d Cir. 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

Friends of Richards-Gebaur Aiport v. FAA, 251 F.3d 1178 (8th Cir. 2001). . . . . 33

Greater Orlando Aviation Authority v. FAA, 939 F.2d 954
(11th Cir. 1991).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

Hanly v. Kleindienst, 471 F.2d 823 (2nd Cir. 1972). . . . . . . . . . . . . . . . . . . . 20, 21

Jones v. United States, 625 F. 3d 827 (5th Cir. 2010). . . . . . . . . . . . . . . . . . . . . 32

National Air Trans. Ass'n v. McArtor, 866 F.2d 483 (D.C.Cir. 1989). . . . . . . . . 27

Safe Extensions, Inc. v. FAA, 509 F.3d 593 (D.C. Cir. 2007). . . . . . . . . . . . . . . 26

Scientists Institute for Public Information, Inc. v. Atomic Energy
Commission, 481 F.2d 1079 (D.C.Cir. 1973). . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Sierra Club v. U.S. Dept.of Transp., 7l5 3 F. 2d 120 (D.C.Cir.1985). . . . . . . . . 33

Sima Prods. v. McLucas, 6121 F. 2d 309 (7th Cir. 1980). . . . . . . . . . . . . . . . . . 34

State of Illinois ex rel. Scott v. Butterfield, 396 F.Supp. 632
(N.D.  Ill. 1975), affirmed in part and reversed in part, 601 F.2d 609
(1979).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20, 21, 22

St. John's United Church of Christ v. City of Chicago, 502 F. 3d 616
(7th Cir. 2007).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

Virginians for Dulles v. Volpe, 541 F.2d. 442 (4th Cir. 1976). . . . . . . . . . . . . . . 24

## STATUTES

5 U.S.C.A. § 552(a)(2)(C). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

5 U.S.C.A. § 701, et seq.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

28 U.S.C.A. § 1331. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

42 U.S.C.A. § 4321, et seq.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

49 U.S.C.A. § 46110. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

## REGULATIONS

14 <u>C.F.R.</u> 150 et seq.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

40 <u>C.F.R.</u> 1500 et seq.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

**INTRODUCTION**

This brief is submitted on behalf of plaintiffs in opposition to the motions to dismiss the complaint filed by the defendants, Federal Aviation Administration (FAA), Frontier Airlines (Frontier), and Mercer County.  As an initial matter, because plaintiffs consent to the dismissal of Frontier and Mercer County, unless the court deems them to be indispensable parties, this brief addresses only the FAA motion and supporting memorandum.

The FAA's argument may be summarized as follows: First, only the Third Circuit Court of Appeals and the D.C. Circuit have subject matter jurisdiction to review "final orders" of the FAA; second, the complaint is untimely and, therefore, should be dismissed for that reason alone.

Regarding the first, plaintiffs demonstrate in this brief that there is no "final order" from which to appeal because, simply stated, the FAA has never issued a final order which authorizes Frontier to operate at the Trenton Mercer Airport (TTN) as a high frequency commercial air carrier. As disclosed for the first time by the FAA in its motion, the cryptic letter approval provided to Frontier was expressly limited to only two daytime flights per week as proposed by Frontier in a two-page letter, dated September 19, 2012. The FAA responded six days later in a form letter approving that specific Frontier two-flights per week request.

Currently, Frontier without further FAA review is flying 31 times the number of flights in excess of the approved two-flights per week, including night flights. It is troubling indeed that the FAA has disavowed any duty to review the subsequent safety or environmental consequences of this intensive use by Frontier of the TTN airport.

We also demonstrate that the case law relied upon here by the FAA is easily distinguished from the present case, because they involved a decision of which the court has jurisdiction to determine the adequacy of National Environmental Policy Act (NEPA) statements on their merits, unlike the present case where there is no NEPA analysis of any kind for any court to review. Accordingly, the District Court has subject matter jurisdiction to address the FAA's refusal to perform any environmental or safety analysis as required by the NEPA of Frontier's rapidly expanding operations at TTN.

Regarding the "untimeliness" claim by the FAA, we have four answers. First, the 60-day statutory time limit applies only to petitions to the Courts of Appeals and not to actions in District Court to compel compliance with NEPA in the absence of any FAA order approving Frontier's growing levels of operations at TTN, now up to 62 flights per week. Second, since there has never been any NEPA order to appeal, the 60-day deadline for filing an action has never "started"

and thus has not been violated. Third, the FAA never responded to the plaintiffs'
request for it to reconsider what we at the time assumed to have been FAA
approval of Frontier's high-intensity use of TTN. Fourth, even if the complaint is
deemed untimely, there are reasonable grounds for tolling the deadline and
reaching the merits of plaintiffs' complaint.

**FACTUAL STATEMENT**

There is a lengthy history of controversy between the plaintiffs and the FAA
as follows:

**A.  From 1999 to 2012:**

In 1999 plaintiffs opposed expansion plans for Trenton Mercer Airport
(TTN) until the FAA complied with the National Environmental Policy Act
(NEPA). In November of that year, members of the lead plaintiff group, "Bucks
Residents for Responsible Airport Management" (BRRAM), joined by
government officials from Bucks County, Pennsylvania, and New Jersey,
participated in "scoping sessions" held by the FAA and Mercer County to
determine the proper "scope" of NEPA environmental reviews assessing the
impacts of Mercer County's proposal to expand facilities at TTN and attract high-
volume commercial passenger service. Importantly, at that time the FAA and
Mercer County recognized the necessity of complying with NEPA prior to receipt

of Federal funds to modernize TTN and attract high-frequency commercial air service at the airport.

After the scoping sessions were completed, the FAA released a draft environmental assessment (DEA) and subjected it to a public hearing on June 12, 2002, at which time plaintiffs testified and filed comments. Throughout this effort, BRRAM members and Mercer County residents argued that the DEA was inadequate and a comprehensive Environmental Impact Statement (EIS) was needed to fully assess the cumulative impacts, especially noise, of intensive commercial traffic at TTN due to the flight path of aircraft at low altitude over their homes, businesses, and recreation areas on both sides of the nearby Delaware River.

On February 23, 2006, the FAA issued a "Record of Decision/Finding of No Significant Impact ("ROD/FONSI"), pursuant to NEPA and the FAA's implementing regulations, which rejected BRRAM's argument that an EIS was necessary, converted the DEA into a Final Environmental Assessment and approved release of federal funds for several airport enhancement projects.[1]

---

[1] These projects included construction of a new 44,000 SF terminal building, expanded apron area, realignment of an existing access road, additional automobile parking, extension of two taxiways, and demolition of a tennis center to make way for more parking.

On June 6, 2006, the Board of Supervisors of the Township of Lower Makefield, Bucks County, joined by BRRAM, and individual residents of Bucks County, filed a petition with the United States Court of Appeals for the Third Circuit for review and reversal of the ROD/FONSI. While the case was in Court supervised mediation, Mercer County advised the FAA that it no longer intended to replace the terminal building because Southwest Airlines was bowing out of plans to use TTN for high-frequency service. This change of circumstance led the FAA to issue a second ROD on June 9, 2008, captioned "Order Withdrawing the FONSI/ROD dated February 23, 2006" ("2008 Order"), and finding that there was no longer a need for the enhancement projects since Southwest Airlines had disavowed use of TTN.  (Complaint Exhibit 2.)

Most importantly, as part of the 2008 Order, the FAA pledged to comply fully with NEPA in the event another low fare /high-frequency (LF/HF) air carrier proposed to locate at TTN. In reliance on the terms of the 2008 Order, and since Southwest would not use TTN, the plaintiffs agreed to withdraw their petition pending before the Third Circuit as functionally moot.

Despite these assurances, in recent years the FAA has proceeded to finance a series of large-scale projects at TTN in furtherance of Mercer County's intention to attract another high-frequency air carrier, Frontier Airlines, to operate at TTN.

### B.  2012 to the present:

On September 19, 2012, Mr. Jim Colburn, Director of Operations for

Frontier Airlines, sent a letter to Mr. Dale Snider, an official of the FAA, stating:

"Please accept this letter as notification that Frontier Airlines intends to begin

scheduled service from Trenton New Jersey (TTN). Service is scheduled to begin

on November 16, 2012, utilizing the Airbus A320 series aircraft." The letter sets

forth a schedule limited to two flights per week. The first flight would depart at

7:25 AM on Friday, the second flight at 12:55 PM on Friday. There is no mention

of any plan to exceed the two-flights per week utilization rate proposed by

Frontier for FAA approval. Six days later on September 25, 2012, the FAA replied

in an electronic form letter stating as follows:

> 1. The certificate holder applies for the operations in this
> paragraph.
>
> 2. These operations specifications are approved by direction of the
> administrator.
>
> Digitally signed by Dale Snider, Principal Operations Inspector
> ...
>
> 3. I hereby accept and receive the Operations Specifications in this
> paragraph, digitally signed by Jimmy W. Colburn."

This exchange of correspondence over a one-week period in 2012 was not

made public; not made known to any of the plaintiffs; nor contains any analysis of

any environmental impacts or safety issues; nor recites to any evidence of any kind and did not provide any "Record of Decision." Yet, according to the FAA motion to dismiss, the plaintiffs' complaint is "untimely" because plaintiffs did not file in court within 60 days of this private exchange of cryptic letters. In other words, the FAA argues that its one-page letter to Mr. Colburn was a "final order" triggering the 60-day period for petitioning the Third Circuit even though the FAA letter was sent only to Frontier and never publicly issued. Also, because the amended "Ops Specs" for Frontier allowed it to make a mere two flights per week, the environmental impact was negligible, and neither Frontier nor the FAA hinted that the letter would allow Frontier to expand far beyond the terms of approval, as the FAA argues.

In a "Declaration of Bruce A. Montigney," Exhibit A to the FAA's motion for dismissal, the FAA seeks to explain its theory, without citing any legal authority, as follows:

> "...3. Frontier also holds Operating Specifications (OpSpecs) issued [by the FAA]....
>
> 4. OpSpecs are issued to a holder of air carrier certificate to **define the conditions under which the air carrier must operate to ensure a safe operation**.
>
> 5. **Air carriers are required to operate in conformity with their OpSpecs.**

6. One of the required elements of an air carriers OpSpecs is a list of airports the carrier may serve in scheduled operations.

7. In order to include an airport in an air carriers OpSpecs, the FAA must determine that the air carrier is able to conduct **scheduled operations** to and from that airport safely.

8. OpSpecs may be amended at the request of the air carrier. OpSpecs may also be amended at the discretion of the FAA...

9. As the certificate holding district office for Frontier, the Indianapolis FSDO is responsible for managing the OpSpecs for Frontier, including making the decision to amend Frontier's OpSpecs.

10. By letter dated September 19, 2012, Frontier requested amendment of its OpSpecs to be permitted to serve Trenton–Mercer County Airport as a regular airport. Exhibit A, Letter from Frontier Airlines to FAA, is a copy of Frontiers' request for amendment of its Op Specs.

11. On September 25, 2012, after determining that Frontier could safely provide regular scheduled service at Trenton-Mercer County Airport, the FAA approved an amendment to Frontier's OpSpecs to include Trenton Mercer County Airport. ... **Once Frontier's OpSpecs were approved to permit it to operate at Trenton Mercer County Airport, Frontier is free to determine which other airports approved in its OpSpecs it will serve from Trenton-Mercer County Airport, as well as the number of flights it will provide. These matters are business decisions made by the Carrier without FAA involvement.**

[Exhibit A, FAA's Motion to Dismiss; emphasis added.]

To sum up, on September 19, 2012 Frontier applied for permission to schedule two flights per week at TTN; six days later, the FAA approved that specific request. The FAA now argues that "Frontier is free to determine ... the number of flights it will provide ... without FAA involvement" (FAA Brief at 5), even though Frontier is "... required to operate in conformity with their OpSpecs" (Montigney Declaration ¶ 5), which were limited to two flights per week at TTN. The FAA cannot have it both ways, asserting that Frontier must comply with the terms of its September 19 amendment request of two flights per week but "Frontier is free to determine" (FAA Brief at 5) however many flights from TTN it wishes "without FAA involvement" (FAA Brief at 5) to assess safety and environmental impacts of quantum leaps in frequency of service. None of this, of course, can be construed to implicitly "repeal" NEPA through non-public correspondence.

When Frontier began to expand flight schedules at TTN, counsel to BRRAM wrote to the FAA Regional Administrator on April 24, 2013 to urge compliance with NEPA and to review the impacts of Frontier's expanded usage. Complaint Exhibit 4. This BRRAM letter reviewed the FAA's 2008 Order which stated that the FAA would comply fully with NEPA in the event that TTN were to

attract a high-frequency successor to Southwest Airlines.  The FAA replied on

May 28, 2013, ("FAA Letter," Complaint Exhibit 6) and conceded that the

"amendment of an air carrier's Operations Specifications (Ops Specs) is a major

Federal action that is subject to NEPA." However, the FAA Letter continued: "**At**

**the time** Frontier's Ops Specs were amended to add Trenton Airport, the **FAA**

**believed** that the approval was subject to a Categorical Exclusion" from NEPA.

Complaint Exhibit 6 at 1, emphasis added. Plaintiffs agree that an Ops Specs

amendment limited to two flights per week would not ordinarily trigger an EIS

since the impacts are not significant. But if the air carrier expands far beyond the

two flights per week limit, as it has, substantial environmental and safety concerns

are raised.

On October 31, 2013, BRRAM's counsel again wrote to the FAA Regional

Administrator to request reconsideration of what we presumed to have been a

decision by FAA to exempt Frontier from environmental or safety analysis

pursuant to NEPA. Complaint Exhibit 5. The FAA has never replied. After waiting

a considerable period of time in hopes that the FAA would eventually answer and

recognize its duty to subject Frontier's intensifying operations to NEPA review,

Plaintiffs finally believed they had no choice but to file this lawsuit, which they

did on April 28, 2014 in Federal District Court.

On or about August 18, 2014 each of the defendants, the FAA, Frontier Airlines, and Mercer County, filed their motions to dismiss.

Recently, the Board of Supervisors of Lower Makefield Township voted to join the law suit as plaintiffs, as did the Board of Supervisors of Upper Makefield Township, followed by the Borough Council of Yardley Borough.

On August 20, 2014, Plaintiffs' counsel requested and obtained an automatic extension of the return date of the dispositive motions, and on September 12, 2014, with the consent of all defendants' counsel, filed a motion for extension of time to file response to motions by October 22, 2014, which was granted September 17, 2014. On October 20, 2014, with the consent of all defendants' counsel, plaintiffs' counsel again requested an extension to November 5, 2014, and on November 3, 2014, with consent of all defendants' counsel, again requested a further extension to November 12, 2014, which the court granted.

### C.   Injury and harm to residents of Pennsylvania and New Jersey caused by Frontier's expansive use of TTN:

By its decision to increase operations at TTN far beyond its FAA approved level of two flights per week, Frontier Airlines's operations harm thousands of people who live or work or recreate directly beneath the flight path of Frontier aircraft, mostly in Bucks County. As evidence of the injuries they are suffering

due to low altitude flights above their communities, often late at night or early in the morning, we enclose 36 declarations[2] of residents of Bucks County, Pennsylvania, and Mercer County, New Jersey.  Of this total number of residents, 32 are in nearby Yardley Borough, Lower Makefield Township, Upper Makefield Township, and Langhorne, Pennsylvania; Yardley Borough, Lower Makefield Township, and Upper Makefield Township are located on the West Bank of the Delaware River in the immediate flight path of aircraft using TTN. Another four certifications are from residents of  New Jersey (Pennington Borough and West Trenton). For example:

> Ms. Hillary Armitage, a resident of Yardley, states as follows:

>> ... 6. Specifically, these overflights cause a great deal of noise, especially in the morning and evening. Vibration is significant!
>> 7. These overflights typically operate at low altitude and cause the following disruptive impacts and injuries to me and my family: telephone calls interrupted, family conversations stilted, river ambience shattered, sleep disturbed by early-morning flights...
>> 9.  As a result of this pattern of overflights, my family and I are losing sleep, feeling nervous and jittery, avoiding going outside, and keeping the windows closed even when the weather is very nice...
>> 11. I have other concerns as well, for example: property values will be affected by the environmental impact. I

---

[2] These 36 certifications, attached to the Certification of R. William Potter, are Plaintiffs' Exhibits 7 through 42.

love Yardley and our house on the river. Money is
secondary, but as a senior citizen I have to be concerned
with my future and my investments. My house and this
community is a major part of that investment.
(Plaintiffs' Exhibit 7.)

Mr. Jeffrey Richard Buehler describes how the Frontier operations affect

him and his family:

... 7 ... If our windows are closed, we notice them
vibrating and the noise sounds like a large, high-pitched
truck bearing down on our house. If our windows are
open, the noise fills our house and we are unable to
continue conversation until after the plane has passed out
of range. If we are outside in the yard, the sound is even
worse and disrupts our ability to communicate as well as
to enjoy the outdoor environment. During the night from
9 PM to 7 AM, both adults and children in our household
cannot go to bed and having normal nights rest, causing
us to lose sleep and damaging our quality of life....
(Plaintiffs' Exhibit 8.)

Similarly, Plaintiff Holly J. Bussey testifies about,

... noise from the aircraft engines as well as vibrations in
our house caused by air turbulence generated by the
engines and the size of the aircraft as it moves through
the atmosphere. Much like air concussions from thunder
that rattles a house. Also, [we have] concerns about
impacts to my families health from unseen pollutants
emitted by these aircraft during takeoff and landing.
When they land, we can often hear and sometimes feel
the vibrations of the engines as they work to stop the
planes. When taking off, the whirring of the engines is so
high-pitched that it can be painful.
(Plaintiffs' Exhibit 9.)

Judith Clarke, a resident of Pennington, summarizes her experience:

> We have to stop speaking, whether we are on the phone
> doing business from our home office, or in person as we
> cannot hear each other at all, unless screaming. Our
> children, one of whom is in elementary school and goes
> to bed at 9 o'clock, is awakened by the noise. We cannot
> carry out normal household activities, and feel as though
> everything freezes while these low-flying aircraft attack
> our sanity and peace of mind. Our children are denied a
> full nights sleep on school nights, we cannot hold a
> conversation. The house itself often seems to shake, the
> noise and vibration give us an ominous feeling of being
> in a war zone or being under attack. When we are outside
> trying to play and enjoy our yard ... aircraft flies so low
> that children playing in our yard often dart and run to the
> side as if the planes might land on them. The degradation
> of our quality of life and mental well-being is real and
> worrisome. Our family is seriously considered moving,
> which would be very difficult for us financially.
> (Plaintiffs' Exhibit 10.)

Echoing these impacts, Plaintiff Richard DeLello writes that Frontier

overflights "disrupt conversation, telephone conversations, outdoor activities with

family and friends, causing children to be shocked at the size and noise produced

by these aircraft. Additionally, I stopped inviting friends over for cookouts as a

result of these flyovers. I feel like my property is being taken away from me ... I've

complained regularly about the noise and disruption but to no avail...." (Plaintiffs'

Exhibit 12.)

Paul Elrath, also residing in Yardley, writes:

... these overflights ... shake the windows, wake us up from a deep sleep, we cannot talk while planes are flying, they seem to fly directly over our house every hour ... It is my understanding that if I put my house on the market in order to sell it and move out of the overflight area of Frontier Airlines, I would have to provide notice to any prospective purchaser as to this problem, which will necessarily lower the value my property....
(Plaintiffs' Exhibit 13.)

Similarly, Mr. Stanley E Gondek, III, complains:

... these overflights cause a great deal of noise all throughout the day. They start before dawn and continue until late night ... Over half the flights fly so low to the ground the house shakes, it wakes us up if sleeping. It is ruining our quality of life. Our once relaxing backyard is now constantly loud and our family time in our pool is less enjoyable due to the constant noise. We keep the windows closed to reduce the sound. My wife is distressed over the situation she is having anxiety thinking that one of the planes is going to crash into our house.
(Plaintiffs' Exhibit 17.)

Susan Harvey certifies that the overflights "are very loud and often disrupt my conference calls; they scare my dog and shake the walls of my home. Several photos have fallen off my walls. Also, if I leave my windows open it, it wakes me up. Flights can be as late as 1 AM...."  (Plaintiffs' Exhibit 22.)

Lauren Holstein recites her experience in nearby Langhorne, PA:

On many occasions, the planes' landing gear is visibly

down, representing approach to the airport. On a weekly
basis, the noise is loud enough that picture frames on the
second floor walls of our home were found crooked,
showing movement ... The flights have been sometimes
frightfully low ... When the flights were limited during
November, relief from the normal flight traffic noise was
very noticeable. In addition to disruptions in my home,
the local area provide suburban and rural areas for
recreational purposes and the noise is disruptive at these
local green areas, for example, Core Creek Park....
(Plaintiffs' Exhibit 24.)

Similar harmful experiences fill the testimony of these people who can no

longer enjoy peace and quiet in their homes or backyards or nearby parks or carry

on business activities, all because of the FAA's refusal to engage in a safety and

environmental analysis, and to assess mitigation measures, as required by the

NEPA, of Frontier Airlines' increasing use of TTN.

### D.  The 2008 FAA Order commits the FAA to a NEPA analysis:

The FAA's 2008 Order that withdrew the FONSI/ROD and induced

Plaintiffs to voluntarily dismiss their petition contained these assurances: "The

analysis of Build Alternative 2 [airport enhancements to entice Southwest to locate

at TTN] revealed that [that] alternative would likely cause sufficient noise impacts

that would require the preparation of an Environmental Impact Statement (EIS)."

Complaint Exhibit 2 at 2 fn. 3. Despite issuance of that 2008 Order, and Frontier's

expansion at TTN, the FAA has financed a series of projects at TTN without any

NEPA review or compliance, including:

      a. $880,000 for the purchase of an emergency response vehicle;

      b. $8,550,000 for the construction of a parallel taxiway;

      c. $427,500 for the construction of a connector taxiway to the terminal;

      d. $665,000 for improvement to a connector taxiway and associated lighting to complete a full parallel taxiway;

      e. $6,650,000 to complete a full parallel taxiway for the north side of the TTN terminal.

These projects have one overriding purpose: to facilitate expansive TTN usage by Frontier Airlines, successor to Southwest, which began scheduled service on November 19, 2012, with two flights per week to Orlando. Since then, Frontier has expanded to include Cincinnati, Charlotte, Cleveland, Milwaukee, Minneapolis/St. Paul, Indianapolis, St. Louis, Nashville, Raleigh/Durham, and St. Augustine/Jacksonville. Frontier notes that at the present time "Frontier currently operates 62 weekly flights to and from the Trenton community to a variety of cities...." Frontier brief at p. 2.

**E.    There is no FAA Order reviewing or approving Frontier's expansion of service beyond two flights per week:**

Even though the FAA Letter conceded that "an amendment of an air carrier's operations specifications (Ops Specs) is a major Federal action that is subject to NEPA," the FAA has not performed any environmental or safety impact analysis of Frontier's expanded use of TTN beyond the initial two flights per week. Consequently, there is no FAA order approving any expansion beyond the terms of the Op Specs amendment in the September 25, 2012 electronic letter. The sole FAA "order" contemplated a negligible use of the airport, not the 31-times the two flights approval now seen at the airport and heard by the plaintiffs at all hours of the day and night.

The plaintiffs do not dispute that the terms of the Ops Specs amendment request **as approved** which were limited to two flights per week fell below threshold levels necessary for triggering NEPA analysis, and was properly the subject of a "Categorical Exclusion." Rather, plaintiffs challenge the absence of **any** FAA review of the expanded schedule of flights and the lack of any Order or Record of Decision ("ROD") demonstrating NEPA compliance. Apparently, Frontier has made no request to exceed the two flights per week limitation in its letter to the FAA. No authority is cited by the FAA that permits its complete

abandonment and disregard of NEPA at the very time it was most needed. Put

bluntly, the FAA has washed its hands of responsibility to the public interest over

Frontier operations at TTN.

Ironically, the FAA Letter of May 28, 2013, does state that "we understand

the community's concerns surrounding operations at Trenton Airport and are

willing to undertake a noise analysis to determine if mitigation is necessary. We

expect that we will be able to provide you with those results sometime in mid-

August of this year." Despite our request for a copy of that "noise analysis," which

in any event is not NEPA compliance, in our letter seeking reconsideration, the

FAA has never revealed or discussed any such noise mitigation analysis.

**ARGUMENT**

**Point 1.     The District Court has subject matter jurisdiction of this
              complaint because the FAA has never issued an order granting
              Frontier authorization to expand flights at TTN beyond the initial
              request for approval to make only two flights per week at TTN:**

Contrary to the FAA argument, the District Court has subject matter

jurisdiction pursuant to Section 102 (C) (2) of the National Environmental Policy

Act of 1969 (NEPA), 42 U.S.C.A. § 4321, et seq.; the implementing regulations of

the FAA, 14 C.F.R. 150, et seq.; the regulations of the United States Council on

Environmental Quality (CEQ), 40 C.F.R. 1500 , et seq.; and section 5 of the

United States Administrative Procedure Act (APA), 5 U.S.C.A. § 701, et seq.; and

28 U.S.C.A. § 1331, to compel the FAA to review the environmental and safety

impacts pursuant to NEPA of Frontier Air Lines' "business decision" to greatly

exceed its permitted two flights per week at TTN and operate as a high-frequency

air carrier.

To date, however, the FAA has never rendered a decision assessing the

environmental impacts of Frontier's expanded operations, claiming they are

exempt under the Airline Deregulation Act of 1979, but without providing any

citation to any section or clause in that act for such a radical proposition. That law

did not repeal or override NEPA.

This case is on all fours with State of Illinois ex rel. Scott v. Butterfield, 396

F.Supp. 632, 635 (N.D. Ill. 1975) in which the District Court was asked to review

"actions of officers and employees of the [FAA] ... which have allegedly resulted

in the uncontrolled increase in aircraft operations, noise, and air pollutants at

O'Hare International Airport in violation of the [NEPA]." The District Judge

reasoned that "the court must have jurisdiction to determine whether said [EIS] is

required at all. To hold otherwise is to allow an agency to circumvent judicial

review merely by failing to file a statement," citing Hanly v Kleindienst, 471 F.2d

823 (2d Cir. 1972) (Hanly II) (court review of agency's decision not to file an

environmental impact statement) ... In light of our determination that our jurisdiction is properly invoked pursuant to 28 U.S.C. 1331 and the Administrative Procedure Act," the court would reach the merits of the complaint. Scott v. Butterfield, 396 F.Supp. at 639.

The District Court supported its conclusions as follows: "Thus there is 'Federal action' [triggering NEPA] ... not only when an agency proposes to build a facility itself, but also whenever an agency makes a decision which permits action by other parties which will affect the quality of the environment. NEPA's impact statement procedure has been held to apply where ... the agency made a decision which permitted some other party, private or governmental, to take action affecting the environment," 396 F.Supp. at 639-640 quoting one of the seminal cases in NEPA jurisprudence, Scientists' Institute for Public Information, Inc. v. Atomic Energy Commission, 481 F.2d 1079, 1088-1089 (D.C.Cir. 1973). As a result, the court held that "we believe the claim would lie which compels the production of a statement giving consideration to the environmental effects of activities creating increased operational growth at the airport." Scott v. Butterfield, 396 F.Supp. at 640–641.

The District Court did not stop there, holding that the NEPA "requires that before a preliminary or threshold determination of significance is made the

responsible [federal] agency must give notice to the public of the proposed major

federal action and an opportunity to submit relevant facts which might bear upon

the agency's threshold decision," <u>Scott v. Butterfield,</u> 396 F.Supp. at 641, citing

<u>Hanly</u>, 471 F.2d at 836. "Otherwise the agency, lacking essential information,

might frustrate the purpose of NEPA by threshold determination that an impact

statement is unnecessary. Furthermore an adequate record serves to preclude later

changes in use without consideration of the environment of significance as

required by NEPA."

As we pointed out, there was no public notice by the FAA of the Frontier

Airlines Ops Specs amendment, and no public notice given of the FAA's response,

and the terms of the FAA approval of the Ops Specs amendment were not revealed

by the FAA until the filing of its motion to dismiss in this action. <u>See Cross-Sound

Ferry Services, Inc. v. U.S.</u>, 573 F.2d 725, 731 (2nd Cir. 1978): "Furthermore,

before such a threshold determination is made, any agency must give public notice

of the proposed federal action, and an opportunity to submit relevant data which

might bear upon the agency's threshold decision."

The District Court in <u>Scott v. Butterfield</u> emphasized that "the suit herein is

not directed to the shutdown of O'Hare International Airport or any phase thereof;

the attack is directed at its unstudied growth and the requested injunction is aimed

at further increases in operation pending compliance with the NEPA." 396 F.Supp. at 644. Likewise, plaintiffs do not seek an order to shut down TTN or Frontier operations entirely, but simply to limit "increases in operation pending compliance with the NEPA."

Plaintiffs recognize that final orders or decisions of the FAA are appealable solely to the Court of Appeals, as plaintiffs did in 2006.   However, there is no FAA order from which to appeal. Nor has the FAA responded to our request for reconsideration of the FAA's position that no NEPA compliance is necessary despite Frontier's expanded use of the TTN made possible by FAA grants to improve the airport, including its runways. Nor has the FAA complied with the terms of the FAA's 2008 Order that withdrew the FONSI/ROD in which the FAA pledged it would do a NEPA review if TTN were to attract a low-fare/high-frequency air carrier to the airport, as has occurred.

The Scott v. Butterfield case remains "good law" for the basic proposition that the District Courts have subject matter jurisdiction of complaints alleging that the FAA must perform a NEPA assessment of the environmental effects of an increase in commercial flights out of an airport which has received federal funding. See, e. g., City of Atlanta v. United States, 531 F.Supp. 506 (N.D. Ga. 1982), quoting Virginians for Dulles v. Volpe, 541 F.2d. 442, 445 (4th Cir. 1976),

holding that "the FAA's acquiescence in the vastly expanded use the Washington D. C. Airports requires an impact statement."

Additional precedent finding jurisdiction in a district court to review an agency's decision not to conduct a NEPA analysis of a project includes: <u>City of Irving, Tex. v. Federal Aviation Admin.</u>, 539 F.Supp. 17, 27, 34 (N.D.Tex. 1981), citing <u>Citizens for Responsible Area Growth v. Adams</u>, 434 F.Supp. 403 (D.D.C. 1977); <u>City of Romulus v. County of Wayne</u>, 392 F.Supp. 578 (E.D.Mich. 1975); and <u>City of Boston v. Coleman</u>, 397 F.Supp. 698 (D.Mass. 1975).

**Point 2.      There are reasonable grounds for tolling the 60-day time limit for challenging the FAA's "order:"**

The FAA argues that "the complaint should still be dismissed as against the FAA because plaintiff's claims are time barred," citing 49 U.S.C. § 46110 as requiring that "the petition to review a final order of the FAA, in the Court of Appeals, 'must be filed not later than 60 days after the order is issued.'" FAA Brief at 12. The FAA goes on to assert that the "final order plaintiffs challenge– that is, the FAA's approval of an amendment to Frontiers Ops Specs authorizing Frontier's expansion of operations to Trenton airport–was issued on September 25, 2012. Plaintiffs filed this lawsuit on April 28, 2014, long after the 60 day period. As such there complaint is time-barred unless 'there are reasonable grounds for

not filing by the 60th day.'" FAA Brief at 12.

Plaintiffs agree that 49 U.S.C. § 46110 reposes exclusive jurisdiction in the courts of appeals for challenges to final orders of the FAA within 60 days of the public issuance of the order, but it does not apply to this action. Plaintiffs are challenging the apparent policy of the FAA that it will not examine the environmental and safety impacts of service by Frontier – and by extension, any other airline at any other airport – that has been expanded far beyond anything contemplated in the Ops Specs amendment approved by the FAA.

The plaintiffs did not appeal the September 25, 2012 Ops Specs amendment for four reasons: first, it was never publicly issued; we were not made aware of the contents of that letter, even assuming it is "final," until reading it as Exhibit B to the FAA brief. And second, now that its contents are revealed for the first time, we see that letter limited Frontier to a trivial two daytime flights per week, well below the significance threshold for NEPA. As such there was no reason to appeal it. Hence, had the letter been issued as a formal FAA order, there would have been no credible basis for attacking it. Third, plaintiffs reasonably believed that when they informed the FAA of Frontier's expanded use of the TTN, and reminded the FAA of its 2008 Order that introduction of high-frequency airline service would trigger NEPA, the FAA would promptly initiate a NEPA process, as it had in 1999. But

the FAA did not even answer the plaintiffs' letter request. Finally, since the FAA

had pledged to perform a "noise mitigation" analysis, plaintiffs reasonably believe

they should await release and review of that study, which, however, has not been

forthcoming. Only as a last resort, having given up hope of a reasoned response by

the FAA, did we file the lawsuit which we had hoped to avoid. Thus, reasonable

grounds exist for tolling the 60-day period for appeal, assuming the 60-day time

limit applies to actions in the District Court as well as the Court of Appeals.

    In Avia Dynamics, Inc. v. FAA, 641 F.3d 516, 520-521 (D.C. Cir. 2011),

the court reviewed the timeliness issue in detail, holding that "Section 46110 (a)

requires that a petition be filed within 60 days of the date the order is issued,

which we read to mean that the filing period begins to run on the date the order is

officially made public," citing Fla. Manufactured Hous. Ass'n v. Cisneros, 53 F.3d

1565, 1574 (11th Cir. 1995) ("the verb issue clearly refers to an act of public

announcement....") and observing that "in effect, the private communication about

which the petitioner knew nothing," does not constitute an order for purposes of

the 60 day rule."

    And see also Safe Extensions, Inc. v. FAA, 509 F.3d 593, 599-600 (D.C.

Cir. 2007) reciting the FAA argument "that to qualify as an order, an agency

decision must not only be final but also be accompanied by a record sufficient to

permit judicial review...." and concluding that "we could review an agency's action despite the absence of a quasi-judicial proceeding ... at least when an evidentiary record existed." In Greater Orlando Aviation Authority v. FAA, 939 F.2d 954 (11th Cir. 1991), the court discussed its finding that "reasonable grounds" existed for the late filing of the petition:

> [T]he Aviation Authority [petitioner] argues that it was attempting to persuade the FAA to reconsider its original decision. As discussed previously, however, FAA rules do not allow for reconsideration of a finding that a structure is not an obstruction. The Aviation Authority simply made a mistake in its interpretation of the FAA's procedures. While ignorance is not typically excusable, it is understandable in this case, when one considers the confusion surrounding the FAA's determination of no obstruction.

The court held that "we are persuaded that this confusion presents reasonable grounds to explain why the Aviation Authority may have waited until after the denial of relief before filing its notice of appeal." And see National Air Trans. Ass'n v. McArtor, 866 F.2d 483, 485 (D.C.Cir. 1989) affirming the requirement of public notice to start the 60-day period and reasoning that although "statutory time limitations on judicial review of [FAA rulemaking] are jurisdictional, self evidently the calendar does not run until the agency has decided a question in a manner that reasonably puts aggrieved parties on notice of the rule's content."

**Point 3.**     **The FAA's refusal to initiate environmental and safety reviews of the Frontier airlines's unilateral decision to exceed the two flights per week limit is arbitrary, capricious, and contrary to law.**

The FAA's theory of the case makes no sense. As we understand it, the FAA's position is that even though the Ops Specs amendment is limited to two flights per week, the FAA will not engage in any environmental or safety review of the expanded and increased use of TTN beyond what FAA approved in the original Ops Specs proposal. By this logic, granting Ops Specs amendment for one flight per week allows the carrier to expand operations to 100 or more flights per day without any environmental or safety review taking place. To repeat, Frontier received approval to use TTN for exactly two flights per week, but Frontier has expanded service and use of TTN for departures and arrivals which now total at least 62 per week, 31 times what was approved by the FAA.

An additional factor, as we pointed out in our letters to the FAA, the TTN has utilized extensive federal funds to expand and improve TTN airport facilities for the purpose of facilitating use of the airport for Frontier's expansion plans. In its 2008 Order, the FAA stated that if TTN were expanded to attract low-fare/high-frequency air carrier, such as Southwest, a NEPA environmental review would be necessary.  Thus, we reasoned that if we reminded the FAA of this pledge as contained in the 2008 Order, the FAA would promptly institute a NEPA review

process, as it had in 1999. However, the FAA never responded to our letter. This

unexplained reversal of NEPA position is per se arbitrary and capricious. See

Citizens for Responsible Area Growth v. Adams, 477 F. Supp. 994, 1005-1006

(D.N.H. 1979):

> FAA's decision reflects an unexplained 'about-face' of
> its own. It's November 1978 letter concurs ... with
> respect to the need for an EIS.... The June 1979 Negative
> Declaration reversed the earlier conclusion that the
> runway expansion must be assessed to satisfy NEPA ...
> Insofar as [FAA] abandons, without explanation, its prior
> statement that an EIS is required, it is unreasonable.

The absence of an administrative record or "Record of Decision" is further

justification for this court having subject matter jurisdiction. The so-called record

below is nothing more than a two-page letter from Frontier requesting permission

to use TTN as one of its many airport destinations, followed by a FAA form letter

granting approval and attaching a list of approved airports. There are no findings

of fact, no notice and opportunity for public comment, no hearings, no evidence,

only these two cryptic letters which have just now been made public for the first

time. In Assoc. of Data Processing Service Organizations, Inc. v. Bd of Governors,

745 F.2d 677 (D.C.Cir. 1984), the court reviewed the standard of judicial review:

> The "scope of review" provisions of the APA, 5 U.S.C.
> Sec. 706(2), are cumulative ... When the arbitrary or
> capricious standard is performing its function of assuring

> factual support, there is no substantive difference
> between what it requires and what would be required by
> the substantial evidence test, since it is impossible to
> conceive of a "nonarbitrary" factual judgment supported
> only by evidence that is not substantial in the APA sense
> ... We have noted on several occasions that the
> distinction between the substantial evidence test and the
> arbitrary and capricious test is "largely semantic,"
> [citations omitted] and have indeed described that view
> as "the emerging consensus of the Courts of Appeals"
> [more citations omitted].
> (Data Processing, 745 F.2d at 683-684.)

The FAA claims that the plaintiffs were well aware of the necessity of filing

a petition with the Court of Appeals, rather than a complaint in District Court,

because we had filed in the Third Circuit in our 2006 NEPA lawsuit. In that earlier

case–which ended with a voluntary dismissal based on the FAA's pledge to do a

NEPA review prior to granting authority for TTN to attract a high-frequency air

carrier–there was an extensive public record, including publication of a draft EA,

public hearing testimony, final decision on NEPA compliance, with a copy of that

final decision timely served on plaintiffs' counsel. In this case there is no

administrative record, no public notice or proceeding, no evidence, no record of

decision, and no environmental or safety review.

**Point 4.     The cases cited by the FAA in its brief in support of the motion to dismiss are readily distinguishable and therefore not controlling:**

The cases cited by the FAA in support of the dismissal motions and its argument that plaintiffs should have filed in the Court of Appeals are readily distinguishable as challenges to the adequacies of FAA environmental reviews conducted openly and publicly pursuant to NEPA. They do not deal with the practice in this case in which there is no environmental review or decision whatever, and thus nothing for the Court of Appeals to review.

For example, the FAA relies heavily on the very recent holding of this court in <u>Bellocchio v. N.J. Dept. of Environmental Protection</u>, 2014 WL 146481 (D.N.J. April 15, 2014) wherein, according to the FAA: "Chief Judge Simandle found, in granting the FAA's Rule 12 (b) (1) motion [to dismiss], that a NEPA challenge to FAA decisions concerning various projects at the Philadelphia International Airport implicated final orders of the FAA subject to 49 U.S.C. 46110(a)'s grant of exclusive jurisdiction to the Courts of Appeals. <u>Bellocchio</u>, 2014 WL 1464814, at 5." (FAA brief at 9.)

In <u>Bellocchio</u>, the FAA had scrupulously followed the dictates of NEPA; the agency prepared and the court "considered the FAA's environmental impact statements and records of decisions related to the projects" which the court

deemed sufficient to satisfy NEPA. Ibid. In short, unlike the present, there was a

full record of NEPA compliance for the court to review. This record is briefly

summarized in footnote 12: "The record of decision approving the Runway 17 –

35 Project was issued on April 29, 2005 and states that the decision 'constitutes a

final order of the FAA administrator subject to review by the Courts of Appeals of

the United States...."

 Equally inapplicable is the Third Circuit holding in Fleming v. U.S.

Department of Transportation, 348 F. App'x 736, 737 (3d Cir. 2009) , quoted by

the FAA and by Judge Simandle for the principle that "[W]hen the resolution of a

plaintiff's claims in federal court requires an examination of the underlying FAA

proceedings, the district courts lack subject matter jurisdiction over any such

claims." Bellocchio at 16.  Here, of course, there are no "underlying FAA

proceedings" for the Court of Appeals to consider. Thus, jurisdiction to compel

compliance with NEPA lies with this court.

 Equally inapposite is the FAA's reliance on Jones v. United States,

625 F.3d 827, 829 (5th Cir. 2010). In that case, the Court of Appeals found that the

plaintiff's Civil Rights claims, "alleging that the denial [of employment] was

retaliation for his Equal Employment Opportunity activity while employed at the

FAA" were "inescapably intertwined with a review of the procedures and merits of

the FAA's order denying the [employment] application." The court reasoned that "evaluating whether the FAA had a legitimate reason for denying Jones' application and whether the reason was a pretext for retaliation necessarily requires a review and balancing of the same evidence that the FAA had weighed." In the present, there have been no proceedings and no evidence of NEPA compliance, as the FAA has simply washed its hands of any responsibility for reviewing the Frontier Airlines high-frequency service at TTN.

Equally inapplicable are the other cases cited by the FAA as the claimed legal basis for dismissal of plaintiff's claims.  St. John's United Church of Christ v. City of Chicago, 502 F. 3d 616, 630 (7th Cir. 2007) involved a challenge to FAA funding of O'Hare Airport's condemnation of a church cemetery, the adequacy of an EIS on the airport layout plan and the ROD in which the FAA adopted an EIS. In Friends of Richards-Gebaur Airport v. FAA, 251 F.3d 1178, 1184 (8th Cir. 2001), the court affirmed the FAA's grant of a Categorical Exclusion from NEPA after compiling a full record and emphasizing that "the public had an opportunity to participate in and comment on the proposed redevelopment [of the airport] throughout the more than two years in which the application was pending before the FAA." In Sierra Club v. U.S. Dept. of Transp., 753 F.2d 120, 121 (D.C.Cir.1985), environmental groups contested the FAA's authorization for

Frontier Airlines to use the Jackson Hole Airport for two years while the agency collected additional noise impact evidence and completed environmental studies pursuant to NEPA. In Sima Prods. v. McLucas, 612 F.2d 309, 313 (7th Cir. 1980) the court determined that judicial review "will best be served if 'order' is interpreted to mean an agency action capable of review on the basis of the administrative record ... It is the availability of a record for review and not the holding of a quasi-judicial hearing which is now the jurisdictional touchstone." And See also, City of Elizabeth v. Blakey, 2007 WL 4415054, at 3 (D.N.J. Dec. 14, 2007), finding no jurisdiction in the District Court to litigate the alleged inadequacy of the FAA's final environmental statement or EIS.

As we have shown, in each of these cases the FAA complied with NEPA by engaging in an open public process, soliciting public comments or holding public hearings, thereby developing an extensive administrative record, followed by issuance of a formal decision which the Court of Appeals subsequently upheld. These cases are unlike the current action in which the FAA has abdicated its duties under NEPA and is refusing to engage in any analysis whatever of the Frontier Airlines unilateral decision to exceed the restrictions set forth in its Ops Specs amendment of September 25, 2012. There is consequently no order, final or otherwise, approving of the increase in commercial jet service flights from two per

week, as granted by the FAA, and what is now at least 62 flights per week, with flight paths descending or ascending directly over the plaintiff's communities.

**CONCLUSION:**

We do not oppose dismissal of codefendants Frontier Airlines and Mercer County, provided they are not deemed indispensable parties, as our complaint is directed primarily at the FAA and its failure to perform any environmental review of Frontier Airlines operations.

For the reasons set forth above, plaintiffs respectfully request that the District Court deny the FAA motion to dismiss and render a decision that the Court has subject matter jurisdiction of the plaintiffs' complaint seeking adjudication of the FAA's failure or refusal to perform any environmental or safety analysis, as required by NEPA and the FAA's implementing regulations, of the expansion of commercial passenger service by Frontier Airlines at the Trenton Mercer Airport beyond the terms of the Ops Specs amendment granted to Frontier Airlines.

Date: November 12, 2014.                    Respectfully submitted,

                                            POTTER AND DICKSON

                                            By   /s/  R. William Potter
                                            Attorneys for Plaintiffs

R. William Potter
Peter D. Dickson
POTTER AND DICKSON
194 Nassau Street, Suite 31
Princeton, NJ 08542
Telephone: (609) 921-9555
Fax: (609) 921-2181
Email: rwppddlaw@cs.com
and potterrex@cs.com
Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| BRRAM, INC., ET AL., | : Civil Action No. 3:14-cv-02686 (JAP) |
| Plaintiffs, | : |
| | : |
| v. | : Hon. Joel A. Pisano, U.S.D.J. |
| | : Hon. Douglas E. Arpert, U.S.M.J. |
| UNITED STATES FEDERAL | : |
| AVIATION ADMINISTRATION, ET | : |
| AL., | :           DOCUMENT FILED |
| Defendants. | :           ELECTRONICALLY |

CERTIFICATION OF R. WILLIAM POTTER
SUBMITTED IN RESPONSE
TO MOTIONS TO DISMISS

1.    I am R. William Potter, Attorney at Law of the State of New Jersey, and

counsel for the plaintiffs herein.

2.    Enclosed with the response to the motions to dismiss by the FAA, Frontier

Airlines, and Mercer County are 36 certifications from residents of Bucks County and

Mercer County.

3.    I certify that the enclosed 36 certifications are true copies of the originals

signed and sent to me by those residents.

I certify that the foregoing statements made by me are true.  I am aware that if any of the foregoing statements are willfully false, I am subject to punishment.

Dated: November 12, 2014

/s/ R. William Potter

R. WILLIAM POTTER
Attorney for Plaintiffs

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

**BRRAM, INC., ET AL.,**

Plaintiffs,

v.

**UNITED STATES FEDERAL
AVIATION ADMINISTRATION,
ET AL.,**

Defendants.

Civil Action No. 3:14-cv-02686

Hon. Joel A. Pisano, U.S.D.J.
Hon. Douglas E. Arpert, U.S.M.J.

## CERTIFICATION OF HILLARY ARMITAGE

1. My full name is Hillary Armitage.

2. I reside at 81 N. Delaware Avenue, Yardley, PA 19067.

3. I am making this certification (sworn statement) with the understanding that it will be used by an attorney as support for a motion seeking preliminary injunctive relief to restrain Frontier Airlines from continuing to fly over my house and to reduce the impact of those overflights.

4. I am personally and adversely affected and injured by the expansion of usage of the Trenton Mercer Airport by Frontier Airlines.

5. For example, Frontier Airlines operates regular commercial passenger service by various jet aircraft which take off from or land at Trenton Mercer Airport with a large number of these aircraft flying directly over my house at early morning hours or at night.

Exhibit 7

6. Specifically, these overflights cause a great deal of noise, especially in the morning and in the evening. Vibration is significant!

7. These overflights typically operate at a low altitude and cause the following disruptive impacts and injuries to me and my family: Telephone calls interrupted, family conversations stilted, river ambiance shattered, sleep disturbed by early morning flights.

8. These overflights have been ongoing and, it is my understanding, that Frontier Airlines intends to further expand its schedule of passenger flights, all or most of which will continue to originate or terminate by flying over my house and community.

9. As a result of this pattern of overflights, my family and I are losing sleep, feeling nervous and jittery, avoiding going outside, and keeping the windows closed even when the weather is very nice.

10. It is further my understanding that if I put my house on the market in order to sell it and move out of the overflight area of Frontier Airlines, I would have to provide notice to any prospective purchaser as to this problem, which will necessarily lower the value of my property.

11. I have other concerns as well, for example: property values will be affected by the environmental impact. I love Yardley and our house on the river.

Money is secondary, but as a senior citizen I have to be concerned with my future and my investments.  My house and this community is a major part of that investment.

12.  For these reasons, I am providing this certification (sworn statement) to assist the court in reviewing the attorney's motion for injunctive relief, seeking to prevent or at least mitigate further injury to me and others similarly situated beneath the flight paths of Frontier Airlines.

I certify that the foregoing statements made by me are true.  I am aware that if any of the foregoing statements are willfully false, I am subject to punishment.

Dated: June 7, 2014.

Hillary Armitage

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

**BRRAM, INC., ET AL.,**

      Plaintiffs,

  v.

**UNITED STATES FEDERAL
AVIATION ADMINISTRATION,
ET AL.,**

      Defendants.

Civil Action No. 3:14-cv-02686

Hon. Joel A. Pisano, U.S.D.J.
Hon. Douglas E. Arpert, U.S.M.J.

## CERTIFICATION OF JEFFREY RICHARD BUEHLER

1. My full name is Jeffrey Richard Buehler.

2. I reside at 44 N. Edgewater Avenue, Yardley, PA 19067.

3. I am making this certification (sworn statement) with the understanding that it will be used by an attorney as support for a motion seeking preliminary injunctive relief to restrain Frontier Airlines from continuing to fly over my house and to reduce the impact of those overflights.

4. I am personally and adversely affected and injured by the expansion of usage of the Trenton Mercer Airport by Frontier Airlines.

5. For example, Frontier Airlines operates regular commercial passenger service by various jet aircraft which take off from or land at Trenton Mercer Airport with a large number of these aircraft flying directly over  my house at early morning hours or at night.

Exhibit 8

6. Specifically, these overflights cause a great deal of noise very early in the morning, in the evenings and very late at night when my family and I are trying to sleep. They also cause extreme noise during the day.

7. These overflights typically operate at a low altitude and cause the following disruptive impacts and injuries to me and my family: If our windows are closed, we notice them vibrating and the noise sounds like a large, high-pitched truck bearing down on our house. If our windows are open, the noise fills our house and we are unable to continue conversations until after the plane has passed out of range. If we are outside in the yard, the sound is even worse and disrupts our ability to communicate as well as to enjoy the outdoor environment. During the night from 9 p.m. to 7 a.m., both adults and children in our household cannot go to bed and have a normal night's rest, causing us to lose sleep, and damaging our quality of life.

8. These overflights have been ongoing and, it is my understanding, that Frontier Airlines intends to further expand its schedule of passenger flights, all or most of which will continue to originate or terminate by flying over my house and community.

9. I have complained regularly about the noise and disruption, but to no

avail.

10. As a result of this pattern of overflights, my family and I are losing sleep, feeling nervous and jittery, avoiding going outside, and keeping the windows closed even when the weather is very nice.

11. It is further my understanding that if I put my house on the market in order to sell it and move out of the overflight area of Frontier Airlines, I would have to provide notice to any prospective purchaser as to this problem, which will necessarily lower the value of my property.

12. For these reasons, I am providing this certification (sworn statement) to assist the court in reviewing the attorney's motion for injunctive relief, seeking to prevent or at least mitigate further injury to me and others similarly situated beneath the flight paths of Frontier Airlines.

I certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements are willfully false, I am subject to punishment.

Dated: June 5, 2014

Jeffrey Richard Buehler

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

**BRRAM, INC., ET AL.,**
                        Plaintiffs,

          v.

**UNITED STATES FEDERAL
AVIATION ADMINISTRATION,
ET AL.,**
                        Defendants.

Civil Action No. 3:14-cv-02686

Hon. Joel A. Pisano, U.S.D.J.
Hon. Douglas E. Arpert, U.S.M.J.

## CERTIFICATION OF HOLLY J. BUSSEY

1.  My full name is Holly J. Bussey.

2.  I reside at 20 Knoll Drive, Lower Makefield, PA 19067.

3.  I am making this certification (sworn statement) with the understanding that it will be used by an attorney as support for a motion seeking preliminary injunctive relief to restrain Frontier Airlines from continuing to fly over my house and to reduce the impact of those overflights.

4.  I am personally and adversely affected and injured by the expansion of usage of the Trenton Mercer Airport by Frontier Airlines.

5.  For example, Frontier Airlines operates regular commercial passenger service by various jet aircraft which take off from or land at Trenton Mercer Airport with a large number of these aircraft flying directly over my house at early morning hours or at night.

6.  Specifically, these overflights cause a great deal of noise from the aircraft

Exhibit 9

engines as well as vibrations in our house caused by air turbulence generated by the

engines and the size of the aircraft as it moves through the atmosphere.  (Much like air

concussions from thunder that rattles a house.).  Also, concerns about impacts

to my family's health from unseen pollutants emitted by these aircraft during takeoff and

landing.

When they land, we can often hear and sometimes feel the vibrations of the

engines as they work to stop the planes. When taking off, the whirring of the engines is

so high pitched that it can be painful.

The early morning flights are such that I no longer need an alarm clock to wake up

and having a choice to sleep in has been taken from me.  These flights (anywhere from

5:50-7:30am) disrupt my sleep. Daytime flights drown out any ability to speak normally

until the plane passes.

I have a home office and most recently, I now have to put my clients on hold while

I wait for the plane to pass in order to continue business. These planes are impacting not

only my personal, but business life as well.


7.  These overflights typically operate at a low altitude and cause the following

disruptive impacts and injuries to me and my family: Loud and frequent flights from

Frontier Airlines in addition to corporate jets and loud low flying helicopters that disrupt

conversations, telephone conversations, outdoor activities with family and friends, causing children to be shocked at the sight of the size and noise produced by these aircraft.

The ability to enjoy my yard, do garden work is greatly impacted by the noise of the planes and I cannot but wonder what type of air pollution is being expelled as these big jets fly so low that I can easily see tail information, wheels down and the tops of our 40' hemlocks sway.

Additionally, I hesitate to entertain using my outdoor space as a result of these flyovers. When we do have family or friends, they are shocked and visibly shaken that these planes are so low, and conversation is disrupted. My goddaughter will no longer come over as she is afraid of the planes since they are so low

I feel my property is being taken away from me as a result of the FAA, Mercer County and Frontier Airlines actions even though I live in Pennsylvania and have no say in the matter.

It is impossible to get a good night's sleep because of the late flights. Even if I want to retire early after a hard day of work, I cannot, for I lay in bed 'tense' waiting for the scream of the engines knowing one will be in sometime between 10-11:30 or later. There are no curfews. No regard for those living on the ground.

8.  These overflights have been ongoing and, it is my understanding that Frontier Airlines intends to further expand its schedule of passenger flights, all or most of which will continue to originate or terminate by flying over my house and community.

9.  I have complained regularly about the noise and disruption, but to no avail.

10.  As a result of this pattern of overflights, my family and I are losing sleep, feeling nervous and jittery; avoiding going outside, keeping the windows closed even when the weather is very nice. Additionally, on many flights, my home shakes and I wonder about the long-term impact structurally of these constant vibrations. I am now inspecting walls regularly to see if cracks appear.

11.  It is further my understanding that if I put my house/business on the market in order to sell it and move out of the overflight area of Frontier Airlines, I might have to provide notice to any prospective purchaser as to this problem, which could lower the value of my property.

12.  For these reasons, I am providing this certification (sworn statement) to assist the court in reviewing the attorney's motion for injunctive relief, seeking to prevent or at

least mitigate further injury to me and others similarly situated beneath the flight paths of

Frontier Airlines.

I certify that the foregoing statements made by me are true.  I am aware that if any

of the foregoing statements are willfully false, I am subject to punishment.

Dated: _9 June 2014_

_Holly J Bussey_

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

**BRRAM, INC., ET AL.,**

Plaintiffs,

v.

**UNITED STATES FEDERAL AVIATION ADMINISTRATION, ET AL.,**

Defendants.

Civil Action No. 3:14-cv-02686

Hon. Joel A. Pisano, U.S.D.J.
Hon. Douglas E. Arpert, U.S.M.J.

## CERTIFICATION OF JUDITH CLARKE

1. My full name is Judith Clarke.

2. I reside with my family at 11 Orchard Avenue, Pennington, NJ 08534.

3. I am making this certification (sworn statement) with the understanding that it will be used by an attorney as support for a motion seeking preliminary injunctive relief to restrain Frontier Airlines from continuing to fly over my house and to reduce the impact of those overflights.

4. I am personally and adversely affected and injured by the expansion of usage of the Trenton Mercer Airport by Frontier Airlines.

5. For example, Frontier Airlines operates regular commercial passenger service by various jet aircraft which take off from or land at Trenton Mercer

Exhibit 10

Airport with a large number of these aircraft flying directly over my house at early morning hours or at night.

6. Specifically, these overflights cause a great deal of noise.

7. These overflights typically operate at a low altitude; we have to stop speaking, whether we are on the phone doing business from our home office, or in person as we cannot hear each other at all, unless screaming. Our children, one of whom is in elementary school and goes to bed at 9:00, is awakened by the noise. We cannot carry out normal household activities, and feel as though everything freezes while these low-flying aircraft attack our sanity and peace of mind. Our children are denied a full night's sleep on school nights, and we cannot hold a conversation. The house itself often seems to shake, and the noise and vibration give an ominous feeling of being in a war zone or being under attack. When we are outside trying to play and enjoy our yard (one of the chief reasons many families choose this community) the aircraft flies so low, that children playing in our yard often duck and run to the side as if the planes might land on them. The degradation of our quality of life and mental well-being is real and worrisome. Our family has seriously considered moving, which would be very difficult for us financially.

8. These overflights have been ongoing and, it is my understanding, that

Frontier Airlines intends to further expand its schedule of passenger flights, all or most of which will continue to originate or terminate by flying over my house and community.

9.  A neighborhood group (including my husband, Dean Harrison, and myself) has complained numerous times, including calling the airport noise line about the disruption and escalation of air traffic but have had little response other than being told that "we will come to your neighborhood to measure the noise."  If that has been done, we have not been contacted, and certainly have never heard specifics about any such visit.  We have also appeared before our township council asking for assistance in our efforts to restore peace to our community.  We believe that protecting Open Space (a part of our community's Master Plan) also includes the air, air quality, and creatures above us, along with those on the ground.

10.  As a result of this pattern of overflights, my family and I are losing sleep, feeling stressed, and feeling unprotected.  Too often we avoid going outside, keeping the windows closed even when the weather is beautiful, cutting short games outside during peak flight times, and generally losing a valuable portion of each day while the "commuter" airport invites more and more aircraft to fill our skies.

11.  It is my further understanding that if I put my house on the market in order to sell it and move out of the overflight area of Frontier Airlines, I might have to provide notice to any prospective purchaser as to this problem, which could lower the value of my property.

12.  For these reasons, I am providing this certification (sworn statement) to assist the court in reviewing the attorney's motion for injunctive relief, seeking to prevent or at least mitigate further injury to me and others similarly situated beneath the flight paths of Frontier Airlines.

I certify that the foregoing statements made by me are true.  I am aware that

if any of the foregoing statements are willfully false, I am subject to punishment.

Dated: June 7, 2014.


Judith Clarke

**UNITED STATES DISTRICT COURT**
DISTRICT OF NEW JERSEY

BRRAM, INC., ET AL.,

       Plaintiffs,

    v.

UNITED STATES FEDERAL
AVIATION ADMINISTRATION,
ET AL.,

      Defendants.

Civil Action No. 3:14-cv-02686

Hon. Joel A. Pisano, U.S.D.J.
Hon. Douglas E. Arpert, U.S.M.J.

## CERTIFICATION OF  William Clarke

1. My full name is William J. Clarke Jr.

2. I reside at   53 N. Delaware Ave, Yardley, PA

3. I am making this certification (sworn statement) with the understanding that it will be used by an attorney as support for a motion seeking preliminary injunctive relief to restrain Frontier Airlines from continuing to fly over my house/business and to reduce the impact of those overflights.

4. I am personally and adversely affected and injured by the expansion of usage of the Trenton Mercer Airport by Frontier Airlines.

5. For example, Frontier Airlines operates regular commercial passenger service by various jet aircraft which take off from or land at Trenton Mercer Airport with a large number of these aircraft flying directly over my house at early morning hours or at night.

Exhibit 11

6.  Specifically, these overflights cause a great deal of noise for example, this past Saturday, June 7, I was awoken at 6:39am by a low flying, large aircraft departing (I believe) Trenton Airport.

7.  These overflights typically operate at a low altitude and cause the following disruptive impacts and injuries to me and my family/business:  I work in the city and purchased a home in Yardley in part for the peace and quiet.  I did not bargain for repeated fly-overs by large commercial aircraft at all hours of the day and night that disrupt my sleep and can only imagine the negative impact they could have on the value of my home.

8.  These overflights have been ongoing and, it is my understanding, that Frontier Airlines intends to further expand its schedule of passenger flights, all or most of which will continue to originate or terminate by flying over my house and community.

9.  I have previously complained frequently on the airport's complaint website to what end I'm not sure since no one ever replied.

10.  As a result of this pattern of overflights, my family and I are losing sleep, feeling nervous and jittery, avoiding going outside, keeping the windows closed even when the weather is very nice.

11.  It is further my understanding that if I put my house/business on the market in order to sell it and move out of the overflight area of Frontier Airlines, I might have to

provide notice to any prospective purchaser as to this problem, which could lower the value of my property.

12. I have other concerns as well, for example: I was under the impression that certain environmental and noise studies were to be completed before any airport expansion would be considered. I have read that these were not done or at least completed which is concerning and confusing as the airport seems to have undertaken an expansion regardless.

13. For these reasons, I am providing this certification (sworn statement) to assist the court in reviewing the attorney's motion for injunctive relief, seeking to prevent or at least mitigate further injury to me and others similarly situated beneath the flight paths of Frontier Airlines.

I certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements are willfully false, I am subject to punishment.

Dated: June 9, 2014

William J. Clark J

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

**BRRAM, INC., ET AL.,**

Plaintiffs,

v.

**UNITED STATES FEDERAL
AVIATION ADMINISTRATION,
ET AL.,**

Defendants.

Civil Action No. 3:14-cv-02686

Hon. Joel A. Pisano, U.S.D.J.
Hon. Douglas E. Arpert, U.S.M.J.

## CERTIFICATION OF RICHARD DELELLO

1. My full name is Richard Delello.

2. I reside at 1318 Albright Drive, Yardley, PA 19067.

3. I am making this certification (sworn statement) with the understanding that it will be used by an attorney as support for a motion seeking preliminary injunctive relief to restrain Frontier Airlines from continuing to fly over my house and to reduce the impact of those overflights.

4. I am personally and adversely affected and injured by the expansion of usage of the Trenton Mercer Airport by Frontier Airlines.

5. For example, Frontier Airlines operates regular commercial passenger service by various jet aircraft which take off from or land at Trenton Mercer Airport with a large number of these aircraft flying directly over my house at early morning hours or at night.

Exhibit 12

6. Specifically, these overflights cause a great deal of noise from the aircraft engines, as well as vibrations in our house caused by air turbulence generated by the engines and the size of the aircraft as it moves through the atmosphere. These are much like air concussions from thunder that rattles a house. Also, I have concerns about impacts to my family's health from unseen pollutants emitted by these aircraft during takeoff and landing.

7. These overflights typically operate at a low altitude and cause the following disruptive impacts and injuries to me and my family: Loud and frequent flights from Frontier Airlines that disrupt conversations, telephone conversations, outdoor activities with family and friends, causing children to be shocked at the sight of the size and noise produced by these aircraft. Additionally, I stopped inviting friends over for cookouts as a result of these flyovers. I feel my property is being taken away from me as a result of the FAA, Mercer County and Frontier Airlines actions, even though I live in Pennsylvania and have no say in the matter.

8. These overflights have been ongoing and, it is my understanding, that Frontier Airlines intends to further expand its schedule of passenger flights, all or most of which will continue to originate or terminate by flying over my house and community.

9. I have complained regularly about the noise and disruption, but to no

avail.

10. As a result of this pattern of overflights, my family and I are losing sleep, feeling nervous and jittery, avoiding going outside, keeping the windows closed even when the weather is very nice, and have stopped inviting friends over for cookouts because of the noise. Even though the Trenton Mercer Airport has a night time curfew, it is ignored on a regular basis by all aircraft owners, as well as Frontier Airlines. If Frontier has a delayed flight or needs to relocate an aircraft, Frontier will fly in/out any hour day or night with total disregard for the night time curfew.

11. I also understand that if I put my house on the market to sell it and move out of the overflight area of Frontier Airlines, I might have to provide notice to any prospective purchaser as to our problems, which could lower the value of my property.

12. I am also concerned for the potential for a decrease in property values and the downgrade to the desirability of Yardley and Lower Makefield Township and other communities in Pennsylvania and New Jersey.

13. For these reasons, I am providing this certification (sworn statement) to assist the court in reviewing the attorney's motion for injunctive relief, seeking to prevent or at least mitigate further injury to me and others similarly situated

beneath the flight paths of Frontier Airlines.

I certify that the foregoing statements made by me are true.  I am aware that if any of the foregoing statements are willfully false, I am subject to punishment.

Dated: June 5, 2014.

Richard Delello

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

**BRRAM, INC., ET AL.,**
               Plaintiffs,

      v.

**UNITED STATES FEDERAL
AVIATION ADMINISTRATION,
ET AL.,**
            Defendants.

Civil Action No. 3:14-cv-02686

Hon. Joel A. Pisano, U.S.D.J.
Hon. Douglas E. Arpert, U.S.M.J.

## CERTIFICATION OF PAUL ELRATH

1. My full name is Paul Elrath.

2. I reside at 1366 Yardley-Newtown Road, Yardley, PA 19067.

3. I am making this certification (sworn statement) with the understanding that it will be used by an attorney as support for a motion seeking preliminary injunctive relief to restrain Frontier Airlines from continuing to fly over my house and to reduce the impact of those overflights.

4. I am personally and adversely affected and injured by the expansion of usage of the Trenton Mercer Airport by Frontier Airlines.

5. For example, Frontier Airlines operates regular commercial passenger service by various jet aircraft which take off from or land at Trenton Mercer Airport with a large number of these aircraft flying directly over  my house at early morning hours or at night.

Exhibit 13

6.  Specifically, these overflights cause a great deal of noise and disruption to me and my family, the noise is constant and they fly so low it is scary.

7.  These overflights typically operate at a low altitude and cause the following disruptive impacts and injuries to me and my family: They shake the windows, wake us up from a deep sleep, we cannot talk while planes are flying; they seem to fly directly over our house every hour.

8.  These overflights have been ongoing and, it is my understanding, that Frontier Airlines intends to further expand its schedule of passenger flights, all or most of which will continue to originate or terminate by flying over my house and community.

9. I have complained regularly about the noise and disruption, but to no avail.

10. As a result of this pattern of overflights, my family and I are losing sleep, feeling nervous and jittery, avoiding going outside, do not use our pool or patio any more due to the frequent disturbance and are keeping the windows closed even when the weather is very nice.

11.  It is further my understanding that if I put my house on the market in order to sell it and move out of the overflight area of Frontier Airlines, I would have to provide notice to any prospective purchaser as to this problem, which will

necessarily lower the value of my property.

12.  I have another concern: I am afraid to have a newborn baby in this house due to the noise.  It already spooks our dog every hour.

13. For these reasons, I am providing this certification (sworn statement) to assist the court in reviewing the attorney's motion for injunctive relief, seeking to prevent or at least mitigate further injury to me and others similarly situated beneath the flight paths of Frontier Airlines.

I certify that the foregoing statements made by me are true.  I am aware that if any of the foregoing statements are willfully false, I am subject to punishment.

Dated: June 8, 2014

Paul Elrath

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

**BRRAM, INC., ET AL.,**

　　　　　　　　　Plaintiffs,

v.

**UNITED STATES FEDERAL
AVIATION ADMINISTRATION,
ET AL.,**

　　　　　　　　　Defendants.

Civil Action No. 3:14-cv-02686

Hon. Joel A. Pisano, U.S.D.J.
Hon. Douglas E. Arpert, U.S.M.J.

## CERTIFICATION OF BARRY GAUDET

1. My full name is Barry Gaudet.

2. I reside with my family at 91 Dolington Road, Yardley, PA 19067.

3. I am making this certification (sworn statement) with the understanding that it will be used by an attorney as support for a motion seeking preliminary injunctive relief to restrain Frontier Airlines from continuing to fly over my house and to reduce the impact of those overflights.

4. I am personally and adversely affected and injured by the expansion of usage of the Trenton Mercer Airport by Frontier Airlines.

5. For example, Frontier Airlines operates regular commercial passenger service by various jet aircraft which take off from or land at Trenton Mercer Airport with a large number of these aircraft flying directly over my house at early morning hours or at night.

Exhibit 14

6. Specifically, these overflights cause a great deal of noise, vibration and possibly pollution.

7. These overflights typically operate at a low altitude and cause the following disruptive impacts and injuries to me and my family: They wake us up after 11:00 p.m. and before 7 a.m. They drown out the TV and normal conversations, especially when we are outside.

8. These overflights have been ongoing and, it is my understanding, that Frontier Airlines intends to further expand its schedule of passenger flights, all or most of which will continue to originate or terminate by flying over my house and community.

9. I have complained regularly about the noise and disruption, but to no avail. The airport claims they are operating "legally."

10. As a result of this pattern of overflights, my family and I are losing sleep, feeling nervous and jittery, avoiding going outside and keeping the windows closed even in nice weather.

11. It is my further understanding that if I put my house on the market in order to sell it and move out of the overflight area of Frontier Airlines, I might have to provide notice to any prospective purchaser as to our problems, which could lower the value of my property.

12.  I have other concerns as well, for example, the ultra fine toxic particulates generated by the planes over my house.

13.  For these reasons, I am providing this certification (sworn statement) to assist the court in reviewing the attorney's motion for injunctive relief, seeking to prevent or at least mitigate further injury to me and others similarly situated beneath the flight paths of Frontier Airlines.

I certify that the foregoing statements made by me are true.  I am aware that if any of the foregoing statements are willfully false, I am subject to punishment. Dated: June 6, 2014.


Barry Gaudet

**UNITED STATES DISTRICT COURT**
                    DISTRICT OF NEW JERSEY

**BRRAM, INC., ET AL.,**               Civil Action No. 3:14-cv-02686
                         Plaintiffs,

        v.                              Hon. Joel A. Pisano, U.S.D.J.
                                        Hon. Douglas E. Arpert, U.S.M.J.
**UNITED STATES FEDERAL
AVIATION ADMINISTRATION, ET
AL.,**
                         Defendants.

### CERTIFICATION OF John Giacobetti III

1. My full name is John Giacobetti III

2. I reside at 9 Ludlow Road, Yardley, PA 19067

3. I am making this certification (sworn statement) with the understanding

that it will be used by an attorney as support for a motion seeking preliminary

injunctive relief to restrain Frontier Airlines from continuing to fly over my

house/business and to reduce the impact of those overflights.

4. I am personally and adversely affected and injured by the expansion of

usage of the Trenton Mercer Airport by Frontier Airlines.

5. For example, Frontier Airlines operates regular commercial passenger

service by various jet aircraft which take off from or land at Trenton Mercer

Airport with a large number of these aircraft flying directly over my house at early

Exhibit 15

morning hours (between 6 and 7 AM) and at night (after 11 PM)

6. Specifically, these overflights cause a great deal of noise and vibration to my home.

7. These overflights typically operate at a low altitude and cause the following disruptive impacts and injuries to me and my family/business: I am awakened by the sound of planes flying overhead both early in the morning (between 6 AM and 7 AM) and late in the evening (post 11 PM).  The noise of the planes overhead during the day makes it impossible to have a conversation while outside our house or on our back deck.  Additionally, while running through our neighborhood and along the canal path in Yardley, my running group has to cease any type of conversation any time a Frontier flight passes over, disrupting a normally serene and enjoyable early morning or early evening activity.  During a typical early morning run of 40 minutes, at least two Frontier Airlines flights will depart Trenton Mercer Airport.  Finally, during the nicer weather, it is impossible for us to keep our windows open during the day or night because of how loud the noise is from the overflights.

8. These overflights have been ongoing and, it is my understanding, that Frontier Airlines intends to further expand its schedule of passenger flights, all or

most of which will continue to originate or terminate by flying over my house and community.

9. In the past, both my wife and I have complained regularly about the noise and disruption, but to no avail.  Having gotten no remedy, we simply gave up calling to complain.

10. As a result of this pattern of overflights, my family and I are losing sleep and we can't enjoy normal activities outside that one typically seeks while living in a historic, small town suburb.  The continuous overflights have disturbed the peace and tranquility that we have come to expect while living in Yardley, PA

11.  It is further my understanding that if I put my house/business on the market in order to sell it and move out of the overflight area of Frontier Airlines, I might have to provide notice to any prospective purchaser as to this problem, which could lower the value of my property.

12.  For these reasons, I am providing this certification (sworn statement) to assist the court in reviewing the attorney's motion for injunctive relief, seeking to prevent or at least mitigate further injury to me and others similarly situated beneath the flight paths of Frontier Airlines.

I certify that the foregoing statements made by me are true.  I am aware

that if any of the foregoing statements are willfully false, I am subject to

punishment.

Dated: _June 8, 2014_

**UNITED STATES DISTRICT COURT**
                        DISTRICT OF NEW JERSEY

**BRRAM, INC., ET AL.,**                    Civil Action No. 3:14-cv-02686
                        Plaintiffs,

    v.                                    Hon. Joel A. Pisano, U.S.D.J.
                                        Hon. Douglas E. Arpert, U.S.M.J.

**UNITED STATES FEDERAL**
**AVIATION ADMINISTRATION,**
**ET AL.,**
                        Defendants.

### CERTIFICATION OF Jennifer Beck Giacobetti

1. My full name is Jennifer Beck Giacobetti.

2. I reside at 9 Ludlow Rd., Yardley PA 19067.

3. I am making this certification (sworn statement) with the understanding that it will be used by an attorney as support for a motion seeking preliminary injunctive relief to restrain Frontier Airlines from continuing to fly over my house/business and to reduce the impact of those overflights.

4. I am personally and adversely affected and injured by the expansion of usage of the Trenton Mercer Airport by Frontier Airlines.

5. For example, Frontier Airlines operates regular commercial passenger service by various jet aircraft which take off from or land at Trenton Mercer Airport with a large number of these aircraft flying directly over my house at early morning hours or at night.

6. Specifically, these overflights cause a great deal of noise, house vibration, air

Exhibit 16

pollution and a disruption of life every time they pass directly over our house.

7. These overflights typically operate at a low altitude and cause the following disruptive impacts and injuries to me and my family/business: we lose sleep since many of these flights are late at night and early in the morning, some after 11 pm and many starting at 6:30 am. As a result, I am frequently exhausted due to lack of sleep. We cannot sit or entertain outside anymore because of the noise, not to mention having to see a very large Frontier plane flying so low over our house while trying to relax on our deck. We cannot enjoy having our windows open on beautiful days because of the noise. If I am on the phone when a plane flies over, I cannot hear the person on the other end of the conversation. Even just normal conversation in our home is disrupted because the noise level is so high. I work from home and am disrupted every time a Frontier plane flies over the house. These flights are causing extreme mental and emotional stress due to the worry and concern of how they are disrupting our lives, affecting our quality of life and affecting the value of our house.

8. These overflights have been ongoing and, it is my understanding, that Frontier Airlines intends to further expand its schedule of passenger flights, all or most of which will continue to originate or terminate by flying over my house and community.

9. I have complained regularly about the noise and disruption, but to no avail.

10. As a result of this pattern of overflights, my family and I can not enjoy the

beautiful weather because we don't want to be outside or open our windows because of the constant (and increasing) noise from the Frontier planes. We are losing precious sleep because of how late and early in the day the flights pass over our house EVERY day. My daughters are going into middle school and high school and sleep is extremely important for them – this is disrupted every night and early morning because of these flights. We are constantly on edge because we are always wondering when the next flight is going pass over and interrupt our day. My work also suffers because of the constant interruptions due to excessive noise.

11. It is further my understanding that if I put my house/business on the market in order to sell it and move out of the overflight area of Frontier Airlines, I might have to provide notice to any prospective purchaser as to this problem, which could lower the value of my property.

12. I have other concerns as well, for example: if a catastrophe should occur on take off or landing, the plane would most likely hit our house or neighborhood. When I have passed by the airport on occasion, there have been hundreds of geese in the fields at the western end of the longest runway, despite the black bags on sticks that, I am assuming are some kind of rudimentary attempt at goose control. If those geese were to take off as a plane is passing over, that plane is coming down by or on our house. That is a terrifying possibility to have to live with day in and day out.

13.  For these reasons, I am providing this certification (sworn statement) to assist the court in reviewing the attorney's motion for injunctive relief, seeking to prevent or at least mitigate further injury to me and others similarly situated beneath the flight paths of Frontier Airlines.

I certify that the foregoing statements made by me are true.  I am aware that if any of the foregoing statements are willfully false, I am subject to punishment.

Dated: June, 7 2014

## UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

BRRAM, INC., ET AL.,

               Plaintiffs,

v.

UNITED STATES FEDERAL
AVIATION ADMINISTRATION,
ET AL.,

               Defendants.

Civil Action No. 3:14-cv-02686

Hon. Joel A. Pisano, U.S.D.J.
Hon. Douglas E. Arpert, U.S.M.J.

## CERTIFICATION OF STANLEY E. GONDEK, III

1. My full name is Stanley E. Gondek, III.

2. I reside with my family at 915 Hamilton Drive, Yardley, PA 19067.

3. I am making this certification (sworn statement) with the understanding that it will be used by an attorney as support for a motion seeking preliminary injunctive relief to restrain Frontier Airlines from continuing to fly over my house and to reduce the impact of those overflights.

4. I am personally and adversely affected and injured by the expansion of usage of the Trenton Mercer Airport by Frontier Airlines.

5. For example, Frontier Airlines operates regular commercial passenger service by various jet aircraft which take off from or land at Trenton Mercer Airport with a large number of these aircraft flying directly over my house at early

Exhibit 17

morning hours or at night.

6. Specifically, these overflights cause a great deal of noise all throughout the day. They start before dawn and continue until late night. This is a continual stream of hydrocarbon (jet fuel) vapor lingering over our neighborhood.

7. These overflights typically operate at a low altitude and cause the following disruptive impacts and injuries to me and my family: Primarily noise pollution. Over half the flights fly so low to the ground that our house shakes and its wakes us up if sleeping. It is ruining our quality of life. Our once relaxing backyard is now constantly loud and our family time in our pool is less enjoyable due to the constant noise.

8. These overflights have been ongoing and I understand that Frontier Airlines intends to further expand its schedule of passenger flights, all or most of which will continue to originate or terminate by flying over my house and community.

9. As a result of this pattern of overflights, my family and I are losing sleep and feeling nervous. We keep the windows closed to reduce the sound. My wife is distressed over the situation and is having anxiety thinking that one of the planes is going to crash into our house.

10. It is my further understanding that if I put my house on the market in

order to sell it and move out of the overflight area of Frontier Airlines, I might have to provide notice to any prospective purchaser as to our problems, which could lower the value of my property.

11. We have major concerns over the pollution and the potential acute and chronic effects it may have on our children.

12. For these reasons, I am providing this certification (sworn statement) to assist the court in reviewing the attorney's motion for injunctive relief, seeking to prevent or at least mitigate further injury to me and others similarly situated beneath the flight paths of Frontier Airlines.

I certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements are willfully false, I am subject to punishment.

Dated: June 5, 2014.

*Stanley E. Gondek III*

Stanley E. Gondek, III

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

**BRRAM, INC., ET AL.,**

Plaintiffs,

v.

**UNITED STATES FEDERAL
AVIATION ADMINISTRATION,
ET AL.,**

Defendants.

Civil Action No. 3:14-cv-02686

Hon. Joel A. Pisano, U.S.D.J.
Hon. Douglas E. Arpert, U.S.M.J.

## CERTIFICATION OF SCOTT AND PATTY HAMPSON

1. Our names are Scott and Patty Hampson.

2. We reside at 7 Halls Lane, Yardley, PA 19067.

3. We are making this certification (sworn statement) with the understanding that it will be used by an attorney as support for a motion seeking preliminary injunctive relief to restrain Frontier Airlines from continuing to fly over my house  and to reduce the impact of those overflights.

4. We are personally and adversely affected and injured by the expansion of usage of the Trenton Mercer Airport by Frontier Airlines.

5. For example, Frontier Airlines operates regular commercial passenger service by various jet aircraft which take off from or land at Trenton Mercer Airport with a large number of these aircraft flying directly over our house at early morning hours or at night.

Page 1 of  3

Exhibit 18

6. Specifically, these overflights cause a great deal of noise and vibration to our house.

7. These overflights typically operate at a low altitude and cause the following disruptive impacts and injuries to our family: The 6 a.m. flights have woken us up. It is difficult to have windows open during the day, due to loud flights overhead. In addition, conversations outdoors must stop due to loud noise from low-flying planes. At times it appears the planes are going to drop from the sky directly into the neighborhood.

8. These overflights have been ongoing, and we understand that Frontier Airlines intends to further expand its schedule of passenger flights, all or most of which will continue to originate or terminate by flying over our house and community.

9. We further understand that we put the house on the market in order to sell it and move out of the overflight area of Frontier Airlines, we would have to provide notice to any prospective purchaser as to this problem, which will necessarily lower the value of our property.

10. We have this concern: If a plane crashes before reaching a runway, the Yardley neighborhoods would be decimated.

11. For these reasons, we are both providing this certification (sworn

Page 2 of 3

statement) to assist the court in reviewing the attorney's motion for injunctive

relief, seeking to prevent or at least mitigate further injury to us and others

similarly situated beneath the flight paths of Frontier Airlines.

I certify that the foregoing statements made by me are true.  I am aware that

if any of the foregoing statements are willfully false, I am subject to punishment.

Dated: June 6, 2014


_____ 6/21/14
Patty Hampson

_____ 6/21/2014
Scott Hampson

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

**BRRAM, INC., ET AL.,**

                 Plaintiffs,

      v.

**UNITED STATES FEDERAL
AVIATION ADMINISTRATION,
ET AL.,**

              Defendants.

Civil Action No. 3:14-cv-02686

Hon. Joel A. Pisano, U.S.D.J.
Hon. Douglas E. Arpert, U.S.M.J.

## CERTIFICATION OF MARCIA DEANNE HARLAND

1. My full name is Marcia DeAnne Harland.

2. I reside at 1 Harlow Court, Yardley, PA 19067.

3. I am making this certification (sworn statement) with the understanding that it will be used by an attorney as support for a motion seeking preliminary injunctive relief to restrain Frontier Airlines from continuing to fly over my house and to reduce the impact of those overflights.

4. I am personally and adversely affected and injured by the expansion of usage of the Trenton Mercer Airport by Frontier Airlines.

5. For example, Frontier Airlines operates regular commercial passenger service by various jet aircraft which take off from or land at Trenton Mercer Airport with a large number of these aircraft flying directly over my house at early morning hours or at night.

Exhibit 19

6. Specifically, these overflights cause a great deal of noise. For example, June 3rd I counted five noisy airplanes from Trenton Airport beginning before 7 a.m. in only 45 minutes. This noise greatly disturbs the peace and quiet in my home and neighborhood.

7. These overflights typically operate at a low altitude and cause the following disruptive impacts and injuries to me and my family: We cannot even sit in our backyard without a noisy airplane flying very close overhead. Conversations have to stop during the noise because we can't hear each other speak. One of the main reasons we purchased our home was because it was a quiet, peaceful neighborhood. Frontier Airlines is ruining the serenity we cherish here in Orchard Hill. The noise pollution is very disruptive to part of the duties I perform for my job. I edit daily, and it is very difficult to concentrate when planes fly so closely over my home.

8. These overflights have been ongoing and, it is my understanding, that Frontier Airlines intends to further expand its schedule of passenger flights, all or most of which will continue to originate or terminate by flying over my house and community.

9. I have complained regularly about the noise and disruption, but to no avail.

10. These flights have caused much anxiety for my family; we are concerned about the future and even more daily flights.

11. It is further my understanding that if I put my house on the market in order to sell it and move out of the overflight area of Frontier Airlines, I would have to provide notice to any prospective purchaser as to this problem, which will necessarily lower the value of my property.

12. For these reasons, I am providing this certification (sworn statement) to assist the court in reviewing the attorney's motion for injunctive relief, seeking to prevent or at least mitigate further injury to me and others similarly situated beneath the flight paths of Frontier Airlines.

I certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements are willfully false, I am subject to punishment.

Dated: June 3, 2014

Marcia D. Harland

Marcia DeAnne Harland

## UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

**BRRAM, INC., ET AL.,**

Plaintiffs,

v.

**UNITED STATES FEDERAL
AVIATION ADMINISTRATION,
ET AL.,**

Defendants.

Civil Action No. 3:14-cv-02686

Hon. Joel A. Pisano, U.S.D.J.
Hon. Douglas E. Arpert, U.S.M.J.

### CERTIFICATION OF RONALD SCOTT HARLAND

1. My full name is Ronald Scott Harland.

2. I reside at 1 Harlow Court, Yardley, PA 19067.

3. I am making this certification (sworn statement) with the understanding that it will be used by an attorney as support for a motion seeking preliminary injunctive relief to restrain Frontier Airlines from continuing to fly over my house and to reduce the impact of those overflights.

4. I am personally and adversely affected and injured by the expansion of usage of the Trenton Mercer Airport by Frontier Airlines.

5. For example, Frontier Airlines operates regular commercial passenger service by various jet aircraft which take off from or land at Trenton Mercer Airport with a large number of these aircraft flying directly over my house at early morning hours or at night.

Page 1 of 4

Exhibit 20

6. Specifically, these overflights cause a great deal of noise, vibration, pollution, fright and stress. In addition, the Frontier flights violate noise ordinances governing commercial vehicles and business operations.

7. These overflights typically operate at a low altitude and cause the following disruptive impacts and injuries to me and my family: For example, numerous flights after 10 p.m. and typically as late as 1 a.m. and as early as 3 a.m. on a daily basis, startle me and cause me sleep deprivation, the multiple and daily flyovers by Frontier jets interrupt my business discussions, trade and personal activities. I am being subjected to financial losses by having to install noise barriers, such as noise barrier windows. The flyovers are so loud and frequent that you cannot have normal conversation, drown out telephone calls, and I cannot go outside and enjoy the good weather and have normal recreational activities. My family and I are awakened at early morning hours or cannot go to bed and have a normal night's rest.

8. These overflights have been ongoing and, it is my understanding, that Frontier Airlines intends to further expand its schedule of passenger flights, all or most of which will continue to originate or terminate by flying over my house and community.

9. I have complained regularly about the noise and disruption, but to no

avail.

10.  As a result of this pattern of overflights, my family and I are losing sleep, feeling nervous and jittery, keeping the windows closed even when the weather is very nice, sitting inside instead of using our patio and outside areas, losing property value and growth in property value.

11.  It is further my understanding that if I put my house on the market in order to sell it and move out of the overflight area of Frontier Airlines, I would have to provide notice to any prospective purchaser as to this problem, which will necessarily lower the value of my property.

12.  My health will deteriorate from the continuous stress caused by flyovers of Frontier jets and the likely probability of a plane crashing someday on me and/or my family.  Long-term exposure to noise pollution will induce noise conditioning that will jeopardize my safety and put me in harm's way.  Invasion of my property, including air space, by the trespassing of Frontier jets and their passengers and crew, is unwanted, unwarranted and uncompensated.

13. For these reasons, I am providing this certification (sworn statement) to assist the court in reviewing the attorney's motion for injunctive relief, seeking to prevent or at least mitigate further injury to me and others similarly situated beneath the flight paths of Frontier Airlines.

I certify that the foregoing statements made by me are true.  I am aware that if any of the foregoing statements are willfully false, I am subject to punishment.

Dated: June 3, 2014

_Ronald S. Harland_
Ronald S. Harland

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

**BRRAM, INC., ET AL.,**

Plaintiffs,

v.

**UNITED STATES FEDERAL AVIATION ADMINISTRATION, ET AL.,**

Defendants.

Civil Action No. 3:14-cv-02686

Hon. Joel A. Pisano, U.S.D.J.
Hon. Douglas E. Arpert, U.S.M.J.

## CERTIFICATION OF DAVID HARVEY

1. My full name is David Harvey.

2. I reside at 141 N. Main Street, Yardley, PA 19067.

3. I am making this certification (sworn statement) with the understanding that it will be used by an attorney as support for a motion seeking preliminary injunctive relief to restrain Frontier Airlines from continuing to fly over my house and to reduce the impact of those overflights.

4. I am personally and adversely affected and injured by the expansion of usage of the Trenton Mercer Airport by Frontier Airlines.

5. For example, Frontier Airlines operates regular commercial passenger service by various jet aircraft which take off from or land at Trenton Mercer Airport with a large number of these aircraft flying directly over my house at early morning hours or at night.

Exhibit 21

6. Specifically, these overflights cause a great deal of noise and lost sleep.

7. These overflights typically operate at a low altitude and cause the following disruptive impacts and injuries to me: I work early hours, so I must go to sleep early. I am consistently awakened by passing planes.

8. These overflights have been ongoing, and I understand that Frontier Airlines intends to further expand its schedule of passenger flights, all or most of which will continue to originate or terminate by flying over my house and community.

9. As a result of this pattern of overflights, my family and I are losing sleep and constantly running the air conditioner to keep the noise down. Thus, we have higher electric bills.

11. It is further my understanding that if I put my house on the market in order to sell it and move out of the overflight area of Frontier Airlines, I would have to provide notice to any prospective purchaser as to this problem, which will necessarily lower the value of my property.

12. For these reasons, I am providing this certification (sworn statement) to assist the court in reviewing the attorney's motion for injunctive relief, seeking to prevent or at least mitigate further injury to me and others similarly situated beneath the flight paths of Frontier Airlines.

I certify that the foregoing statements made by me are true.  I am aware that if any of the foregoing statements are willfully false, I am subject to punishment.

Dated: June 5, 2014

David Harvey

## UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

**BRRAM, INC., ET AL.,**
                Plaintiffs,

      v.

**UNITED STATES FEDERAL
AVIATION ADMINISTRATION,
ET AL.,**
              Defendants.

Civil Action No. 3:14-cv-02686

Hon. Joel A. Pisano, U.S.D.J.
Hon. Douglas E. Arpert, U.S.M.J.

## CERTIFICATION OF SUSAN HARVEY

1. My full name is Susan Harvey.

2. I reside at 141 N. Main Street, Yardley, PA 19067.

3. I am making this certification (sworn statement) with the understanding that it will be used by an attorney as support for a motion seeking preliminary injunctive relief to restrain Frontier Airlines from continuing to fly over my house and to reduce the impact of those overflights.

4. I am personally and adversely affected and injured by the expansion of usage of the Trenton Mercer Airport by Frontier Airlines.

5. For example, Frontier Airlines operates regular commercial passenger service by various jet aircraft which take off from or land at Trenton Mercer Airport with a large number of these aircraft flying directly over my house at early morning hours or at night.

Exhibit 22

6. Specifically, these overflights cause a great deal of noise while I am working, as well as vibration and pollution in my garden.

7. These overflights typically operate at a low altitude and cause the following disruptive impacts and injuries to me and my family: They are very loud and often disrupt my conference calls; they scare my dog and shake the walls of my home. Several photos have fallen off my walls. Also, if I leave my windows open, it wakes me up. Flights can be as late as 1 a.m.

8. These overflights have been ongoing, and I understand that Frontier Airlines intends to further expand its schedule of passenger flights, all or most of which will continue to originate or terminate by flying over my house and community.

9. I have complained regularly about the noise, etc., but to no avail.

10. As a result of this pattern of overflights, my family and I are losing sleep. I often get woken up as the flights can be as late as 1 a.m. and as early as 5 a.m. I can no longer leave my windows open..

11. It is further my understanding that if I put my house on the market in order to sell it and move out of the overflight area of Frontier Airlines, I would have to provide notice to any prospective purchaser as to this problem, which will necessarily lower the value of my property.

12. My other concerns are that my garden and roof seem to have suffered due to the low-flying aircraft.

13. For these reasons, I am providing this certification (sworn statement) to assist the court in reviewing the attorney's motion for injunctive relief, seeking to prevent or at least mitigate further injury to me and others similarly situated beneath the flight paths of Frontier Airlines.

I certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements are willfully false, I am subject to punishment.

Dated: June 4, 2014


Susan Harvey

## UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

**BRRAM, INC., ET AL.,**
                 Plaintiffs,

    v.

**UNITED STATES FEDERAL
AVIATION ADMINISTRATION,
ET AL.,**
                 Defendants.

Civil Action No. 3:14-cv-02686

Hon. Joel A. Pisano, U.S.D.J.
Hon. Douglas E. Arpert, U.S.M.J.

### CERTIFICATION OF ELIZABETH HAUSNER

1. My full name is Elizabeth Hausner.

2. I reside at 1586 Clark Drive, Yardley, PA 19067.

3. I am making this certification (sworn statement) with the understanding that it will be used by an attorney as support for a motion seeking preliminary injunctive relief to restrain Frontier Airlines from continuing to fly over my house and to reduce the impact of those overflights.

4. I am personally and adversely affected and injured by the expansion of usage of the Trenton Mercer Airport by Frontier Airlines.

5. For example, Frontier Airlines operates regular commercial passenger service by various jet aircraft which take off from or land at Trenton Mercer Airport with a large number of these aircraft flying directly over my house at early morning hours or at night.

Exhibit 23

6. Specifically, these overflights cause a great deal of noise, vibration, and pollution.

7. These overflights typically operate at a low altitude and cause the following disruptive impacts and injuries to me and my family: Every person in our household is having trouble sleeping and their sleep patterns interrupted. Myself, my husband, and my son are all woken up at very early hours and very late hours from sleep, due to the incredible noise created by the jets flying so low and frequently. Normal activities are disrupted such as watching tv. meal times, talking on the telephone, and having a conversation. We often have to stop talking and wait for the plans to pass to hear each other well. I am forced to keep windows closed more often than I would like because the noise is so loud and frequent, which is causing me to use more energy and spend more money on utilities. When I take my son out to play, our playtime is affected by the planes as they disrupt our games and our conversations. I am embarrassed to have friends over in the backyard because of the frequency of the noise.

8. These overflights have been ongoing, and I understand that Frontier Airlines intends to further expand its schedule of passenger flights, all or most of which will continue to originate or terminate by flying over my house and community.

9. It is further my understanding that if I put my house on the market in order to sell it and move out of the overflight area of Frontier Airlines, I would have to provide notice to any prospective purchaser as to this problem, which will necessarily lower the value of my property.

10. I am also concerned because I have a young son and am very nervous about what type of long-term effects this may have on his health and happiness. His sleep is being disrupted and he could be exposed to increased pollution which could damage his health. I am also very concerned about the impact this will have on the popularity of the area and the property values. I purchased in this community because it was a popular, quiet suburban area with solid property values. With the increase in flights, I do not think this will be the case in the future, and I will be significantly impacted financially due to the increase in flights.

11. For these reasons, I am providing this certification (sworn statement) to assist the court in reviewing the attorney's motion for injunctive relief, seeking to prevent or at least mitigate further injury to me and others similarly situated beneath the flight paths of Frontier Airlines.

I certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements are willfully false, I am subject to punishment.

Page 3 of 4

Dated: June 7, 2014

Elizabeth Hausner

## UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

**BRRAM, INC., ET AL.,**

Civil Action No. 3:14-cv-02686

Plaintiffs,

v.

Hon. Joel A. Pisano, U.S.D.J.
Hon. Douglas E. Arpert, U.S.M.J.

**UNITED STATES FEDERAL
AVIATION ADMINISTRATION,
ET AL.,**

Defendants.

## CERTIFICATION OF LOREEN HOLSTEIN

1. My full name is Loreen Holstein.

2. I reside at 27 Colby Lane, Langhorne, PA 19047.

3. I am making this certification (sworn statement) with the understanding
that it will be used by an attorney as support for a motion seeking preliminary
injunctive relief to restrain Frontier Airlines from continuing to fly over my house
and to reduce the impact of those overflights.

4. I am personally and adversely affected and injured by the expansion of
usage of the Trenton Mercer Airport by Frontier Airlines.

5. For example, Frontier Airlines operates regular commercial passenger
service by various jet aircraft which take off from or land at Trenton Mercer
Airport with a large number of these aircraft flying directly over  my house at early
morning hours or at night.

Page 1 of  4

Exhibit 24

6. Specifically, these overflights cause a great deal of noise over our home between 4-7:30 p.m. and 9-11 p.m. on weeknights, various times on weekends, and when the weather is overcast. The noise pollution can clearly be heard inside and outside our home daily. On many occasions, the planes' landing gear is visibly down, representing an approach to an airport. On a weekly basis, the noise is loud enough that picture frames on the second floor walls of our home are found crooked, showing movement.

7. The flightpath seems to be directly over the Hampton Bridge development or nearby area. Living at this residence for the past 10 years, it was not until the last year, year-and-a-half, that airport traffic and noise has caused disruptions and distractions to a prior quaint neighborhood. The flights have been sometimes frightfully low. Especially when the weather is overcast, the vibrational noise seems even louder. When the flights were limited during November, the relief from the normal flight traffic noise was very noticeable. In addition to disruptions at my home, the local area provides suburban and rural areas for recreational purposes and the noise is disruptive at these local green areas, for instance, Core Creek Park. The airplane noise has distracted my family when outside, woke us during normal sleeping hours and interrupted conversations with neighbors when outside.

Page 2 of 4

8. These overflights have been ongoing and, it is my understanding, that Frontier Airlines intends to further expand its schedule of passenger flights, all or most of which will continue to originate or terminate by flying over my house and community.

9. As a result of this pattern of overflights, my family and I are losing sleep, feeling nervous and jittery, avoiding going outside, and keeping the windows closed even when the weather is nice. If flights are low, then vibrational sound has woke me up at night. When flights are low, there is concern for my family and neighbors' safety. In the past year, when walking around the neighborhood, two flights flew very low in less than an hour, I felt nervous about my safety as well as my neighbors.

10. It is further my understanding that if I put my house on the market in order to sell it and move out of the overflight area of Frontier Airlines, I would have to provide notice to any prospective purchaser as to this problem, which will necessarily lower the value of my property.

11. I have other concerns, as well, for example: Will the amount of current flights increase over our house without concern for the local residents, businesses and historical landmarks? I work in Pennington, New Jersey. If flights continue, will they mitigate the amount of flights and noise from flights with other options

in mind? Will landing approaches be mitigated to occur in the state in which the airport is located? If the amount of flights increase, how will out home value be affected? When purchasing our home, we knew of the airport as a local municipal airport for small airplanes and corporate flights. The switch to include a commercial airline without an appropriate environmental impact assessment is very irresponsible.

12. For these reasons, I am providing this certification (sworn statement) to assist the court in reviewing the attorney's motion for injunctive relief, seeking to prevent or at least mitigate further injury to me and others similarly situated beneath the flight paths of Frontier Airlines.

I certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements are willfully false, I am subject to punishment. Dated: June 10, 2014

Loreen Holstein

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

**BRRAM, INC., ET AL.,**

Plaintiffs,

v.

**UNITED STATES FEDERAL
AVIATION ADMINISTRATION,
ET AL.,**

Defendants.

Civil Action No. 3:14-cv-02686

Hon. Joel A. Pisano, U.S.D.J.
Hon. Douglas E. Arpert, U.S.M.J.

## CERTIFICATION OF INDHUMATHI KANDASWAMY

1. My full name is Indhumathi Kandaswamy.

2. I reside at 2 Harlow Court, Yardley, PA 19067.

3. I am making this certification (sworn statement) with the understanding that it will be used by an attorney as support for a motion seeking preliminary injunctive relief to restrain Frontier Airlines from continuing to fly over my house and to reduce the impact of those overflights.

4. I am personally and adversely affected and injured by the expansion of usage of the Trenton Mercer Airport by Frontier Airlines.

5. For example, Frontier Airlines operates regular commercial passenger service by various jet aircraft which take off from or land at Trenton Mercer Airport with a large number of these aircraft flying directly over my house at early morning hours or at night.

Exhibit 25

6.  Specifically, these overflights cause a great deal of noise and vibration and scariness.

7.  These overflights typically operate at a low altitude and cause the following disruptive impacts and injuries to me and my family: We are losing sleep, worry about the safety of the children playing outside, and we need to have loud conversation to be heard when the planes fly so low above the house.

8.  These overflights have been ongoing and, it is my understanding, that Frontier Airlines intends to further expand its schedule of passenger flights, all or most of which will continue to originate or terminate by flying over my house and community.

9.  As a result of this pattern of overflights, my family and I are losing sleep, feeling nervous and jittery, avoiding going outside, and are keeping the windows closed even when the weather is very nice.

10.  It is further my understanding that if I put my house on the market in order to sell it and move out of the overflight area of Frontier Airlines, I would have to provide notice to any prospective purchaser as to this problem, which will necessarily lower the value of my property.

11. For these reasons, I am providing this certification (sworn statement) to assist the court in reviewing the attorney's motion for injunctive relief, seeking to

prevent or at least mitigate further injury to me and others similarly situated

beneath the flight paths of Frontier Airlines.

I certify that the foregoing statements made by me are true.  I am aware that

if any of the foregoing statements are willfully false, I am subject to punishment.

Dated: June 7, 2014

Indhumathi Kandaswamy

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

**BRRAM, INC., ET AL.,**

                 Plaintiffs,

    v.

**UNITED STATES FEDERAL
AVIATION ADMINISTRATION,
ET AL.,**

               Defendants.

Civil Action No. 3:14-cv-02686

Hon. Joel A. Pisano, U.S.D.J.
Hon. Douglas E. Arpert, U.S.M.J.

## CERTIFICATION OF CHERYL L. LASER

1. My full name is Cheryl L. Laser (Bubenheimer).

2. I reside at 143 N. Main Street, Yardley, PA 19067.

3. I am making this certification (sworn statement) with the understanding that it will be used by an attorney as support for a motion seeking preliminary injunctive relief to restrain Frontier Airlines from continuing to fly over my house and to reduce the impact of those overflights.

4. I am personally and adversely affected and injured by the expansion of usage of the Trenton Mercer Airport by Frontier Airlines.

5. For example, Frontier Airlines operates regular commercial passenger service by various jet aircraft which take off from or land at Trenton Mercer Airport with a large number of these aircraft flying directly over my house at early morning hours or at night.

Page 1 of 3

Exhibit 26

6. Specifically, these overflights cause a great deal of noise and vibration.

7. These overflights typically operate at a low altitude and cause the following disruptive impacts and injuries to me and my family: They are loud and frequent, so that my husband, family, friends and I cannot have a normal conversation and enjoy our lovely backyard or the inside of our home with the windows open. They awaken me in the early morning and hinder my ability to fall asleep at night; therefore, I cannot get a good night's rest..

8. These overflights have been ongoing, and I understand that Frontier Airlines intends to further expand its schedule of passenger flights, all or most of which will continue to originate or terminate by flying over my house and community.

9. As a result of this pattern of overflights, my family and I are losing sleep, and my husband and I are frustrated when outside and keeping the windows closed even when the weather is very nice.

10. It is further my understanding that if I put my house on the market in order to sell it and move out of the overflight area of Frontier Airlines, I would have to provide notice to any prospective purchaser as to this problem, which will necessarily lower the value of my property.

11. For these reasons, I am providing this certification (sworn statement) to

assist the court in reviewing the attorney's motion for injunctive relief, seeking to prevent or at least mitigate further injury to me and others similarly situated beneath the flight paths of Frontier Airlines.

I certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements are willfully false, I am subject to punishment.

Dated: June 9, 2014

Cheryl L. Laser

## UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

**BRRAM, INC., ET AL.,**

               Plaintiffs,

    v.

**UNITED STATES FEDERAL
AVIATION ADMINISTRATION,
ET AL.,**

              Defendants.

Civil Action No. 3:14-cv-02686

Hon. Joel A. Pisano, U.S.D.J.
Hon. Douglas E. Arpert, U.S.M.J.

## CERTIFICATION OF DEBORAH LEAMANN

1. My full name is Deborah Leamann.

2. I reside at 1020 River Road, West Trenton, NJ 08628.

3. I am making this certification (sworn statement) with the understanding that it will be used by an attorney as support for a motion seeking preliminary injunctive relief to restrain Frontier Airlines from continuing to fly over my house and to reduce the impact of those overflights.

4. I am personally and adversely affected and injured by the expansion of usage of the Trenton Mercer Airport by Frontier Airlines.

5. For example, Frontier Airlines operates regular commercial passenger service by various jet aircraft which take off from or land at Trenton Mercer Airport with a large number of these aircraft flying directly over my house at early morning hours or at night.

Exhibit 27

6. Specifically, these overflights cause a great deal of noise, so much disturbance we are unable to talk while planes are passing over and the house shakes and we are unable to sleep.

7. These overflights typically operate at a low altitude and cause the following disruptive impacts and injuries to me and my family: repeatedly being awakened from a dead sleep with this dreadful sound as if the house were going to explode, creating heart palpitations and a fearful reaction.

8. These overflights have been ongoing and, it is my understanding, that Frontier Airlines intends to further expand its schedule of passenger flights, all or most of which will continue to originate or terminate by flying over my house and community.

9. I have complained regularly about the noise and disruption, but to no avail.

10. As a result of this pattern of overflights, my family and I are losing sleep, feeling nervous and jittery, avoiding going outside, and keeping the windows closed even when the weather is very nice.

11. It is further my understanding that if I put my house on the market in order to sell it and move out of the overflight area of Frontier Airlines, I would have to provide notice to any prospective purchaser as to this problem, which will

necessarily lower the value of my property.

12. I have other concerns as well, for example, I worry about the future and worry this is affecting our happiness and enjoyment of normal life.

13.  For these reasons, I am providing this certification (sworn statement) to assist the court in reviewing the attorney's motion for injunctive relief, seeking to prevent or at least mitigate further injury to me and others similarly situated beneath the flight paths of Frontier Airlines.

I certify that the foregoing statements made by me are true.  I am aware that if any of the foregoing statements are willfully false, I am subject to punishment.

Dated: June 5, 2014.

Deborah Leamann

## UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

**BRRAM, INC., ET AL.,**

Plaintiffs,

v.

**UNITED STATES FEDERAL AVIATION ADMINISTRATION, ET AL.,**

Defendants.

Civil Action No. 3:14-cv-02686

Hon. Joel A. Pisano, U.S.D.J.
Hon. Douglas E. Arpert, U.S.M.J.

## CERTIFICATION OF ROBERT V. MOORE

1. My full name is Robert Van Nuys Moore, Jr.

2. I reside with my family at 21 Austin Road, Yardley, PA 19067.

3. I am making this certification (sworn statement) with the understanding that it will be used by an attorney as support for a motion seeking preliminary injunctive relief to restrain Frontier Airlines from continuing to fly over my house and to reduce the impact of those overflights.

4. I am personally and adversely affected and injured by the expansion of usage of the Trenton Mercer Airport by Frontier Airlines.

5. For example, Frontier Airlines operates regular commercial passenger service by various jet aircraft which take off from or land at Trenton Mercer

Exhibit 28

Airport with a large number of these aircraft flying directly over my house at early morning hours or at night.

6. Specifically, these overflights cause a great deal of noise, are affecting my life negatively, and it's scary to see jets so close to my house that I can see the details on the plane.

7. These overflights typically operate at a low altitude and cause the following disruptive impacts and injuries to me and my family: We are being awakened at night when we sleep because the landing jets are so loud and so low. We are being awakened in the morning before it is time to get up because the jets are so loud and so low. It can be difficult to get back to sleep and the lack of sleep affects us the next day. The frequency of these flights and being awakened seems to be increasing. Almost every evening while we are talking downstairs, we have to actually pause for a minute to wit for the plan to fly by so we can hear each other. Several times in the evenings we cannot hear the television because of the loud planes, and we have to pause or reply the segment we missed. When the windows are open, which we like to do, the noise is even worse.

8. These overflights have been ongoing and I understand that Frontier Airlines intends to further expand its schedule of passenger flights, all or most of which will continue to originate or terminate by flying over my house and

community.

9. I have complained by entering some of these occurrences on the BRRAM "file a complaint" web site.

10. As a result of this pattern of overflights, my family and I are having our sleep disrupted and being awakened when we need to rest for the next day's work, having our conversations interrupted, not being able to hear the television, and we are questioning ourselves if we really want to live in this home long term because of the noise. We wonder if we did try to sell the home, would anyone want to buy it in a flight zone, or would the home value be diminished.

11. It is my further understanding that if I put my house on the market in order to sell it and move out of the overflight area of Frontier Airlines, I might have to provide notice to any prospective purchaser as to our problems, which could lower the value of my property.

12. For these reasons, I am providing this certification (sworn statement) to assist the court in reviewing the attorney's motion for injunctive relief, seeking to prevent or at least mitigate further injury to me and others similarly situated beneath the flight paths of Frontier Airlines.

I certify that the foregoing statements made by me are true. I am aware that

if any of the foregoing statements are willfully false, I am subject to punishment.

Dated: June 6, 2014.

_____Rober V Moore_____

Robert V. Moore

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

**BRRAM, INC., ET AL.,**

Plaintiffs,

v.

**UNITED STATES FEDERAL
AVIATION ADMINISTRATION,
ET AL.,**

Defendants.

Civil Action No. 3:14-cv-02686

Hon. Joel A. Pisano, U.S.D.J.
Hon. Douglas E. Arpert, U.S.M.J.

## CERTIFICATION OF KIRK MOYER

1. My full name is Kirk Moyer.

2. I reside at 4 Halls Lane, Yardley, PA 19067.

3. I am making this certification (sworn statement) with the understanding that it will be used by an attorney as support for a motion seeking preliminary injunctive relief to restrain Frontier Airlines from continuing to fly over my house and to reduce the impact of those overflights.

4. I am personally and adversely affected and injured by the expansion of usage of the Trenton Mercer Airport by Frontier Airlines.

5. For example, Frontier Airlines operates regular commercial passenger service by various jet aircraft which take off from or land at Trenton Mercer Airport with a large number of these aircraft flying directly over my house at early morning hours or at night.

Page 1 of 3

Exhibit 29

6. Specifically, these overflights cause a great deal of noise, vibration and pollution.

7. These overflights typically operate at a low altitude and cause the following disruptive impacts and injuries to me and my family: We cannot carry out conversations; planes wake us up with early morning and late night flights.

8. These overflights have been ongoing, and I understand that Frontier Airlines intends to further expand its schedule of passenger flights, all or most of which will continue to originate or terminate by flying over my house and community.

9. It is further my understanding that if I put my house on the market in order to sell it and move out of the overflight area of Frontier Airlines, I would have to provide notice to any prospective purchaser as to this problem, which will necessarily lower the value of my property.

10. I am concerned for the safety of the community due to low altitudes.

11. For these reasons, I am providing this certification (sworn statement) to assist the court in reviewing the attorney's motion for injunctive relief, seeking to prevent or at least mitigate further injury to me and others similarly situated beneath the flight paths of Frontier Airlines.

I certify that the foregoing statements made by me are true. I am aware that

if any of the foregoing statements are willfully false, I am subject to punishment.

Dated: June 6, 2014

Kirk Moyer

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

**BRRAM, INC., ET AL.,**

Plaintiffs,

v.

**UNITED STATES FEDERAL
AVIATION ADMINISTRATION,
ET AL.,**

Defendants.

Civil Action No. 3:14-cv-02686

Hon. Joel A. Pisano, U.S.D.J.
Hon. Douglas E. Arpert, U.S.M.J.

## CERTIFICATION OF LOUISE D. MURPHY

1. My full name is Louise D. Murphy.

2. I reside at 92 Dispatch Drive, Washington Crossing, PA 18977.

3. I am making this certification (sworn statement) with the understanding that it will be used by an attorney as support for a motion seeking preliminary injunctive relief to restrain Frontier Airlines from continuing to fly over my house and to reduce the impact of those overflights.

4. I am personally and adversely affected and injured by the expansion of usage of the Trenton Mercer Airport by Frontier Airlines.

5. For example, Frontier Airlines operates regular commercial passenger service by various jet aircraft, which take off from or land at Trenton Mercer Airport with a large number of these aircraft flying directly over my house at early morning hours or at night.

Exhibit 30

6. Specifically, these overflights cause a great deal of noise and interrupt my workday, breaking my concentration, and slowing down my productivity, not to mention jet fuel pollution, vibration, and other impacts.

7. These overflights typically operate at a low altitude and cause the following disruptive impacts and injuries to me and my family: As a professional writer, working at home, loud noises can easily break my concentration, slowing down my pace, and reducing my productivity. Every distraction costs me money, and, lately, these airplanes have been driving me nuts! For example, I have been awakened at night several times by the loud jet passing overhead; last week, we were trying to eat outside and when a plane flew overhead, we could see the underside. We never would have purchased a home in this area if we thought that there was or would be an active commercial airport; with planes so loud and so often, you begin to rethink where you live.

8. These overflights have been ongoing and, it is my understanding, that Frontier Airlines intends to further expand its schedule of passenger flights, all or most of which will continue to originate or terminate by flying over my house and community.

9. I complain regularly about the noise and disruption.

10. As a result of this pattern of overflights, my family and I are losing

sleep, keeping the windows closed even when the weather is nice, and looking for reasons to seek outdoor activities elsewhere.

11. It is my further understanding that if I put my house on the market to sell it and move out of the overflight area of Frontier Airlines, I might have to provide notice to any prospective purchaser of our problems, which could lower the value of my property.

12. I have other concerns:

**Airport noise and pollution increases risk for illness:** On a 1997 questionnaire distributed to two groups–one living near a major airport, and the other in a quiet neighborhood–two-thirds of those living near the airport indicated they were bothered by aircraft noise, and most said that it interfered with their daily activities.  The same two-thirds complained more than the other group of sleep difficulties, and also perceived themselves as being in poorer health.

**Airport noise affects children:** Airport noise can also have negative effects on children's health and development.  A 1980 study examining the impact of airport noise on children's health found higher blood pressure in kids living near Los Angeles LAX airport than in those living farther away.  A 1995 German study found a link between chronic noise exposure at Munich's International Airport and elevated nervous system activity and cardiovascular levels in children

living nearby.  And a 2005 study published in the prestigious British medical journal, *The Lancet*, found that kids living near airports in Britain, Holland and Spain lagged behind their classmates in reading by two months for every five decibel increase above average noise levels in their surroundings.  The study also associated aircraft noise with lowered reading comprehension, even after socio-economic differences were considered.

**Citizen groups concerned about effects of airport noise and pollution:** Living near an airport also means facing significant exposure to air pollution.  Jack Saporito of the U.S. Citizens Aviation Watch Association (CAW), a coalition of concerned municipalities and advocacy groups, cites several studies linking pollutants common around airports–such as diesel exhaust, carbon monoxide and leaked chemicals–to cancer, asthma, liver damage, lung disease, lymphoma, myeloid leukemia, and even depression.  CAW is lobbying for the clean up of jet engine exhaust as well as the scrapping or modification of airport expansion plans across the country.  Another group working on this issue is Chicago's Alliance of Residents Concerning O'Hare, which lobbies and conducts extensive public education campaigns in an effort to cut noise and pollution and rein in expansion plans at the world's busiest airport.  According to the group, five million area residents may be suffering adverse health effects as a result of

O'Hare, only one of four major airports in the region.

13. For these reasons, I am providing this certification (sworn statement) to assist the court in reviewing the attorney's motion for injunctive relief, seeking to prevent or at least mitigate further injury to me and others similarly situated beneath the flight paths of Frontier Airlines.

I certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements are willfully false, I am subject to punishment.

Dated: June 5, 2014.

Louise D. Murphy

## UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

**BRRAM, INC., ET AL.,**

Plaintiffs,

v.

**UNITED STATES FEDERAL
AVIATION ADMINISTRATION,
ET AL.,**

Defendants.

Civil Action No. 3:14-cv-02686

Hon. Joel A. Pisano, U.S.D.J.
Hon. Douglas E. Arpert, U.S.M.J.

## CERTIFICATION OF JULIE POWER

1. My full name is Julie Power.

2. I reside at 3 Harlow Court, Yardley, PA 19067.

3. I am making this certification (sworn statement) with the understanding that it will be used by an attorney as support for a motion seeking preliminary injunctive relief to restrain Frontier Airlines from continuing to fly over my house and to reduce the impact of those overflights.

4. I am personally and adversely affected and injured by the expansion of usage of the Trenton Mercer Airport by Frontier Airlines.

5. For example, Frontier Airlines operates regular commercial passenger service by various jet aircraft which take off from or land at Trenton Mercer Airport with a large number of these aircraft flying directly over my house at early morning hours or at night.

Page 1 of 4

Exhibit 31

6. The Frontier flights during the day create so much noise that it is impossible to be outside and hold a conversation. And inside, even on good-weather days, we have to keep the windows shut. The air traffic overhead is now constant–Frontier, corporate jets, private planes and helicopters.

Our development in Yardley, Orchard Hill, is situated directly in the flight path of Trenton Mercer Airport–so takeoffs and landings are constant. You hear the rumble/whine of the jet engines and they fly directly overhead. Same with the landings, except you can hear the rumble as the plane lands at the airport. The windows, pictures on the wall, and dishes, etc., vibrate.

The jets come so low through our development I am frightened at the possibilities of what could happen if there was a mishap.

7. These overflights typically operate at a low altitude and cause the following disruptive impacts and injuries to me and my family: The night flights are the worst. The landings that start around 9:00 p.m. and continue past midnight (and sometimes through the night) disrupt my rest and sleep. The lights from the Frontier jets shine directly into my bedroom windows. The flights on weekends (takeoffs) which fly over at approximately 6:15, 7:15, 8:15 etc., also disturb rest and peace.

8. These overflights have been ongoing and, it is my understanding, that

Frontier Airlines intends to further expand its schedule of passenger flights, all or most of which will continue to originate or terminate by flying over my house and community.

9. I have complained; as I state in the attached email, I would like to enjoy a reasonable amount of peace in my home we worked so hard to buy and upkeep. Between 2/16/13 and 8/4/13, I logged approximately 72 complaints for noise on the Trenton-Mercer website.  The attached is the only response I got (complaint #20127147).  I stopped logging complaints because no one is listening to my concerns.

10. As a result of this pattern of overflights, my family and I are losing sleep, feeling nervous and jittery, and keeping the windows closed even when the weather is very nice.

11. It is further my understanding that if I put my house on the market in order to sell it and move out of the overflight area of Frontier Airlines, I would have to provide notice to any prospective purchaser as to this problem, which will necessarily lower the value of my property.

12. For these reasons, I am providing this certification (sworn statement) to assist the court in reviewing the attorney's motion for injunctive relief, seeking to prevent or at least mitigate further injury to me and others similarly situated

beneath the flight paths of Frontier Airlines.

I certify that the foregoing statements made by me are true.  I am aware that

if any of the foregoing statements are willfully false, I am subject to punishment.

Dated: _____6 | 23 | 14_____

Julie Power

Enclosure

## UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

**BRRAM, INC., ET AL.,**

                 Plaintiffs,

   v.

**UNITED STATES FEDERAL
AVIATION ADMINISTRATION,
ET AL.,**

              Defendants.

Civil Action No. 3:14-cv-02686

Hon. Joel A. Pisano, U.S.D.J.
Hon. Douglas E. Arpert, U.S.M.J.

### CERTIFICATION OF SARAYA COUFAL SHERMAN

1. My full name is Saraya Coufal Sherman.

2. I reside with my family at 9 Orchard Avenue, Pennington, NJ 08534.

3. I am making this certification (sworn statement) with the understanding that it will be used by an attorney as support for a motion seeking preliminary injunctive relief to restrain Frontier Airlines from continuing to fly over my house and to reduce the impact of those overflights.

4. I am personally and adversely affected and injured by the expansion of usage of the Trenton Mercer Airport by Frontier Airlines.

5. For example, Frontier Airlines operates regular commercial passenger service by various jet aircraft which take off from or land at Trenton Mercer Airport with a large number of these aircraft flying directly over my house at early morning hours or at night.

Exhibit 32

6. Specifically, these overflights cause a great deal of noise and my home frequently vibrates due to the overhead Frontier flights. My children have been woken up by the flights at night and in the morning. My youngest woke up crying frightened by the loud air traffic noise. I have also been abruptly woken up with the Frontier flight noise as late as 11 p.m. and as early as 6 a.m. The extreme noise has disrupted my normal daily life, including the homework of my children, family meals inside my house and on my back porch. It has even disturbed our family movie night and we have had to rewind movies because the flight noise has drowned out the movie sound.

7. These overflights typically operate at a low altitude and cause the following disruptive impacts and injuries to me and my family: I work from home and the flight noise has impacted many business calls and business presentations. I have frequently had to put my calls on hold because the flight noise is so loud I am unable to hear my clients. In addition, I have had to stop my presentation to wait for the air traffic noise to subside so clients could hear me. The Frontier flight noise drowns out my voice and I have even had comments from my clients (from over the phone) that the noise is very loud and distracting.

8. These overflights have been ongoing and, it is my understanding, that Frontier Airlines intends to further expand its schedule of passenger flights, all or

most of which will continue to originate or terminate by flying over my house and community.

9. I have made a few complaints about the noise and disruption, but to no avail.

10. I also understand that if I put my house on the market to sell it and move out of the overflight area of Frontier Airlines, I might have to provide notice to any prospective purchaser as to our problems, which could lower the value of my property.

11. I am also concerned, as well. I am extremely worried about the added pollution that the flights cause and the short and long-term impact that the daily flight exhaust will have on the health of my children and me. The greyish trail of exhaust is clearly visible as the Frontier flights frequently fly directly over my house. I also worry that the added airport noise and traffic will negatively affect the overall community as house values will fall as no one wants to live with the disruption of flight noise.

12. For these reasons, I am providing this certification (sworn statement) to assist the court in reviewing the attorney's motion for injunctive relief, seeking to prevent or at least mitigate further injury to me and others similarly situated beneath the flight paths of Frontier Airlines.

I certify that the foregoing statements made by me are true.  I am aware that if any of the foregoing statements are willfully false, I am subject to punishment.

Dated: June 6, 2014.

Saraya Coufal Sherman

## UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

**BRRAM, INC., ET AL.,**

Plaintiffs,

v.

**UNITED STATES FEDERAL
AVIATION ADMINISTRATION,
ET AL.,**

Defendants.

Civil Action No. 3:14-cv-02686

Hon. Joel A. Pisano, U.S.D.J.
Hon. Douglas E. Arpert, U.S.M.J.

### CERTIFICATION OF DAVID W. SMITH

1. My full name is David W. Smith.

2. I reside at 7 Knoll Drive, Yardley, PA 19067.

3. I am making this certification (sworn statement) with the understanding that it will be used by an attorney as support for a motion seeking preliminary injunctive relief to restrain Frontier Airlines from continuing to fly over my house and to reduce the impact of those overflights.

4. I am personally and adversely affected and injured by the expansion of usage of the Trenton Mercer Airport by Frontier Airlines.

5. For example, Frontier Airlines operates regular commercial passenger service by various jet aircraft which take off from or land at Trenton Mercer Airport with a large number of these aircraft flying directly over my house at early morning hours or at night.

Exhibit 33

6. Specifically, these overflights cause a great deal of noise and vibration.

7. These overflights typically operate at a low altitude and cause the following disruptive impacts and injuries to me and my family: The planes are so loud I either cannot hear or must pause when I am on conference calls for my work.

8. These overflights have been ongoing, and I understand that Frontier Airlines intends to further expand its schedule of passenger flights, all or most of which will continue to originate or terminate by flying over my house and community.

9. As a result of this pattern of overflights, my family and I are losing sleep, feel nervous and upset, avoid going outside, and are keeping the windows closed even when the weather is nice.

10. It is further my understanding that if I put my house on the market in order to sell it and move out of the overflight area of Frontier Airlines, I would have to provide notice to any prospective purchaser as to this problem, which will necessarily lower the value of my property.

11. I am also concerned about the damage that may occur to my house as a result of the noise.

12. For these reasons, I am providing this certification (sworn statement) to

assist the court in reviewing the attorney's motion for injunctive relief, seeking to prevent or at least mitigate further injury to me and others similarly situated beneath the flight paths of Frontier Airlines.

I certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements are willfully false, I am subject to punishment.

Dated: June 9, 2014

David W. Smith

## UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

**BRRAM, INC., ET AL.,**

Civil Action No. 3:14-cv-02686

Plaintiffs,

v.

Hon. Joel A. Pisano, U.S.D.J.
Hon. Douglas E. Arpert, U.S.M.J.

**UNITED STATES FEDERAL
AVIATION ADMINISTRATION,
ET AL.,**

Defendants.

## CERTIFICATION OF MICHELLE M. SMITH

1. My full name is Michelle M. Smith.

2. I reside at 7 Knoll Drive, Yardley, PA 19067.

3. I am making this certification (sworn statement) with the understanding that it will be used by an attorney as support for a motion seeking preliminary injunctive relief to restrain Frontier Airlines from continuing to fly over my house and to reduce the impact of those overflights.

4. I am personally and adversely affected and injured by the expansion of usage of the Trenton Mercer Airport by Frontier Airlines.

5. For example, Frontier Airlines operates regular commercial passenger service by various jet aircraft which take off from or land at Trenton Mercer Airport with a large number of these aircraft flying directly over my house at early morning hours or at night.

Exhibit 34

6. Specifically, these overflights cause a great deal of noise and interfere with my ability to get proper sleep on an almost daily basis.

7. For these reasons, I am providing this certification (sworn statement) to assist the court in reviewing the attorney's motion for injunctive relief, seeking to prevent or at least mitigate further injury to me and others similarly situated beneath the flight paths of Frontier Airlines.

I certify that the foregoing statements made by me are true.  I am aware that if any of the foregoing statements are willfully false, I am subject to punishment.

Dated: June 9, 2014

Michelle M. Smith

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

**BRRAM, INC., ET AL.,**

Plaintiffs,

v.

**UNITED STATES FEDERAL
AVIATION ADMINISTRATION,
ET AL.,**

Defendants.

Civil Action No. 3:14-cv-02686

Hon. Joel A. Pisano, U.S.D.J.
Hon. Douglas E. Arpert, U.S.M.J.

## CERTIFICATION OF LINDA STAROPOLI

1. My full name is Linda Staropoli.

2. I reside with my family at 4 Harlow Court, Yardley, PA 19067.

3. I am making this certification (sworn statement) with the understanding that it will be used by an attorney as support for a motion seeking preliminary injunctive relief to restrain Frontier Airlines from continuing to fly over my house and to reduce the impact of those overflights.

4. I am personally and adversely affected and injured by the expansion of usage of the Trenton Mercer Airport by Frontier Airlines.

5. For example, Frontier Airlines operates regular commercial passenger service by various jet aircraft which take off from or land at Trenton Mercer

Exhibit 35

Airport with a large number of these aircraft flying directly over my house at early morning hours or at night.

6.  These overflights typically operate at a low altitude and cause the following disruptive impacts and injuries to me and my family: We can't talk outside and in many situations there are a dozen planes or more on one evening.

7.  These overflights have been ongoing and I understand that Frontier Airlines intends to further expand its schedule of passenger flights, all or most of which will continue to originate or terminate by flying over my house and community.

8.  It is my further understanding that if I put my house on the market in order to sell it and move out of the overflight area of Frontier Airlines, I might have to provide notice to any prospective purchaser as to our problems, which could lower the value of my property.

9.  For these reasons, I am providing this certification (sworn statement) to assist the court in reviewing the attorney's motion for injunctive relief, seeking to prevent or at least mitigate further injury to me and others similarly situated beneath the flight paths of Frontier Airlines.

I certify that the foregoing statements made by me are true.  I am aware that

if any of the foregoing statements are willfully false, I am subject to punishment.

Dated: June 3, 2014.

_____

Linda Staropoli

## UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

**BRRAM, INC., ET AL.,**

                    Plaintiffs,

      v.

**UNITED STATES FEDERAL
AVIATION ADMINISTRATION,
ET AL.,**

                  Defendants.

Civil Action No. 3:14-cv-02686

Hon. Joel A. Pisano, U.S.D.J.
Hon. Douglas E. Arpert, U.S.M.J.

### CERTIFICATION OF SCOTT A. STAROPOLI

1. My full name is Scott A. Staropoli.

2. I reside with my family at 4 Harlow Court, Yardley, PA 19067.

3. I am making this certification (sworn statement) with the understanding that it will be used by an attorney as support for a motion seeking preliminary injunctive relief to restrain Frontier Airlines from continuing to fly over my house and to reduce the impact of those overflights.

4. I am personally and adversely affected and injured by the expansion of usage of the Trenton Mercer Airport by Frontier Airlines.

5. For example, Frontier Airlines operates regular commercial passenger service by various jet aircraft which take off from or land at Trenton Mercer

Exhibit 36

Airport with a large number of these aircraft flying directly over my house at early morning hours or at night.

6. Specifically, these overflights cause a great deal of noise and vibrations to our home often at early morning and late evening hours.

7. These overflights typically operate at a low altitude and cause the following disruptive impacts and injuries to me and my family: We are unable to sit in our backyard without multiple low-flying planes disrupting our lives. The noise often wakes us up on weekends and disturbs our sleep at night.

8. These overflights have been ongoing and I understand that Frontier Airlines intends to further expand its schedule of passenger flights, all or most of which will continue to originate or terminate by flying over my house and community.

9. It is my further understanding that if I put my house on the market in order to sell it and move out of the overflight area of Frontier Airlines, I might have to provide notice to any prospective purchaser as to our problems, which could lower the value of my property.

10. For these reasons, I am providing this certification (sworn statement) to assist the court in reviewing the attorney's motion for injunctive relief, seeking to prevent or at least mitigate further injury to me and others similarly situated

beneath the flight paths of Frontier Airlines.

I certify that the foregoing statements made by me are true.  I am aware that

if any of the foregoing statements are willfully false, I am subject to punishment.

Dated: June 3, 2014.

Scott A. Staropoli

**UNITED STATES DISTRICT COURT**
DISTRICT OF NEW JERSEY

BRRAM, INC., ET AL.,

                Plaintiffs,

v.

UNITED STATES FEDERAL
AVIATION ADMINISTRATION,
ET AL.,

                Defendants.

Civil Action No. 3:14-cv-02686

Hon. Joel A. Pisano, U.S.D.J.
Hon. Douglas E. Arpert, U.S.M.J.

### CERTIFICATION OF  Shelly Tatro

1. My full name is Shelly Ann Tatro

2. I reside at  53 N. Delaware Ave, Yardley, PA

3. I am making this certification (sworn statement) with the understanding that it will be used by an attorney as support for a motion seeking preliminary injunctive relief to restrain Frontier Airlines from continuing to fly over my house/business and to reduce the impact of those overflights.

4. I am personally and adversely affected and injured by the expansion of usage of the Trenton Mercer Airport by Frontier Airlines.

5. For example, Frontier Airlines operates regular commercial passenger service by various jet aircraft which take off from or land at Trenton Mercer Airport with a large number of these aircraft flying directly over my house at early morning hours or at night.

Page 2 of 4

Exhibit 37

6. Specifically, these overflights cause a great deal of noise for example, this past Saturday, June 7, I was awoken at 6:39am by a low flying, large aircraft departing (I believe) Trenton Airport.

7. These overflights typically operate at a low altitude and cause the following disruptive impacts and injuries to me and my family/business:  I work in the city and purchased a home in Yardley in part for the peace and quiet.  I did not bargain for repeated fly-overs by large commercial aircraft at all hours of the day and night that disrupt my sleep and can only imagine the negative impact they could have on the value of my home.

8. These overflights have been ongoing and, it is my understanding, that Frontier Airlines intends to further expand its schedule of passenger flights, all or most of which will continue to originate or terminate by flying over my house and community.

9. I have previously complained frequently on the airport's complaint website to what end I'm not sure since no one ever replied.

10. As a result of this pattern of overflights, my family and I are losing sleep, feeling nervous and jittery, avoiding going outside, keeping the windows closed even when the weather is very nice.

11. It is further my understanding that if I put my house/business on the market in order to sell it and move out of the overflight area of Frontier Airlines, I might have to

provide notice to any prospective purchaser as to this problem, which could lower the value of my property.

12. I have other concerns as well, for example: I was under the impression that certain environmental and noise studies were to be completed before any airport expansion would be considered.  I have read that these were not done or at least completed which is concerning and confusing as the airport seems to have undertaken an expansion regardless.

13.  For these reasons, I am providing this certification (sworn statement) to assist the court in reviewing the attorney's motion for injunctive relief, seeking to prevent or at least mitigate further injury to me and others similarly situated beneath the flight paths of Frontier Airlines.

I certify that the foregoing statements made by me are true.  I am aware that if any of the foregoing statements are willfully false, I am subject to punishment.

Dated: June 9, 2014

Shelly Tate

**UNITED STATES DISTRICT COURT**
DISTRICT OF NEW JERSEY

BRRAM, INC., ET AL                            Civil Action No. 3:14-cv-02686
                          Plantiffs,

         v.                                   Hon. Joel A Pisano U.S.D.J.
                                              Hon. Douglas E. Arpert, U.S.M.J.
UNITED STATES FEDERAL
AVIATION ADMINISTRATION,
ET AL.,
                          Defendants.

### CERTIFICATION OF JEFFREY S. WALDNER

1. My full name is Jeffrey S. Waldner

2. I reside at 5 Harlow Court, Yardley, Pennsylvania

3. I am making this certification (sworn statement) with the understanding that it will used by an attorney as support for a motion seeking preliminary injunctive relief to restrain Frontier Airlines from continuing to fly over my house and  to reduce the impact of those overflights.

4. I am personally and adversely affected and injured by the expansion of usage of the Trenton Mercer Airport by Frontier Airlines.

5. For example, Frontier Airlines operates regular commercial passenger service by various jet aircraft which take off or land at Mercer Airport with a large number of these aircraft flying directly over my house at early morning hours or at night. The flights do not appear to vary their route or employ any noise abatement maneuvers in response to mitigating noise complaints.

6. Specifically these overflights cause a great deal of noise and vibration which even increase during periods of marginal weather conditions because they fly at lower altitudes using the same flight pattern.

7. These overflights typically operate at a low altitude and cause the following disruptive impacts and injuries to me and my family. Overall after courtesy curfew (11 pm – 7 am) flights have

Exhibit 38

noticeably increased because of the advent of Frontier air traffic disturbing sleep periods for all members of my family. I often have interrupted night's sleep due to late evening Frontier air traffic particularly when arrival and departure flights are delayed into the courtesy curfew period. Frontier Airlines has scheduled flight departures beginning at 7:30 am on Sundays. I work remotely from home and business telephone conversations have been interrupted and meetings have been delayed due to air traffic noise. Outdoor conversation is impossible during Frontier overflights. These interruptions and disturbances have affected my overall health, family health, and quality of life.

8. These overflights have been ongoing and, it is my understanding that Frontier Airlines intends to further expand its schedule of passenger flights, all or most of which will continue to originate or terminate by flying over my house and community.

9. I have reported noise complaints which have occurred during the courtesy curfew period of 11:00 p. m. to 7:00 am to no avail. Submission of the online reporting form responds with the following database message: *Microsoft JET Database Engine error '80040e09' Cannot update. Database or object is read-only /submit.asp, line 78*. Requests to have these reports recorded and rectified (documentation attached) have been unanswered by Trenton Mercer Airport.

10. As a result of this pattern of overflights, my family and I are losing sleep, avoiding going outside, keeping the windows closed even when the weather is nice.

11. For these reasons, I am providing this certification (sworn statement) to assist the court in reviewing the attorney's motion for injunctive relief, seeking to prevent or at least mitigate further injury to me and others similarly situated beneath the flight paths of Frontier Airlines.

I certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements are willfully false, I am subject to punishment.

Dated: 06/06/2014

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

**BRRAM, INC., ET AL.,**

                  Plaintiffs,

    v.

**UNITED STATES FEDERAL AVIATION ADMINISTRATION, ET AL.,**

               Defendants.

Civil Action No. 3:14-cv-02686

Hon. Joel A. Pisano, U.S.D.J.
Hon. Douglas E. Arpert, U.S.M.J.

## CERTIFICATION OF ROBERTA WARNER

1. My full name is Roberta Warner.

2. I reside with my family at 3 Brook Lane, Yardley, PA 19067.

3. I am making this certification (sworn statement) with the understanding that it will be used by an attorney as support for a motion seeking preliminary injunctive relief to restrain Frontier Airlines from continuing to fly over my house and to reduce the impact of those overflights.

4. I am personally and adversely affected and injured by the expansion of usage of the Trenton Mercer Airport by Frontier Airlines.

5. For example, Frontier Airlines operates regular commercial passenger service by various jet aircraft which take off from or land at Trenton Mercer Airport with a large number of these aircraft flying directly over my house at early morning hours or at night.

Exhibit 39

6. Specifically, these overflights cause a great deal of noise to the point where we cannot function in a normal way. For example, when planes are landing we must stop all conversation because you cannot hear the person sitting next to you. You also cannot hear any audio in the house: TV, music, etc, for about 30 seconds during the descending.

7. These overflights typically operate at a low altitude and cause the following disruptive impacts and injuries to me and my family: As stated above, conversations must stop when planes are descending. On June 5, 2014 between 8:00 and 8:30 p.m., three planes descended and my teenage daughter and I had to stop what we were doing and wait for the plane noise to diminish. We have stopped having family grill outs on the back patio in the evenings, especially Fridays, due to the plane noise. The increased plane noise over the past year or so has my family considering moving with the airport being a major factor. Any expansion of flights in unacceptable. We moved to Bucks County for a quiet, suburban life and this is no longer the case.

8. These overflights have been ongoing and, it is my understanding, that Frontier Airlines intends to further expand its schedule of passenger flights, all or most of which will continue to originate or terminate by flying over my house and community.

9. As a result of this pattern of overflights, my family and I are avoiding going outside and must stop daily activity (including a basic conversation) because of the noise..

10.  It is my further understanding that if I put my house on the market in order to sell it and move out of the overflight area of Frontier Airlines, I might have to provide notice to any prospective purchaser as to our problems, which could lower the value of my property.

11.  For these reasons, I am providing this certification (sworn statement) to assist the court in reviewing the attorney's motion for injunctive relief, seeking to prevent or at least mitigate further injury to me and others similarly situated beneath the flight paths of Frontier Airlines.

I certify that the foregoing statements made by me are true.  I am aware that if any of the foregoing statements are willfully false, I am subject to punishment.

Dated: June 6, 2014.

Roberta Warner

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

**BRRAM, INC., ET AL.,**

Plaintiffs,

v.

**UNITED STATES FEDERAL
AVIATION ADMINISTRATION,
ET AL.,**

Defendants.

Civil Action No. 3:14-cv-02686

Hon. Joel A. Pisano, U.S.D.J.
Hon. Douglas E. Arpert, U.S.M.J.

## CERTIFICATION OF RODNEY N. WARNER

1. My full name is Rodney N. Warner.

2. I reside at 3 Brook Lane, Lower Makefield, PA 19067.

3. I am making this certification (sworn statement) with the understanding that it will be used by an attorney as support for a motion seeking preliminary injunctive relief to restrain Frontier Airlines from continuing to fly over my house and to reduce the impact of those overflights.

4. I am personally and adversely affected and injured by the expansion of usage of the Trenton Mercer Airport by Frontier Airlines.

5. For example, Frontier Airlines operates regular commercial passenger service by various jet aircraft which take off from or land at Trenton Mercer Airport with a large number of these aircraft flying directly over  my house at early morning hours or at night.

Page 1 of  3

Exhibit 40

6. Specifically, these overflights cause a great deal of noise. Our home is directly under the flight path of many of these planes. When they're landing, they're low enough to have their landing gear down.

7. These overflights typically operate at a low altitude and cause the following disruptive impacts and injuries to me and my family: If the windows in our home are open, the early morning flights are loud enough to wake me up from sleeping. If we are outside when a Frontier plane flies overhead, they are so loud that conversation has to stop or you need to yell at the person you're talking to. We have a small house and try to spend time on our patio when the weather is good, but the noise from the planes stops whatever we're doing when we're out there. As an example, I was mowing my lawn with my old Toro push mower the morning of June 6, 2014, when the Frontier planes were so loud I could hear them over the sound of the mower both landing and taking off.

8. These overflights have been ongoing and, it is my understanding, that Frontier Airlines intends to further expand its schedule of passenger flights, all or most of which will continue to originate or terminate by flying over my house and community.

9. As a result of this pattern of overflights, my family and I are losing sleep, avoiding going outside, keeping the windows closed even when the weather is

nice.

10.  It is further my understanding that if I put my house on the market in order to sell it and move out of the overflight area of Frontier Airlines, I would have to provide notice to any prospective purchaser as to this problem, which will necessarily lower the value of my property.

11. For these reasons, I am providing this certification (sworn statement) to assist the court in reviewing the attorney's motion for injunctive relief, seeking to prevent or at least mitigate further injury to me and others similarly situated beneath the flight paths of Frontier Airlines.

I certify that the foregoing statements made by me are true.  I am aware that if any of the foregoing statements are willfully false, I am subject to punishment.

Dated: 6/26/14

Rodney N. Warner

## UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

**BRRAM, INC., ET AL.,**

Plaintiffs,

v.

**UNITED STATES FEDERAL
AVIATION ADMINISTRATION,
ET AL.,**

Defendants.

Civil Action No. 3:14-cv-02686

Hon. Joel A. Pisano, U.S.D.J.
Hon. Douglas E. Arpert, U.S.M.J.

### CERTIFICATION OF RICHARD ANDREW WAYNE

1. My full name is Richard Andrew Wayne.

2. I reside at 115 Windsor Road, Yardley, PA 19067.

3. I am making this certification (sworn statement) with the understanding that it will be used by an attorney as support for a motion seeking preliminary injunctive relief to restrain Frontier Airlines from continuing to fly over my house and to reduce the impact of those overflights.

4. I am personally and adversely affected and injured by the expansion of usage of the Trenton Mercer Airport by Frontier Airlines.

5. For example, Frontier Airlines operates regular commercial passenger service by various jet aircraft which take off from or land at Trenton Mercer Airport with a large number of these aircraft flying directly over my house at early morning hours or at night.

Page 1 of 3

Exhibit 41

6. Specifically, these overflights cause a great deal of noise, vibration and pollution.

7. These overflights typically operate at a low altitude and cause the following disruptive impacts and injuries to me: I am unable to sleep eight hours because the flights are so noisy and frequent in the early morning and late night.

8. These overflights have been ongoing and, it is my understanding, that Frontier Airlines intends to further expand its schedule of passenger flights, all or most of which will continue to originate or terminate by flying over my house and community.

9. I have complained regularly about the noise and disruption, but to no avail. Mercer County officials do not return my calls.

10. As a result of this pattern of overflights, I am losing sleep, feeling nervous and jittery, avoiding going outside, and keeping the windows closed even when the weather is fair.

11. It is further my understanding that if I put my house on the market in order to sell it and move out of the overflight area of Frontier Airlines, I would have to provide notice to any prospective purchaser as to this problem, which will necessarily lower the value of my property.

12. For these reasons, I am providing this certification (sworn statement) to

assist the court in reviewing the attorney's motion for injunctive relief, seeking to prevent or at least mitigate further injury to me and others similarly situated beneath the flight paths of Frontier Airlines.

I certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements are willfully false, I am subject to punishment.

Dated: June 4, 2014

Richard Andrew Wayne

## UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

**BRRAM, INC., ET AL.,**

                Plaintiffs,

v.

**UNITED STATES FEDERAL
AVIATION ADMINISTRATION,
ET AL.,**

                Defendants.

Civil Action No. 3:14-cv-02686

Hon. Joel A. Pisano, U.S.D.J.
Hon. Douglas E. Arpert, U.S.M.J.

### CERTIFICATION OF DONALD WILCOX

1. My full name is Donald Wilcox.

2. I reside at 81 N. Delaware Avenue, Yardley, PA 19067.

3. I am making this certification (sworn statement) with the understanding that it will be used by an attorney as support for a motion seeking preliminary injunctive relief to restrain Frontier Airlines from continuing to fly over my house and to reduce the impact of those overflights.

4. I am personally and adversely affected and injured by the expansion of usage of the Trenton Mercer Airport by Frontier Airlines.

5. For example, Frontier Airlines operates regular commercial passenger service by various jet aircraft which take off from or land at Trenton Mercer Airport with a large number of these aircraft flying directly over my house at early morning hours or at night.

Exhibit 42

6. Specifically, these overflights cause a great deal of noise, vibrations, pollution and disturb the wildlife that make the riverfront a special place to live.

7. These overflights typically operate at a low altitude and cause the following disruptive impacts and injuries to me and my family: I am often awakened by aircraft early in the morning.  I can't leave my windows open, which keeps me from enjoying the cool evening breezes and the ability to sleep with fresh air and cool room.  This between the noise and the lack of ability to sleep in the air/temperature I've enjoyed my whole life, I can't get the type of rest I always have.  In addition, flights disrupt my sleep as late as 11:30 at night on a regular basis and at times as late as 2 A.M.  This impact on sleep impacts my work performance and my sense of well being.  For much of my adult life, I've wanted from a place by the river, where I could enjoy the tranquil flow of the river and the wildlife.  I was finally able to achieve this, when we bought this house of our dreams along the Delaware.  We have dealt with floods, wind and bad weather, and that was a small price to pay for the beauty of the river every day.  In addition to the premium we paid for a riverside home, we invested heavily to uplift and make our house capable of dealing with the occasional floods and electrical disruptions.  These seemed like investments and disruptions that were well worth their impact on our lives.  But now we have

the regular disruption to our life, whether indoors or out, it's is a constant impact on our enjoyment of daily life and has made me question whether we can continue to live in this, our dream home. We realize, as we continue to stick it out, that the increase in traffic continues to impact the value of our investment. What was once an ideal place to live, now has constant reminders that this is not the idyllic locale it once seemed. I keep thinking what it would mean if we every had to sell, to the price of the house and the money we would have to use to relocate, and the legacy that we might leave to our children. That reality not only concerns us in theory, but it weighs on us each day, each time one of those planes whines and barrels over our house, straining to get airborne, or droning on its path back to the airport. Yes, we were aware that there was a small regional airport in the vicinity and enjoyed the occasional small plane practicing takeoffs and landings or heading off to parts unknown – it was even a bit romantic. But the constant and regular drone of aircraft is something else. It breaks my heart and causes worry every day. In the morning we used to enjoy sitting at our picture window or out on the porch, drinking our coffee and enjoying the light, sounds, and smells of the river. Now we can count on that morning coffee being disrupted several times – so much for getting the day off to a good start. Even inside, with all the windows shut, all

awareness is drawn to the planes which seem to be landing or flying right into our house. I work from home and have conference calls each day. The roar of planes frequently disrupts those conference calls, which are critical to my ability to work remote, on calls with teams from all over the globe. I have to quickly reach for the mute button, off and on, and at times this interrupts things I have to say on the phone.

8. These overflights have been ongoing and, it is my understanding, that Frontier Airlines intends to further expand its schedule of passenger flights, all or most of which will continue to originate or terminate by flying over my house and community.

9. I have tried to complain on the airport website about the noise and disruption, but to no avail. The site is cumbersome, requires a great deal of information to be entered to make a complaint, and has errored out, especially when trying to submit multiple complaints for multiple disruptions that have occurred in one day. I've never heard anything back from the airport. I gave up reporting complaints quickly, as futile.

10. As a result of this pattern of overflights, my family and I are losing sleep, feeling nervous and jittery, avoiding going outside, keeping the windows closed even when the weather is very nice, not sleeping well, and experiencing

stress from the financial impact and what may come in the future.  We are also concerned about how this noise and pollution may impact the presence and quality of wildlife on the river, a key aspect of our enjoyment.

11.  It is further my understanding that if I put my house on the market in order to sell it and move out of the overflight area of Frontier Airlines, I would have to provide notice to any prospective purchaser as to this problem, which will necessarily lower the value of my property.

12. I have other concerns as well, for example: I believe I've outlined the key concerns above, but I also worry about how the airport will affect our neighbors and how it could impact their desire/ability to live nearby, which could further degrade the neighborhood, value of their homes, and the potential that they might sell at a lower price to individuals who might not have as great an interest or ability to maintain their homes, further impacting the general desirability of the neighborhood.

13.  For these reasons, I am providing this certification (sworn statement) to assist the court in reviewing the attorney's motion for injunctive relief, seeking to prevent or at least mitigate further injury to me and others similarly situated beneath the flight paths of Frontier Airlines.

I certify that the foregoing statements made by me are true.  I am aware that

if any of the foregoing statements are willfully false, I am subject to punishment.

Dated: June 7, 2014.

Donald Wilcox