R. William Potter
Peter D. Dickson
POTTER AND DICKSON
194 Nassau Street, Suite 31
Princeton, NJ 08542-7003
Phone: (609) 921-9555
Fax: (609) 921-2181
Email: rwppddlaw@cs.com
and potterrex@cs.com
Attorneys for the Plaintiffs

## THE UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY
## TRENTON VICINAGE

| | |
|---|---|
| BRRAM, Inc., a corporation organized under the laws of the Commonwealth of Pennsylvania, Ms. Holly Bussey, Mr. William Lynch, Mr. Richard DeLello, Ms. Julie Power, Mr. John Giacobetti and Mrs. Jennifer Giacobetti, Ms. Deborah Leamann, Ms. Caroline Bondi, Ms. Delores Brienza, and Mr. Richard  Wayne, The Board of Supervisors of Township of Lower Makefield, the Board of Supervisors of Upper Makefield Township, and the Borough Council of the Borough of Yardley, Pennsylvania | : Civil action number<br>: 3:14-cv-02686-JAP-DEA<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: **FIRST AMENDED**<br>:  **COMPLAINT**<br>:<br>: |
| Plaintiffs, | : |
| v. | : |
| United States Federal Aviation Administration (FAA), the Mercer County Board of Chosen Freeholders, and Frontier Airlines, Inc., | :<br>:<br>:<br>:<br>: |
| Defendants. | : |

Page 1 of  21

A. THE PARTIES

1.  Plaintiff BRRAM, Inc., is a not-for-profit corporation organized under the laws of the Commonwealth of Pennsylvania, headquartered at 25 South Main Street, Suite # 208, in Yardley, PA 19067.

2. Individual plaintiff Holly Bussey is a resident of 20 Knoll Drive in Yardley, Bucks County, Pennsylvania, 19067.  Her residence lies beneath the flight path of many of defendant Frontier Airlines' flights from and into TTN.

3.  Individual plaintiff William Lynch is the Treasurer of BRRAM, Inc., with his principal place of business at 19 South Main Street in Yardley, PA 19067, also beneath the flight path of Frontier Airlines' flights originating and ending in TTN.  Mr. Lynch resides in Wrightstown Township, Bucks County, PA.

4. Individual plaintiff Richard DeLello is a resident of Bucks County at 1315 Albright Drive, Yardley, PA 19067.  His residence lies beneath the flight path of many of defendant Frontier Airlines' flights from and into TTN.

5. Individual Plaintiff Julie Power is a resident of Bucks County at 3 Harlow Court, Yardley, PA 19067.  Her residence lies beneath the flight path of many of defendant Frontier Airlines' flights from and into TTN.

6. Individual Plaintiffs John and Jennifer Giacobetti are residents of Bucks County at 9 Ludlow Road, Yardley, PA 19067.  Their residence lies beneath the

flight path of many of defendant Frontier Airlines' flights from and into TTN.

7. Individual Plaintiff Deborah Leamann is a resident of Mercer County, New Jersey, who resides at 630 Bear Tavern Road, West Trenton, NJ 08628.  Her residence lies beneath the flight path of many of defendant Frontier Airlines' flights from and into TTN.

8. Individual Plaintiff Caroline Bondi is a resident of Mercer County, New Jersey, residing at 630 Bear Tavern Road, West Trenton, NJ 08628.  Her residence lies beneath the flight path of many of defendant Frontier Airlines' flights from and into TTN.

9. Individual Plaintiff Delores Brienza is a resident of Mercer County, New Jersey, residing a 173 W. Upper Ferry Road, Ewing, NJ 08628.  Her residence lies beneath the flight path of many of defendant Frontier Airlines' flights from and into TTN.

10. Individual Plaintiff Richard Wayne is a resident of Bucks County at 115 Windsor Road, Yardley, PA 19067.  His residence lies beneath the flight path of many of defendant Frontier Airlines' flights from and into TTN.

11.  Plaintiff, The Board of Supervisors of the Township of Lower Makefield in Bucks County, in the Commonwealth of Pennsylvania, is the governing body of the Township with offices at 1100 Edgewood Road, Yardley,

Pennsylvania 19067.  The Board of Supervisors, with authority to act in their official capacity on behalf of the Township and its residents, voted on September 17, 2014, to join this lawsuit as a party plaintiff on behalf of all the residents of the Township and its historic places.

12.  Plaintiff, The Board of Supervisors of Upper Makefield Township of Bucks County, in the Commonwealth of Pennsylvania, is the governing body of the Township with offices at 1076 Eagle Road, Newtown, Pennsylvania 18940. The Board of Supervisors, with authority to act in their official capacity on behalf of the Township and its residents, decided to join this lawsuit as a party plaintiff on behalf of all the residents of the Township and all its historic places.

13.  Plaintiff, The Yardley Borough Council Members form the governing body of the Borough of Yardley in Bucks County in the Commonwealth of Pennsylvania, and have offices at 56 South Main Street, Yardley, Pennsylvania 19067.   The Council Members, with authority to act in their official capacity on behalf of the Borough and its residents, decided to join this lawsuit as a party plaintiff on behalf of all the residents of the Township and all its historic places.

14.  Defendant The Federal Aviation Administration (FAA) of the United States Department of Transportation (DOT) is an executive agency of the Government of the United States, with its headquarters at 800 Independence

Avenue, S.W., in Washington, DC 20591, with the responsible regional office at
the Office of the Regional Administrator, Eastern Region, 1 Aviation Plaza,
Jamaica, NY 11434-4809.

15. Defendant Mercer County Board of Chosen Freeholders is the
governing body of Mercer County in the State of New Jersey and is the owner of
the Trenton Mercer Airport ("TTN") located in West Trenton, Ewing Township,
NJ 08628.  The offices of the Freeholders are in the McDade Administration
Building at 640 S. Broad Street in Trenton, New Jersey 08611.

16. Defendant Frontier Airlines, Inc., is a foreign for-profit corporation
registered since 2010 to do business in New Jersey and operating as a common
carrier at the Trenton Mercer Airport in West Trenton, Ewing Township, NJ
08628.  Its main business address is Suite 300, 8909 Purdue Road, Indianapolis,
IN 46268, and its registered agent for service of process in New Jersey is
Corporation Service Company at 830 Bear Tavern Road, West Trenton, NJ 08628.

B.  SUMMARY OF COMPLAINT:

17.  This is an action for declaratory and injunctive relief against the United
States Federal Aviation Administration (FAA) for its failure to perform the
comprehensive environmental impact analysis mandated by the "National
Environmental Policy Act" (NEPA) through the preparation of an Environmental

Impact Statement (EIS) of the environmental and safety impacts of Frontier

Airlines expansion of  passenger jet service at TTN, located in Ewing Township,

Mercer County, New Jersey, far beyond the two flights per week authorized in

Frontier's operations specifications amendment ("Ops Specs").

18.  The Plaintiffs seek a judicial order compelling the FAA to comply with

NEPA by promptly commencing the EIS review process and by curtailing further

operation and expansion of Frontier Airlines passenger service at the TTN until

such time as an EIS is prepared, published, subjected to public hearing and

comment, and duly adopted, with emphasis on noise impacts, cumulative impacts

and needed mitigation measures.

C.  JURISDICTION:

19.  This Court has subject matter jurisdiction of the complaint and

jurisdiction of the parties to this action.

20.  This action is brought before this court pursuant to the law of the

United States, specifically section 102 (C) (2) of the National Environmental

Policy Act of 1969 (NEPA), 42 U.S.C.A. § 4321, et seq.; the implementing

regulations of the FAA, 14 C.F.R. 150, et seq.; the regulations of the United States

Council on environmental quality (CEQ), 40 C.F.R. 1500 , et seq.; and section 5 of

the United States Administrative Procedure Act (APA)),  5 U.S.C.A. § 701, et

seq.; and 28 U.S.C.A. § 1331 which provides as follows:   "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, , laws, or treaties of the United States."

D.  VENUE:

21.  Because all of the defendants reside within or regularly conduct business within the State of New Jersey, venue is proper in the United States District Court of New Jersey, located in Trenton.

E.  FACTUAL ALLEGATIONS:

22.  Since at least 1999 various of the Plaintiffs, individually and collectively, together with many others, have been actively urging the FAA to prepare an Environmental Impact Statement ("EIS") regarding planned expansion of operations of commercial passenger jet service into and out of TTN, primarily due to the offensive noise impacts caused by such commercial airline service.

23.  In November 1999 the FAA sponsored "scoping sessions" to assist in determining the proper scope of environmental impact and safety reviews of recently announced TTN plans for expansion and enhancement of the airline terminal which was expressly intended for the purpose of attracting a low-fare/high-frequency (LF/HF) commercial airline.

24. At that time the LF/HF was intended to be Southwest Airlines.

25. Subsequently the FAA caused to be published a draft environmental assessment (DEA) which was the subject of a public hearing on June 12, 2002 in Trenton, at which plaintiff BRRAM members or representatives testified or submitted written comments critical of the limited scope of the DEA and calling for preparation of a complete EIS prior to the commencement of LF/HF service by Southwest or by any other air line.

26.  On or about February 23, 2006 (published on April 7, 2006) the Regional Administrator of the FAA released a "Record of Decision" (ROD) inclusive of a "Finding of No Significant Environmental Impact" (FONSI) to explain the FAA decision to adopt the DEA, as amended, and not to prepare an EIS.

27.  In response to issuance of the ROD/FONSI, Plaintiffs BRRAM and Lynch, joined by Bucks County resident Mr. Paul Krupp and the elected Board of Supervisors of the Township of Lower Makefield in Bucks County, PA, filed a formal "Petition for Review" in the United States Court of Appeals for the Third Circuit, captioned "Board of Supervisors of Lower Makefield Township, et al. Petitioners v.  Federal Aviation Administration Respondent," a copy of which is enclosed as Plaintiffs' Exhibit 1.

28.  Following a period of court-ordered mediation, the FAA on or about

June 9, 2008 issued a decision captioned "Order Withdrawing Finding of No

Significant Impact/Record of Decision dated February 23, 2006 for the Trenton

Mercer Airport" (Order) which is enclosed as Plaintiffs' Exhibit 2.

29.  In the Order, the FAA concluded that there was a "change of

circumstances" in that the project sponsor, Mercer County, had withdrawn its

original plans to expand the TTN terminal and attendant facilities (the subject of

the DEA) because Mercer County no longer sought to attract an LF/HF

commercial air carrier, such as a Southwest Airlines and, as a result, there was no

need to expand or enhance the TTN airport terminal or related facilities.

30. The FAA Order expressed its position that no EIS was made necessary

because "to FAA's knowledge no other large commercial air carrier has expressed

interest to enter this market," referring to TTN, and thus there was no "major

federal action significantly affecting the environment" which would trigger further

compliance with the National Environmental Policy Act ("NEPA"), 42 U.S.C.A.

4321, et seq., and the regulations of the FAA. 14 C.F.R.  150 et seq., through

preparation of an EIS.

31. The FAA Order characterized a LF/HF air carrier "as an air carrier with

operations similar to those of Southwest Airlines; specifically, section 1.5.2 of the

DEA defines a LF/HF air carrier operation as a commercial air carrier

characterized by offering low fares with a high frequency of flights to popular

business and leisure destinations."

32. The FAA Order explained that "if the airport sponsor [Mercer County]

desired to pursue other projects for any purpose in the future, appropriate

environment review and full documentation would be required" to obtain FAA

approval.

33. The Order added that "based on my consideration of the substantial new

information that changed circumstances concerning the purpose and need for the

replacement terminal project discussed above as well as my consideration of FAA

orders cited above, I [Mr. Murray Weiss, FAA Regional Administrator, FAA

Eastern Region] am withdrawing the February 23, 2006 FONSI/ROD ... Should

the airport sponsor wish to proceed with any component of the project approved in

the now withdrawn ROD, the sponsor must seek FAA approval for that

component."

34. Most importantly, the Order stated that if the project sponsor, Mercer

County, attracted a LF/HF air carrier, this action "would likely cause sufficient

noise impacts that would require the preparation of an environmental impact

statement (EIS)." However, because "to date, no LF/HF air carrier is operating at

TTN and, to the FAA's knowledge, no LF/HF air carrier has recently expressed

interest in starting operations at TTN," no EIS was needed in order to satisfy NEPA requirements.

35. "Finally," the Order stated that "an Environmental Assessment [EA] remains valid for 3 years in the absence of major steps to implement a project. Therefore in approximately 9 months ... [by February 9, 2010] the TTN EA would need to be reevaluated, at the very least to ensure that environmental analyses are accurate, valid, adequate, and current."

36. To date, on information and belief, no such reevaluation of the EA has been performed or even commenced.

37. Since issuance of the Order on June 9, 2008, Mercer County has succeeded in attracting Frontier Airlines, which has become a LF/HF air carrier  at TTN.

38. Mercer County has embarked upon a federally-assisted series of capital improvement programs which has facilitated Frontier Airlines decision to expand its operations.

39. The LF/HF operations of Frontier Airlines have caused, are causing, and will continue to cause "sufficient noise impacts that would require the preparation of an environmental impact statement," as the FAA projected they would in the FAA Order of June 9, 2009.  However, the FAA has not commenced

any environmental or safety analysis of the impacts of Frontier's LF/HF operations.

40. Frontier Airlines operations at TTN constitute the equivalent of a Southwest Airlines LF/HF with attendant increased noise and other environmental impacts substantially affecting the human and natural environment, including extensive noise caused during takeoffs and landings over and above the Plaintiffs' homes, businesses, schools, and recreation areas that lie within the flight path into and out of TTN.

41. By April of 2013, Frontier was providing at least 47 flights per week into and out of Trenton Mercer Airport to the following destinations: Fort Myers, Florida; Fort Lauderdale, Florida; Orlando, Florida; Tampa, Florida; New Orleans, Louisiana; Atlanta, Georgia; Chicago, Illinois; Columbus, Ohio; Detroit, Michigan; and Raleigh, North Carolina.

42. By September 1, 2014, Frontier has been providing 62 flights per week, as claimed by the FAA in papers filed with this Court.

43. The FAA has provided or will provide substantial federal funding for various capital improvement projects at TTN for the purpose of facilitating Frontier Airlines and its ambitious LF/HF commercial ventures, thereby "federalizing" these projects.

44.  Among these FAA-financed projects at TTN intended to facilitate Frontier Airlines operations as an LF/HF are the following:

– a.  $880,000 for the purchase of an emergency response vehicle to help the airport to improve its emergency response preparation as Frontier Airlines expands operations at TTN;

– b.  $8,550,000 for the construction of a parallel taxiway necessitated for the safe operation of Frontier Airlines;

– c.  $427,500 for the construction of a connector taxiway to the terminal apron and associated lighting;

– d.  $665,000 for improvement to a connector taxiway and associated lighting to complete a full parallel taxiway;

– e.  $6,650,000 to complete a full parallel taxiway for the north side of the Ttn terminal.

45.  To summarize, the list of federally-financed capital improvements necessitated by Frontier Airlines' operations at the airport includes (1) taxiway lengthening and improvements as ordered by the FAA to safely accommodate the planes used by Frontier; (2) installing an engineering materials arrestor system (EMAS), also necessitated by Frontier; (3) expanding the surface parking lot to handle increased patronage due to Frontier; (4) terminal passenger improvements

to assist expanded Frontier passenger service.

46.  By letter dated September 19, 2012, Frontier wrote to an FAA regional administrator requesting an amendment to its Operations Specifications (Ops Specs) to allow it to use TTN for no more than 2 flights per week.  Exhibit 7.

47.  By letter dated September 25, 2012 the FAA approved the Ops Specs amendment requested by Frontier.  Exhibit 8.

48.  The Ops Specs amendment was not publicly issued or publicly noticed in any manner calculated to inform the public that Frontier was seeking an Ops Specs amendment and that the FAA had approved an amendment.

49.  Since then, Frontier has expanded service to provide at least 62 flights per week at TTN, far in excess of the two flights per week in the Ops Specs amendment request.

50.  On information and belief, Frontier Airlines has continued to expand operations as a LF/HF beyond the list of flights and destinations specified in this complaint, and now includes service to the following additional cities: Cleveland, Ohio; Milwaukee, Wisconsin; Minneapolis/St. Paul, Minnesota; Indianapolis, Indiana; St. Louis, Missouri; Nashville, Tennessee; Raleigh/Durham, North Carolina; St. Augustine/Jacksonville, Florida.  See Plaintiffs' Exhibit 3, Frontier.com website.

51.  Individually and collectively, the Plaintiffs are suffering and will suffer injury in fact due to the environmental impacts of current and expanded operations of Frontier Airlines which include multiple, daily takeoffs and landings, early morning and late night, in the direction of, at low altitude over and above Bucks County homes, businesses, schools, historic buildings, historic districts, historic parks and other public facilities, which are located only a few miles away from TTN across the Delaware River, thereby causing excessive and substantial noise and other pollution. Therefore, Plaintiffs have standing to sue.

52.  On April 24, 2013 and October 31, 2013, plaintiff BRRAM wrote to the FAA Regional Administrator setting forth detailed objections to the Frontier Airlines expansive operations and seeking NEPA compliance by the FAA, and requesting FAA reconsideration of any approvals granted to Frontier to expand operations at TTN.  Copies of these letters are attached as plaintiff's Exhibits 4 and 5, respectively.

53.  The FAA Regional Administrator replied to the April 24, 2013 letter in a letter dated May 28, 2013 (FAA Letter), a copy of which is included as plaintiff's Exhibit 6. (To date, there has been no FAA reply to the plaintiff's October 31, 2013 letter.)

54.  Although the FAA Letter conceded that "an amendment of an air

carrier's operations specifications (Ops Specs) is a major Federal action that is subject to NEPA" it did not address how or whether the FAA intended to comply with NEPA prior to or after granting approval of the Ops Specs amendment for Frontier to utilize TTN for only two flights per week.

55.   The FAA Letter further stated that in "in order to approve an amendment to add an airport to an airline's Ops Specs, the FAA must find the airline has demonstrated that it can safely and efficiently operate to/from that airport,"  but made no mention of the FAA performing any environmental or safety impact analysis of Frontier's  high frequency use of TTN.

56.  The FAA Letter goes on to state that "at the time Frontier's Ops Specs were amended to add Trenton Airport, the FAA believed that the approval was subject to a Categorical Exclusion" from the requirements of NEPA, but without citation to any of the possible Categorical Exclusions provided in the FAA regulations; see, e.g., FAA Order 1050.20, 5050.4B (Table 6-1), 1050.1E (Ch. 3).

57.   The FAA Letter does not explain how the FAA reached its conclusion that its approval of amended Ops Specs for Frontier was properly excluded from any environmental impact analysis; nor was a copy of any such Categorical Exclusion ruling provided or publicly issued.

58.  The FAA Letter stated the agency's position that "once an airport has

been added to the airline's Ops Specs, under the Airline Deregulation Act of 1978, the airline is free to determine the level of service provided at that airport without any further FAA approval."

59.  The foregoing  statement implies that even though the FAA has determined that the Ops Specs amendment for Frontier as limited to two flights per week, Frontier Airline's operations are exempt from any NEPA review of environmental and safety impacts no matter how many flights into or out of TTN airport are added by Frontier.

F .  ALLEGATIONS OF LAW:

**The FAA's position that granting Frontier Airlines' Operational Specifications amendment limited to two flights per week permits Frontier to expand operations at will without any environmental or safety analysis of expanded service violates NEPA and is arbitrary and capricious:**

60. The Plaintiffs incorporate by reference the allegations of paragraphs 1 through 59 as if set forth verbatim herein.

61    In the FAA Letter, the FAA Regional Administrator reported that FAA approval of an amendment to a commercial airliner's Ops Specs is a "major Federal action," which determination triggers the commencement of an

Environmental Assessment (EA) and NEPA compliance.

62.  The term "major Federal action is defined by the Council on

Environmental Quality ("CEQ") as " actions with effects that may be major and

which are potentially subject to federal control and responsibility. Major

reinforces but does not have a meaning independent of significantly (section

1508.27)...." 40 C.F.R.  1508.18.

63.  The CEQ regulations further clarify that "federal actions tend to fall

within one of the following categories: … (4) approval of specific projects, such

as construction or management activities located in a defined geographic area.

Projects include actions approved by permit or other regulatory decision as well as

Federal and federally assisted activities." 40 C.F.R. 1508.18 (b) (4)

64.  "'Significantly' as used in NEPA requires consideration of both context

and intensity," including "(a) context. This means that the significance of an action

must be analyzed in several contexts such as society as a whole (human, national),

affected region, the affected interest, and the locality.  Significance varies with the

setting of the proposed action for instance, in the case of a site specific action,

significance would usually depend upon the effects in the locale rather than the

world as a whole. Both short and long term effects are relevant." 40 C.F.R.

1508.27 (a).

65.  "Intensity" includes "(1) impacts that may be both beneficial and adverse. A significant effect may exist even if the Federal agency believes that on balance the effect will be beneficial. ... (4) the degree to which the effects on the quality of the human environment are likely to be controversial ... (7) whether the action is related to other actions with individually insignificant but cumulatively significant impacts. Significance exists if it is reasonable to anticipate a cumulatively significant impact on the environment. Significance cannot be avoided by terming an action temporary or by breaking it down into small component parts...." 40 C.F.R. 1508.27.

66.  Accordingly, a major Federal action which significantly affects the human environment requires the reviewing FAA, as the lead federal agency, promptly to comply with the NEPA by commencing the environmental analysis process which may conclude with the preparation of an EIS.

67.  The FAA failed to comply with NEPA and its own NEPA regulations by arbitrarily and capriciously determining that a "Categorical Exclusion" approving Frontier Airlines Ops Specs for use of Trenton Mercer airport limited to two flights a week authorizes Frontier to expand its operations to include unlimited LF/HF passenger service at TTN.

68.  A Categorical Exclusion is defined as "the category of actions which do

not individually or cumulatively have a significant effect on the human

environment and which have been found to have no such effect in procedures

adopted by a Federal agency and implementation of these regulations and for

which therefore, neither an environmental assessment nor an environmental

impact statement is required...." 40 C. F.R. Part 1508, Sec. 1508.4, et seq.

     69. The FAA's Categorical Exclusion of the amended Ops Specs approved

for Frontier Airlines is interpreted by Frontier Airlines and the FAA to allow

Frontier to operate as a LF/HF commercial air carrier using Trenton Mercer airport

without any environmental or safety impact analysis, even though the FAA

previously determined in its June 9, 2008 Order that operation of an LF/HF

airliner at TTN would likely cause sufficient noise impacts to require preparation

of an EIS.

G.  JUDICIAL RELIEF / REMEDIES:

     WHEREFORE, Plaintiffs petition this Honorable Court to issue an Order:

     1.  Enjoining Frontier Airlines from any increase or expansion of service

beyond current service levels at TTN until such time as the FAA has prepared, or

caused to be prepared an Environmental Assessment (EA) which may result in the

preparation of an Environmental Impact Statement (EIS) pursuant to the

requirements of NEPA and implementing regulations.

2.  Compelling the FAA to prepare or cause to be prepared an EA which may result in an EIS and will address the full range of environmental impacts, including, inter alia, noise and community disruption and potential mitigation measures resulting from or caused by Frontier Airlines use of TTN at current and anticipated levels of service.

4.  Retaining jurisdiction of the case to ensure compliance. And

5.  Such other relief or remedies as may be Just and Equitable under the circumstances.

Dated: November 20, 2014.                    Respectfully submitted,

POTTER AND DICKSON

_____ / s/ R. William Potter _____
R. William Potter
194 Nassau Street, Suite 31
Princeton, NJ 08542-7003
Email addresses: rwppddlaw@cs.com
and potterrex@cs.com
Phone (609) 921-9555; Fax (609) 921-2181
Attorneys for the Plaintiffs

CERTIFICATION

I hereby certify that the matter in controversy is not the subject of any other court, arbitration or administrative proceeding.

Dated November 20, 2014.                    _____ /s/ R. William Potter _____
                                           Attorney for the Plaintiffs