```
 1                    UNITED STATES DISTRICT COURT
                         DISTRICT OF NEW JERSEY
 2

 3
     _____
 4   BRRAM, INC., et al,
                       PLAINTIFFS
 5
        Vs.                                        CIVIL NO.
 6                                                 14-2886 (PGS)

     UNITED STATES FEDERAL AVIATION
 7   ADMINISTRATION, et al,
                       DEFENDANTS
 8   _____

 9

10                              MAY 18, 2015
                                CLARKSON S. FISHER COURTHOUSE
11                              402 EAST STATE STREET
                                TRENTON, NEW JERSEY  08608
12

13

14   B E F O R E:       THE HONORABLE PETER G. SHERIDAN
                        U.S. DISTRICT COURT JUDGE
15                      DISTRICT OF NEW JERSEY

16

17

18

19
     COURT'S OPINION ON MOTION TO DISMISS
20

21

22
                                Certified as true and correct as required
23                              by Title 28, U.S.C. Section 753
                                /S/ Francis J. Gable
24                              FRANCIS J. GABLE, C.S.R., R.M.R.
                                OFFICIAL U.S. REPORTER
25                              (856) 889-4761
```

1  THE COURT: This is the BRRAM v. The Federal
2  Aviation Administration. This is a motion by the Federal
3  Aviation Administration to dismiss the complaint for lack of
4  jurisdiction and for failure to state a claim. The complaint
5  seeks injunctive relief to enjoin Frontier Airline Operations
6  at Trenton Mercer Airport until such time as an Environmental
7  Impact Statement is completed and implemented as required by
8  the National Environmental Policy Act (NEPA), 42 U.S.C.
9  Section 4332. BRRAM is a group of New Jersey and Pennsylvania
10 residents who live near the Trenton Airport. The FAA seeks to
11 dismiss under Rule 12(b)(1) because the Federal Airlines
12 Deregulation Act requires any person who is aggrieved by a
13 final action of the FAA "apply for review...in the Court of
14 Appeals of the United States for the Circuit in which the
15 person resides." 46 U.S.C. Section 46110. The FAA also seeks
16 to dismiss under Rule 12(b)(6) because the complaint was
17 untimely filed, as the petition for review must be filed
18 within 60 days after the order is issued, and allegedly the
19 plaintiffs did not comply with that provision. The statute
20 (49 U.S.C. Section 46110(a)) provides in pertinent part: "A
21 person disclosing a substantial interest in an order issued by
22 the secretary of transportation (or the...administrator of the
23 Federal Aviation Administration with respect to aviation
24 duties and powers designated to be carried out by the
25 administrator) in whole or in part under this part or part

1  B...may apply for review of the order by filing a petition for
2  review in the United States Court of Appeals for the District
3  of Columbia Circuit, or in the Court of Appeals of the United
4  States for the Circuit in which the person resides or has its
5  principal place of business. The petition must be filed no
6  later than 60 days after the order is issued. The court may
7  allow the petition to be filed after the 60th day only if
8  there are reasonable grounds for not filing by the 60th day."
9      The plaintiffs counter that they seek to have an
10 environmental assessment of the noise impacts of the Trenton
11 Airport undertaken by the FAA prior to the commencement of
12 more airline traffic. As such, the plaintiffs only contend
13 they seek relief exclusively under the NEPA.
14     The NEPA requires that Environmental Impact
15 Statements be prepared before undertaking "major federal
16 actions significantly affecting the quality of human
17 environment." 42 U.S.C. Section 4332(c). The FAA had not
18 provided an Environmental Impact Statement under NEPA because
19 the FAA determined that the Trenton Airport fit within the
20 "categorical exclusion provisions of NEPA." In light of those
21 contentions, the facts are presented below.
22     In 2006, BRRAM and Lower Makefield Township filed
23 suit against the FAA in the Third Circuit. While the suit was
24 pending in 2008, after 10 years of attempting to expand the
25 Trenton Airport to accommodate a low fare/high frequency air

```
00:07


00:08



00:08




00:09



00:10
```

1  carrier, Mercer County officials abandoned its expansion plan
2  and advised the FAA of same.  At that time, and in response,
3  the FAA "withdrew the Finding of No Significant Impact/Record
4  of Decision" (FONSI/ROD) that was originally filed on February
5  23, 2006.  Within the withdrawal, the regional administrator
6  noted that an environmental assessment was undertaken, and the
7  FAA issued a FONSI/ROD approving the airport's sponsor's
8  preferred alternative.  The administrator further noted that
9  such an assessment remains valid for three years, and three
10 years was nearing expiration.  As such, the Trenton Airport
11 "EA would need to be reevaluated at the very least to ensure
12 that the environmental analyses are accurate, valid, adequate
13 and current."  Under the signature of the administrator, the
14 administrator noted that the withdrawal was a final action or
15 decision.  It states:
16         "This decision is taken pursuant to 49 U.S.C. Section
17     40101, et seq. (Part A) and 49 U.S.C. Section 47101, et
18     seq. (Part B), and constitutes a final order of the
19     administrator which is subject to review by the Courts of
20     Appeals by the United States in accordance with the
21     provisions of 49 U.S.C. Section 46110."
22         The filing of this withdrawal also ended the lawsuit
23 that was pending in the Third Circuit, and terminated any
24 judicial proceedings on the expansion of the Trenton Airport.
25         From that date there were no other reportable events

```
00:11
00:12
00:13
00:14
00:15
```

1  with regard to the parties until September 19, 2012. On that
2  date Frontier, by way of a letter from Jim Colburn, notified
3  the FAA (Dale Snider) of its intent to utilize Trenton
4  Airport. And Frontier sought an amendment "to add Trenton,
5  New Jersey to the Frontier Airlines operations specifications
6  CO7O airports as a regular (R) and alternative (A) airport."
7  The letter that Mr. Colburn of Frontier sent was brief. First
8  it indicated that the subject matter as scheduled air bus
9  service from TTN (TTN being Trenton). Then the body of the
10 letter indicates "that Frontier Airlines intends to begin
11 scheduled service from Trenton, New Jersey (TTN). Service is
12 scheduled to begin on November 16, 2012 utilizing the airbus
13 A320 Series aircraft." The letter only refers to two flights
14 per week, but below that Frontier Airlines requested to add
15 Trenton, New Jersey (TTN) to the Frontier Airlines operations
16 specifications, CO7O airports as a regular (R) and alternative
17 (A) airport.
18         About a week later, on September 25, 2012, Dale
19 Snider, Principal Operations Inspector of FAA, approved
20 Frontier's operations specifications. That approval was
21 printed on the letterhead of U.S. Department of
22 Transportation, Federal Aviation Administration; and refers to
23 the operations specifications. Below that reference there are
24 several paragraphs wherein it reads: The certificate holder
25 (Frontier) applies for operations specifications to add

1  Trenton as a regular and alternative airport, and these
2  operations specifications are approved by direction of the
3  administrator.
4         Within the FAA's submission there is a certification
5  of Bruce A. Montigny, Manager of Flight Standard District
6  Office of the FAA, who overseas Frontier's air carrier's
7  certificate.  Mr. Montigny certified that Frontier's amendment
8  to add Trenton is a final decision of the FAA.  Montigny
9  states in paragraph 11 of his certification:
10       "On September 25, 2012, after determining that
11    Frontier could safely provide regular scheduled service
12    at Trenton-Mercer County Airport, the FAA approved that
13    amendment to Frontier's OpSpecs to include
14    Trenton-Mercer County Airport.  Exhibit B to this
15    declaration Frontier Airlines operations specifications
16    C070 dated September 25, 2012 reflects this decision.
17    Once Frontier's OpSpecs were approved to permit it to
18    operate at Trenton-Mercer County Airport, Frontier
19    required no further approval with respect to service at
20    Trenton-Mercer County Airport.  Frontier is free to
21    determine which other airports approved in its OpSpecs
22    it will serve from Trenton-Mercer County Airport, as well
23    as the number of flights it will provide.  These matters
24    are business decisions made by the carrier without FAA
25    involvement."

|  |  |
|---|---|
| | 1   My review of this request and approval of the |
| | 2   operations specifications of Frontier raises certain concerns, |
| | 3   which I note below. First, there's nothing in the approval of |
| | 4   the FAA about the waiving of the environmental assessment on |
| 00:20 | 5   the basis of a categorical exclusion; second, the approval |
| | 6   does not note that it is a final decision of the FAA, although |
| | 7   it does acknowledge that approval was by the administrator of |
| | 8   the FAA; third, it is uncertain whether Dale Snider, who was |
| | 9   an inspector, has the authority over environmental matters so |
| 00:21 | 10  as to conclude that an environmental assessment may be |
| | 11  categorically excluded. And lastly, it remains unclear |
| | 12  whether the approval of the OpSpecs was communicated publicly, |
| | 13  i.e., to others beyond Frontier. |
| | 14  Sometime thereafter, on April 24, 2013, Mr. Potter, |
| 00:22 | 15  attorney for the plaintiffs, wrote a letter to Carmine Gallo, |
| | 16  the FAA regional director. Mr. Potter's letter acknowledged |
| | 17  the jurisdiction of the Third Circuit. He wrote: "You may |
| | 18  also recall that in 2006 BRRAM joined with the board of |
| | 19  supervisors of the Township of Lower Makefield in filing suit |
| 00:23 | 20  in the Third Circuit Court of Appeals against the United |
| | 21  States Federal Aviation Administration. The basis for the |
| | 22  2006 suit was the FAA's failure to prepare an Environmental |
| | 23  Impact Statement (EIS), as required by FAA Order 1050D, and |
| | 24  the National Environmental Policy Act (NEPA), 42 U.S.C. |
| 00:23 | 25  Section 4321, et seq., including specifically a 'part 150' |

1  noise capability study, prior to granting Trenton-Mercer
2  Airport approval to construct a new and enlarged passenger
3  terminal intended for the purposes of attracting Southwest
4  Airlines as a 'low fare/high frequency' commercial air carrier
5  at the airport."
6        The substance of the FONSI/ROD discussed earlier,
7  and Mr. Potter's understanding of the jurisdictional issues,
8  demonstrates that Potter knew that an appeal must ordinarily
9  be filed in the Third Circuit rather than at the district
10 court.
11       On May 28, 2013, the regional administrator's office
12 replied to Mr. Potter's April letter.  The letter has several
13 major points.  First, it notes an amendment to Frontier's
14 operations specification is a major federal action.  The
15 letter states: "At the time Frontier's OpSpecs were amended to
16 add Trenton Airport, the FAA believed that the approval was
17 subject to a categorical exclusion."  The letter further
18 stated: "While the FAA is not required to complete a NEPA
19 analysis for the additional flights, we understand the
20 community's concerns surrounding operations at Trenton
21 Airport, and we are willing to undertake a noise analysis to
22 determine if mitigation is necessary.  We expect that we will
23 be able to provide you with those results sometime in mid
24 August of this year."
25       The reply is curious because the FAA does not state

1  the date of the approval of the categorical exclusion, and it
2  only acknowledges that "the FAA believed" that the approval of
3  the categorical exclusion occurred in September, but the
4  letter does not state who, when or why the FAA had such a
5  "belief" -- nor does it state that any public communication
6  notifying the public of the categorical exclusion decision had
7  occurred.
8          Lastly, the FAA's reply breathes life into
9  plaintiffs' contention that an EIS of some kind may be in the
10 offing.  The Court notes that the FAA determined it would
11 present such evidence by mid August -- which is after the 60
12 days permitted for plaintiffs to appeal. Coincidentally, at
13 oral argument the FAA acknowledged that no environmental
14 impact statement was ever undertaken; and such decision or
15 omission not to undertake an environmental assessment was
16 never communicated to the plaintiffs.
17         Motion to dismiss.  Pursuant to Rule 12(b)(1) the
18 court must dismiss a complaint in whole or in part if the
19 plaintiff fails to establish that the court has jurisdiction
20 over the claim.  Plaintiffs, as the party asserting
21 jurisdiction, "bears the burden of showing that the case is
22 properly before the court at all stages of the litigation."
23 The *Packard* case, 994 F.2d 1039, 1045 (3d. Cir. 1993).
24 Challenges to jurisdiction under Rule 12(b)(1) may be either
25 facial or factual.  That's *Petruska v. Gannon*, 462 F.3d 294,

302, note 3 (3d. Cir. 2006)(cert. denied 550 U.S. 903 (2007)).

A facial attack challenges the sufficiency of the pleading and the trial court "must consider the allegations of the complaint as true." However, a factual attack of plaintiff's allegations are afforded no presumption of truthfulness, and the trial court may review the evidence outside the pleadings. That's *Gould v. United States*, 220 F.3d 169, 176 (3d. Cir. 2000).

In looking at subject matter jurisdiction, the FAA filed a motion to dismiss pursuant to Rules 12(b)(1) and 12(b)(6). The FAA argues that the Court lacks subject matter jurisdiction over plaintiffs' claims because the Courts of Appeal have exclusive jurisdiction to review final orders of the FAA. And the FAA also argues that even if this Court had subject matter jurisdiction, plaintiffs' claims would be barred and dismissed under Rule 12(b)(6) because the claim was filed untimely. I do not reach the 12(b)(6) decision.

Congress has vested the Federal Courts of Appeal with exclusive jurisdiction over FAA orders. Specifically, 49 U.S.C. Section 46110(a) provides in pertinent part:

> "A person disclosing a substantial interest in an order issued by...the Administrator of the Federal Aviation Administration with respect to aviation duties and powers designated to be carried out by the Administrator...may apply for review of the order by filing a petition for

```
 1         review in the United States Court of Appeals for the
 2         District of Columbia Circuit, or in the Court of Appeals
 3         in the United States for the circuit in which the
 4         plaintiff resides or has its principal place of
 5         business."  49 U.S.C. Section 46110(a).
 6              The statute further provides that the appellate
 7  court "has exclusive jurisdiction to affirm, amend, modify, or
 8  set aside any part of the order, and may order...further
 9  [administrative] proceedings."  49 U.S.C. 46110(c).  See also,
10  Bellocchio v. N.J. Department of Environmental Protection, 16
11  F.Supp.3d 367, 375 (D.N.J. 2014).  In that case it was held
12  that challenges to FAA orders pertaining to NEPA actions vest
13  exclusively with the U.S. Court of Appeals.  The FAA argues
14  that plaintiffs are appealing the September 25, 2012 approval,
15  or the May 28, 2013 response from the FAA to Potter:  One
16  cannot actually determine when the categorical exclusion
17  decision was made by the FAA.  It is difficult to conceive
18  that an inspector would have that authority in September of
19  2012.  Moreover, the fact that the FAA asserts that it
20  "believed" the exclusion applied does not sound as if it was a
21  final decision.  However, the facts show that a final decision
22  occurred over this longer period of time.  That is, there are
23  a large number of flights that are entering the air space, and
24  the FAA has washed its hands of any responsibility for
25  oversight over Trenton Airport operations.  As such, this
```

1  appears to be the kind of case which Congress empowered the
2  Circuit Courts to handle; that is, the FAA order being
3  challenged by the plaintiffs is the FAA's September 25, 2012
4  order amending Frontier OpSpecs which authorizes Frontier to
5  provide commercial passenger service in and out of Trenton
6  Airport.  Federal regulations empower the FAA Administrator to
7  amend the carrier's OpSpecs (14 CFR Section 119.51(A)).  Thus,
8  it would allow for an OpSpecs amendment as one of the
9  "aviation duties and powers designated to be carried out by
10 the FAA Administrator"  referenced in Section 4110(a).
11            Even if the September 25, 2012 letter is deemed not
12 to be final, then the May 2013 reply letter from the regional
13 manager of FAA gives notice to the plaintiffs of the so-called
14 categorical exclusion decision.  As such, under Section
15 4110(a) review of the FAA's letter would still lie with the
16 Court of Appeals under 49 U.S.C. Section 46110(A).  See also,
17 *Sierra Club v. Department of Transportation*, 753 F.2d 120, 121
18 (D.C. Cir. 1985).  See also, *Fleming v. United States
19 Department of Transportation*, 348 Fed. App'x 736 at 737 (3d.
20 Cir. 2009).
21            It's noteworthy that an agency letter can sometimes
22 constitute an agency order.  For example, the Third Circuit
23 has held that FAA correspondence may provide an adequate
24 record for judicial review under 49 U.S.C. Section 46110(a).
25 See, *Aerosource v. Slater*, 142 F.3d 572, 578, note 10 (3d.

1  Cir. 1998).  In *Aerosource,* there was a finding that an FAA
2  letter could serve as a final order.  Thus, an FAA order "need
3  not be a formal order, the product of a formal decision-making
4  process, or be issued personally by the FAA administrator."
5  *Id.*
6          At the heart of this lawsuit, the lawsuit challenges
7  the order of the FAA that amended Frontier's OpSpecs, but
8  failed to decide, as best this Court can tell, the EIS issue.
9  As such, under 46110(a) the Court of Appeals has exclusive
10 jurisdiction over this suit to the extent there is a dispute
11 over the meaning of the FAA's order, or whether the FAA met
12 its obligations under NEPA in categorically excluding any
13 environmental assessment.  Approval of Frontier's OpSpecs is a
14 decision that falls within the provisions of Section 46110(a),
15 because that section provides that review of the orders of FAA
16 falls squarely within the exclusive jurisdiction of the
17 Circuit Courts.  As such, when one looks at all the facts,
18 this is a case for the Circuit Courts to decide.  Despite the
19 fact that the decision-making of the FAA may have been
20 somewhat ambiguous, it still yields sufficient notice to the
21 plaintiffs that any appeal or review of an FAA decision should
22 proceed before the Circuit Courts.  As such, the complaint is
23 dismissed with prejudice.
24
25