1                    UNITED STATES DISTRICT COURT
                     DISTRICT OF NEW JERSEY
2


3
_____
4  BRRAM, INC., et al,
                     PLAINTIFFS
5
       Vs.                            CIVIL NO.
6                                     14-2686 (PGS)
   UNITED STATES FEDERAL AVIATION
7  ADMINISTRATION, et al,
                     DEFENDANTS
8  _____


9


10                            **MAY 8, 2015**
                              CLARKSON S. FISHER COURTHOUSE
11                            402 EAST STATE STREET
                              TRENTON, NEW JERSEY  08608
12


13


14  B E F O R E:      THE HONORABLE PETER G. SHERIDAN
                      U.S. DISTRICT COURT JUDGE
15                    DISTRICT OF NEW JERSEY


16


17


18


19
    **HEARING ON MOTION TO DISMISS**
20


21


22
                              Certified as true and correct as required
23                            by Title 28, U.S.C. Section 753
                              /S/ Francis J. Gable
24                            FRANCIS J. GABLE, C.S.R., R.M.R.
                              OFFICIAL U.S. REPORTER
25                            (856) 889-4761


                    *United States District Court*
                      *Trenton, New Jersey*

1  A P P E A R A N C E S:

2

          POTTER AND DICKSON
3         BY:  R. WILLIAM POTTER, ESQUIRE
               PETER D. DICKSON, ESQUIRE
4         FOR THE PLAINTIFFS

5

          PAUL J. FISHMAN, U.S. ATTORNEY
6         BY:  J. ANDREW RUYMANN, ESQUIRE
          ASSISTANT U.S. ATTORNEY
7         FOR THE FAA

8

          FEDERAL AVIATION ADMINISTRATION
9         BY:  MARY M. McCARTHY, ESQUIRE
          DEPUTY REGIONAL COUNSEL
10        FOR THE FAA

11
   ALSO PRESENT:  PAUL R. ADEZIO, ESQUIRE
12                DEPUTY COUNTY COUNSEL
                  MERCER COUNTY, NJ
13

14

15

16

17

18

19

20

21

22

23

24

25

1        THE COURT:  This is BRRAM versus FAA.  Can we enter

2  appearances, please?  We'll start with the plaintiffs first.

3        MR. POTTER:  Good afternoon, your Honor.  I'm Bill

4  Potter with the law firm of Potter and Dickson in Princeton,

00:00    5  New Jersey, as your Honor well knows.

6        THE COURT:  I well know.  Good to see you, Mr.

7  Potter.

8        MR. POTTER:  And this is Peter Dickson, my law

9  partner.

00:00   10        THE COURT:  Good to see you Mr. Potter.

11        Mr. Dickson.

12        MR. DICKSON:  Yes, your Honor.

13        THE COURT:  Good afternoon.

14        And for the Government?

00:00   15        MR. RUYMANN:  Good afternoon, your Honor, Andy

16  Ruymann, Assistant U.S. Attorney, for the FAA.  And present

17  with me is Mary McCarthy, Deputy Regional Counsel for the FAA.

18        THE COURT:  Good afternoon, Mr. Ruymann and Ms.

19  McCarthy.

00:00   20        Mr. Potter, it's your motion.

21        MR. POTTER:  Thank you, your Honor.  I just wanted

22  to point out a couple of things as we get started.  This

23  lawsuit is not about a challenge to any action taken by the

24  FAA, it's rather to the inaction and failure to act of the FAA

00:01   25  with respect to the -- what I've refer to as exponential

1  increase in the number of flights being conducted by Frontier

2  Airlines out of Trenton-Mercer Airport.  So I just want to

3  make that clear at the very outset.

4          I'd also like point out that the BRRAM, Bucks

00:01  5  Residents for Responsibile Airport Management, is also -- also

6  includes 11 named individuals, eight of whom are residents of

7  Bucks County and three are residents of Mercer County here in

8  New Jersey.

9          We also in the amended complaint seek leave to add

00:01  10  three municipalities in Pennsylvania to the co-plaintiffs'

11  list, Lower Makefield Township, Upper Makefield Township and

12  Yardley Borough.

13          THE COURT:  I think we should -- if you're trying to

14  figure out how much time to devote to each motion, the Court

00:01  15  will handle the jurisdictional ones first.  I think they're

16  the most substantive here.

17          MR. POTTER:  Okay.  Well, we have addressed the

18  jurisdictional issue, both in our brief and in our complaint.

19  And it's our position that the district court has proper

00:02  20  jurisdiction to review nonaction by a federal agency with

21  respect to a clear duty to comply with the statute in

22  question, which is the National Environmental Policy Act, with

23  respect to filing a submission of an environmental impact

24  statement.

00:02  25          THE COURT:  Well, the Government argues that they

1  answered some type of letter that came in from the FAA, and

2  then they indicated that there was an exception to the rule

3  under certain circumstances; right?  So, they didn't need to

4  go through the environmental assessment program or procedures.

00:03  5          MR. POTTER:  Well, your Honor, there's a certain --

6  we're a bit like ships passing in the night, the Government

7  and my clients.  The Government is arguing that the September

8  25th, 2012 Operational Specifications Amendment approval,

9  granted unlimited authority to Frontier Airlines to expand

00:03  10  flight operations at Trenton-Mercer Airport.  There is nothing

11  in the text of that decision which would support such a I

12  think absurd and ridiculous extension of service at the

13  Trenton-Mercer Airport.

14          It was specifically limited to two flights per week,

00:03  15  both on a Friday in the daytime, and since then Frontier has

16  taken that very limited approval from the FAA and has expanded

17  into approximately 60 flights per week over my clients' homes,

18  schools, businesses, recreation areas and so forth.  And we

19  submitted affidavits from 36 of these people attesting to the

00:03  20  injury that they are suffering.

21          THE COURT:  You know, I'm not quibbling with your

22  facts, Mr. Potter, but if you thought there was a need for an

23  environmental assessment, wouldn't you make that request to

24  the FAA, and then they would issue you some kind of final

00:04  25  ruling as to whether or not an environmental assessment was

1    required?

2             MR. POTTER:  Well, your Honor, we submitted letters

3    to the FAA in 2013, and -- first in April and then in October,

4    requesting exactly that.  And we -- the answer we got back

00:04    5    from the first letter was that we didn't have to do an

6    environmental assessment of the OpSpecs amendment.  But since

7    that time we've seen the Operations Specifications Amendment

8    and we see that it is properly the subject of a categorical

9    exclusion, because there are two only flights two per week

00:04   10    listed in the request from Frontier Airlines, whereas now

11    there's 60 or more flights per week.  So none that has been

12    examined by the FAA for environmental or even safety issues.

13             THE COURT:  But wouldn't those letters and the

14    response that you received from the FAA be a final decision of

00:05   15    the FAA?

16             MR. POTTER:  Well, your Honor, the exception to the

17    general jurisdiction of this Court provides that an order must

18    be a final order, and it must be issued to the public.  This

19    is based upon a couple of decisions for the Court construing

00:05   20    the relevant statute.  There has never been any publication of

21    the 20 -- September 25, 2012 Operations Specifications

22    Amendment approval.  It has never happened, and we only found

23    out what it said when the FAA's attorney submitted it as an

24    exhibit to their motion -- their brief in support of their

00:05   25    motion to dismiss.

*United States District Court*
*Trenton, New Jersey*

1       Up until that time we assumed there must be some

2  kind of time decision, which is called a Record of Decision or

3  ROD, and a Finding of No Significant Impact or FONSI, but

4  nothing of that sort has ever been issued.

00:05      5       THE COURT:  And where were those decisions be

6  published, in the --

7       MR. POTTER:  Well, they could be published in the

8  Federal Register, they could be published in the FAA's

9  website, they could be published locally here in New Jersey

00:06     10  and Pennsylvania, but there was no publication of it.

11       In any event, your Honor, let's take a look at what

12  actually was requested.  On September 19, 2012 Mr. Colburn for

13  Frontier Airlines submitted an e-mail to Mr. Snider asking for

14  permission to add Trenton-Mercer to the list of airports

00:06     15  operating in by Frontier Airlines.  And they asked for

16  specific approval for the scheduled service, that's the exact

17  term, and the scheduled service was two flights per week.  So,

18  even if that had been made public we would have not had any

19  basis for challenging it, because it's too insignificant.

00:06     20       Now, the Government argues that notwithstanding the

21  limitation of two flights per week, it has somehow morphed or

22  transformed itself into a license to operate as many flights

23  as they wish, without any further FAA review or involvement.

24  And that's an exact quote from Mr. Montigney in the exhibit

00:07     25  provided by the FAA.  I think that is a very worrisome

1   position, your Honor, and it's contrary to the case law as

2   well.  And we've provided you with several cases showing

3   that --

4              THE COURT:  So why isn't that --

00:07   5              MR. POTTER:  -- the district court has jurisdiction

6   over nonaction.

7              THE COURT:  There was a letter from Mr. Montigney;

8   right?

9              MR. POTTER:  No, there was -- it was a

00:07   10  certification.

11             THE COURT:  A certification, all right.  So he never

12  made any type of decision on that basis, did he?

13             MR. POTTER:  There was no -- that is correct, your

14  Honor.  The September 25th approval from the FAA, which

00:07   15  appeared only three business days after the request was made,

16  said nothing about expansion beyond two flights per week.

17  Your Honor, there is no order -- there is no action to comply

18  with NEPA, National Environmental Policy Act, with respect to

19  the expansion of service.  And that's why we filed our amended

00:08   20  complaint, your Honor, was to clarify that we were not

21  challenging that particular September 25th, 2012 OpSpecs

22  approval, we're challenging the nonaction of the FAA, their

23  failure to do anything with respect to the rapid expansion of

24  service at Trenton-Mercer Airport.

00:08   25             THE COURT:  The real issue that's before me, at

1   least the way I look at it, is whether or not you should be in

2   the Third Circuit, or whether you should be able to bring a

3   suit here in district court; right?  The statute seems to

4   discuss a final action by the FAA.  So, I'm trying to ask you

00:08   5   questions about well, was there a final action.

6          MR. POTTER:  I don't think there was, your Honor.

7          THE COURT:  So, then if there wasn't a final action,

8   then why isn't there just an administrative proceeding?

9          MR. POTTER:  Well, I -- one remedy that your Honor

00:09   10   could impose would be a remand to the FAA for purposes of

11   compiling a record of decision on the environmental impacts of

12   the expansion by Frontier Airlines, I think that is a

13   possibility.  The Court would have to retain jurisdiction in

14   order to issue that order, however.  So we're back to the same

00:09   15   issue, was there a final order issued to the public, and the

16   D.C. Circuit in 2011 in the Aviva -- *Avia Dynamics* case held

17   that there is no final order until it is publicly issued, that

18   issued means publication to the affected and interested

19   public.

00:09   20          I hate to keep repeating myself, but your Honor,

21   there is no ruling, no opinion, no record decision with

22   respect to the expansion.  And that's what we want to have

23   reviewed for purposes of the National Environmental Policy

24   Act.

00:09   25          THE COURT:  Well, you do agree there was this letter

1    on the OpSpecs issue or something to Mr. -- was it Mr. Snider?

2         MR. POTTER:  Mr. Snider.

3         THE COURT:  But what you're saying is that Frontier

4    sent in a letter to the FAA and the FAA answered by letter,

5    and the response by the FAA was not ever publicly noticed to

6    anybody.

7         MR. POTTER:  That's correct.

8         THE COURT:  So, then your clients didn't know about

9    the approval of the Frontier application until all the flights

10   started; is that what happened?

11        MR. POTTER:  Well, we didn't know about this

12   particular OpSpecs amendment until August 18th, 2014 when it

13   was attached to the brief filed by the U.S. Attorney's Office.

14        THE COURT:  Oh.

15        MR. POTTER:  And it has to be -- for it to be a

16   final order, your Honor, it must be published in a manner

17   intended to reach those who are most affected by it.  And

18   that's the D.C. Circuit decision in 2011.

19        THE COURT:  So, when you initiated this lawsuit, you

20   didn't think there was any final decision.

21        MR. POTTER:  That's correct.

22        THE COURT:  So, you just thought Frontier started up

23   without any approval?

24        MR. POTTER:  Well, we assumed there was some kind of

25   approval, but we didn't know what it was, your Honor.  There

1    was a letter from -- I think it was Mr. Gallo saying that

2    there was approval given, and they got a categorical

3    extension -- exclusion of the flight request by Frontier.  But

4    that was not included in his letter, and we didn't see

5    anything that said, a ha, this is the decision of the FAA

6    until August 18th, 2014 when we received the U.S. Attorney's

7    brief.

8         The courts of the United States have been very

9    consistent on this point, your Honor.  District courts have

10   jurisdiction under 33 United States Code Annotated Section

11   1331, or the Administrative Procedures Act, or under NEPA

12   itself, 1022c of the National Environmental Policy Act,

13   district courts have jurisdiction to order an agency to

14   prepare an EIS, or at least to commence the process.

15        Now, one of the interesting things I'd like to point

16   out is that in 2008 the FAA issued a formal record of decision

17   in which they stated that if Trenton-Mercer Airport were to

18   attract a high frequency air carrier, this would cause

19   sufficient noise impacts that an EIS would be required.  That

20   was from the FAA.  And we reminded the FAA of this pledge in a

21   couple of letters submitted in 2013.  We got no response the

22   second time when we actually asked for something else which

23   was a noise study, which they had said they were doing.  That

24   was supposed to have been issued in August 2013, but it has

25   never been publicized -- I have no idea what's happened to

1   this noise study.

2         THE COURT:  So, you don't even know if the noise

3   study was conducted.

4         MR. POTTER:  That's correct.

00:12   5         THE COURT:  All right.  Do you have any other points

6   Mr. Potter, on that motion?

7         MR. POTTER:  Well, very briefly, your Honor.  In

8   looking at the briefs filed by the U.S. Attorney's Office,

9   literally every case they cited for the proposition that this

00:13   10  belongs in the Court of Appeals, dealt with an action by the

11  FAA to do an environmental impact statement or an

12  environmental assessment or some formal decision which

13  involved compliance with the National Environmental Policy

14  Act.  Every one was that sort of a case, including *Bellocchio*

00:13   15  *v. NJDEP* decided by this court just last year.

16        There the chief judge of the court held that a

17  challenge to an environmental impact statement belongs in the

18  Court of Appeals.  We agree, your Honor, but there is no

19  environmental impact statement, no environmental analysis, nor

00:13   20  is there any -- even a document that says this is a

21  categorical exclusion.  We're living in era, your Honor, where

22  the FAA has basically advocated its responsibility with

23  respect to an unregulated expansion of flights at

24  Trenton-Mercer Airport.

00:14   25        THE COURT:  So, because the letter to Mr. Snider,

1   the individual at the FAA from Frontier only said there would

2   be two flights, you're saying that would be subject to a

3   categorical exclusion because it was insignificant --

4           MR. POTTER:  That's correct, your Honor.

00:14    5           THE COURT:  -- do not individually or cumulatively

6   have a significant effect on the human environment.

7           MR. POTTER:  That's correct, your Honor.

8           THE COURT:  But you think that 47 flights do.

9           MR. POTTER:  47 flights and 62 flights and whatever

00:14   10  they have now, definitely, your Honor, it's a high frequently

11  air carrier.

12          THE COURT:  At least it would be a significant

13  difference at least in the number that would require the FAA

14  to review whether or not it can fit into the categorical

00:14   15  exclusion.

16          MR. POTTER:  I agree, your Honor.

17          THE COURT:  I was just trying to get your

18  position on it --

19          MR. POTTER:  That is my position, your Honor.  You

00:15   20  stated it beautifully.

21          THE COURT:  Thank you.

22          MR. POTTER:  One of the ironies of this is that when

23  Mercer County was first attempting to attract Southwest

24  Airlines back the late 1990s, the FAA scrupulously followed

00:15   25  the procedures in the National Environmental Policy Act.  In

**1**   November 1999 the FAA held scoping sessions to examine what

**2**   should be the scope of environmental reviews, they issued an

**3**   environmental assessment in 2002, and they listed public

**4**   comment, there were public hearings and eventually they issued

00:15   **5**   a record of decision finding no significant impact.

**6**          That was the procedure that should have been

**7**   followed in this case here.  Although we submit that it would

**8**   be a finding of significant impact, based upon the high level

**9**   of flights by Frontier Airlines.

00:15   **10**          THE COURT:  Well, why couldn't they just rely on

**11**   what they had done in the past?

**12**          MR. POTTER:  Well, that point has not been made by

**13**   the Government.  But it's a different airplane, your Honor,

**14**   and it's unlimited expansion, your Honor; all of this is

00:16   **15**   occurring right now as we speak.  And I just spoke with some

**16**   of my clients here, and they talk about flights coming in at

**17**   11 o'clock at night or 2 o'clock in the morning, and flights

**18**   departing at 6:00 a.m. in the morning waking them up.  These

**19**   are real impacts, your Honor.

00:16   **20**          And I think there's this overarching national issue

**21**   as well, which is this approach by the FAA that once they've

**22**   issued an OpSpecs amendment for an airliner to operate at an

**23**   airport, that the FAA will have no further involvement in

**24**   review of the level of operations.

00:16   **25**          THE COURT:  Well, there seems to be a statute that

**1**  says that; right?

**2**           MR. POTTER:  There's a statute that's relied upon

**3**  but it doesn't say that, your Honor.

**4**           THE COURT:  It says:  Expressly prohibits the FAA

00:16  **5**  from preventing an air carrier from adding or changing

**6**  schedules to satisfy business development and public demand.

**7**           MR. POTTER:  That's the Airline Deregulation Act of

**8**  1978.

**9**           THE COURT:  Right.

00:17  **10**           MR. POTTER:  The ADA does not repeal by implication

**11**  the National Environmental Policy Act.  The two can be

**12**  harmonized and in fact can and should be harmonized.  We in

**13**  our brief pointed out ways to harmonize the two, but I would

**14**  just point out that the Airline Deregulation Act provides for

00:17  **15**  modification of terms, that's in 41109(B)(b) modifying terms.

**16**           And I'll read to you, your Honor:  An air carrier

**17**  may file with the secretary an application to modify any term

**18**  of this certificate issued under this title to provide

**19**  interstate or foreign air transportation.  Also in subpart (A)

00:17  **20**  (2)(a) and (b), the secretary of transportation -- hold on;

**21**  I'm sorry, I'm reading the wrong section.

**22**           Okay.  If we turn to Section 4110 under (C)(2)(a);

**23**  the secretary may amend, modify or suspend any part of a

**24**  certificate if the secretary finds the public convenience and

00:18  **25**  necessity require amendment, modification or suspension, and

1    may revoke any part of a certificate if the secretary finds

2    that the holder intentionally does not comply with this

3    chapter.

4            So, your Honor, the Airline Deregulation Act

00:18    5    definitely tried to put the Government out of the business of

6    overseeing the economic impacts, the economic facets of

7    airline travel, putting that in the business hands of air

8    carriers.  However, the FAA has not -- is not prevented from

9    continuing environmental reviews or safety reviews of an air

00:19   10    carrier, and may suspend, revoke or modify based upon

11    consequence and necessity as the determined by the

12    administrator.  So the ADA -- excuse me; the Airline

13    Deregulation Act, definitely does not prevent the FAA from

14    performing their environmental duties.

00:19   15            THE COURT:  Okay.

16            MR. POTTER:  I just want to close by pointing out

17    that the FAA in their briefs have not attempted to distinguish

18    the cases that we have provided to your Honor in our briefs,

19    showing that nonaction is a subject of district court

00:19   20    jurisdiction.  This case belongs in this court because there's

21    nothing to take to the Court of Appeals; there's no underlying

22    proceedings, there's no record, there's simply an exchange of

23    -- they're not even letters actually, your Honor, they're

24    e-mails, private e-mails, never made public, never -- never

00:19   25    the subject of any review or hearing or public comment period.

1          And to now say that that exchange of e-mails

2   constituted a license for Frontier Airlines to expand to 47,

3   57, 62 or a hundred flights I think is really reading

4   something that's not there, your Honor.

00:20      5          THE COURT:  Thank you.

6          MR. POTTER:  Thank you.

7          THE COURT:  Mr. Ruymann.

8          MR. RUYMANN:  Good afternoon, your Honor.  May it

9   please the Court.  Your Honor, this case is primarily about 49

00:20     10  U.S.C. 46110.  That U.S. statute provides that when a

11  challenge by a plaintiff such as here implicates the review of

12  FAA procedures in a final FAA order, the exclusive review of

13  that challenge goes to the Courts of Appeal.

14         THE COURT:  I was looking at the papers, and

00:21     15  everywhere you said there was a final decision or order, I was

16  like what's so final about this; there was one letter that was

17  issued as best I could tell.  I couldn't figure out, did

18  anyone have any notice of this.  And if you listen to Mr.

19  Potter he says no one had notice of it.

00:21     20         So, how do you figure it's ripe for the Federal

21  Circuit under the circumstances?

22         MR. RUYMANN:  Well, our position, your Honor, is

23  that it is ripe.  It was a final order, it comports with the

24  case law as being a final order.  It wasn't --

00:22     25         THE COURT:  Well, Mr. Potter says that to have a

*United States District Court*
*Trenton, New Jersey*

1    final order it has to be published somehow.

2         MR. RUYMANN:  He's wrong.

3         THE COURT:  And there's no notice that it was

4    published anywhere; right?

00:22    5         MR. RUYMANN:  Correct, your Honor.  The -- but Mr.

6    Potter is not correct.

7         THE COURT:  Okay.

8         MR. RUYMANN:  The order was final, it doesn't need

9    to be written, it doesn't need to be published in order to be

00:22    10   final.  It just has to meet the requirements we have laid out

11   in our brief and it does.  Your Honor, the notifications to

12   the timeliness of the appeal to the Third Circuit of that

13   order.  So that's where the publication would be relevant.

14        As far as counsel's contention that it wasn't

00:22    15   published to the plaintiffs, that's completely incorrect.  And

16   that's a misstatement.  There was a letter in May of -- on May

17   28th, 2013 from the FAA to BRRAM's counsel which advised that

18   there was a categorical exclusion made, the OpSpecs amendment

19   was approved and that Frontier was permitted to increase the

00:23    20   flights as they went.

21        And that's consistent with the Airline Deregulation

22   Act.  Much of what plaintiff is complaining about here, your

23   Honor, relates to plaintiffs' dissatisfaction with the Airline

24   Deregulation Act of 1978.

00:23    25        THE COURT:  Well, Mr. Potter says that we should

1   harmonize NEPA with regard to the environmental reviews with

2   the Airline Deregulation Act; what do you think of that

3   theory?

4          MR. RUYMANN:  I think it's a red herring what

00:23    5   counsel is arguing.  In this case, your Honor, the FAA did

6   meet its NEPA requirement.  The FAA, when it made its OpSpecs

7   amendment approval decision, decided to categorically exclude.

8   That's an action under NEPA, the OpSpecs amendment approval.

9          THE COURT:  When it did that, though, according to

00:24   10   what I recall reading, it was for two flights a day; right?

11   And now we're at -- I believe it was 47, Mr. Potter says it

12   more than that now; how do you deal with that?

13          MR. RUYMANN:  Your Honor, it wasn't for two flights

14   a day and we state that in our brief, and Frontier articulated

00:24   15   that as well in their briefs to the Court.  The request for an

16   OpSpecs amendment identified two flights, it didn't say we're

17   only limiting ourselves to do these two flights.  The OpSpecs

18   amendment requested to had Trenton as a carrier on its

19   OpSpecs.

00:25   20          The FAA then approved that request for an OpSpecs

21   amendment, and per the Airline Deregulation Act Frontier was

22   then permitted, using their best business judgment under the

23   Airline Deregulation Act to increase the flights.  And they've

24   done that.  The OpSpecs amendment request was not limited to

00:25   25   two, and FAA never, notwithstanding counsel's incorrect

1    assertions, limited it to two flights per week.

2          THE COURT:  So, at the time that you received that

3    letter from Frontier -- Mr. Snider?  The letter came in in

4    September, I forget what year, in the middle of September, and

00:26    5    then the response from the FAA occurred within a week of that

6    or a week later; isn't that right?

7          MR. RUYMANN:  That's correct, your Honor.

8          THE COURT:  So, I know that, you know, there's no

9    red tape in the FAA or whatnot, but there was a very speedy

00:26    10    response to an inquiry of that nature.  So, do you think the

11    FAA understood the broadness of the application at that time?

12          MR. RUYMANN:  I'm confident the FAA understood what

13    they were doing.  The FAA deals with OpSpecs amendment

14    requests all the time, they handled this OpSpecs amendment

00:26    15    request within the normal course, they decided that it would

16    be categorically excluded, that was a NEPA action, they

17    fulfilled their NEPA requirement.

18          Plaintiffs may not like the categorical exclusion

19    decision by the FAA, but that's what they decided.  And their

00:27    20    beef on this should be taken to the Circuit, because it was a

21    final order in granting approval of those OpSpecs amendments.

22    And under 49 U.S.C. 46110 their exclusive right of review on

23    this is to the Third Circuit, or the D.C. Circuit Court of

24    Appeals, your Honor.

00:27    25          THE COURT:  So if I determine -- I'm not saying one

*United States District Court*
*Trenton, New Jersey*

1    way or the other, but if I determine it's not a final order,

2    what happens?  Or what remedy do I issue?

3              MR. RUYMANN:  If it's not a final order, your Honor,

4    if that's your determination -- well, we would certainly argue

00:27    5    it is a final order, for the reasons we lay out in our brief,

6    and I'll get to those in a second.  I'm not sure what the next

7    step would be, your Honor, if you determine that it's not a

8    final order.  I think the --

9              THE COURT:  I guess you could appeal.  But I meant

00:28    10   in terms of entering an order of relief, I would have to say

11   it's not a final order; so should I compel the FAA to review

12   or issue a final order?  I don't know what I would be

13   requiring them to do.  I don't see how I require them to do an

14   impact statement if they believe it falls within that

00:28    15   conspicuous categorical exclusion.

16             MR. RUYMANN:  Well, your Honor, they've raised a

17   NEPA challenge in the context of this final order, and the

18   review of that NEPA challenge would implicate -- implicates

19   the final order of the -- of the OpSpecs amendment approval.

00:28    20   And the exclusive right of review for that goes to the Court

21   of Appeals.  That's been approved by Judge Simandle in the

22   *Bellocchio* decision, and it was recently affirmed by

23   *Bellocchio* after briefing was closed in this case by the Third

24   Circuit in the March 2015 opinion from the Third Circuit.

00:29    25   It's consistent with *Fleming* from the Third Circuit.

*United States District Court*
*Trenton, New Jersey*

1          So, all of those cases, including the many other
2   cases cited in the brief, confirm that the exclusive review of
3   this final order is with a FAA -- pardon me; it's with the
4   Court of Appeals, your Honor.
5          As far as whether or not it was a final order, our
6   motion to dismiss brief, which I'll refer to, talks about the
7   analysis that is employed in determining whether or not it's a
8   final order.  And the Third Circuit Court of Appeals has
9   considered the following five factors in assessing finality:
10  One, whether the decision represents the agency's definitive
11  position on the question; in this case it does.  Two, whether
12  the decision has a status of law with the expectation of
13  immediate compliance; that's clear in this case, that the
14  approval of the OpSpecs amendment request does.
15         Three, whether the decision has immediate impact on
16  the day-to-day operations of the party seeking review; it did,
17  after the approval of the OpSpecs amendment request, Frontier
18  could then continue to service Trenton to and from.  Four,
19  whether the decision involves a pure question of law that does
20  not require further factual development; it didn't require
21  further factual development.  Five, whether immediate judicial
22  review would speed enforcement of the relevant act; the
23  plaintiffs could seek judicial review of that, and they were
24  put on notice in -- on May 28th, 2013, when they received a
25  letter from the FAA advising them of the categorical exclusion

1  decision, the amendment -- the approval of the OpSpecs

2  amendment request, and advised that Frontier could service

3  Trenton in increased flights.

4        So plaintiff is on -- plaintiffs were on notice.

5  Any notion that plaintiffs' counsel has advanced that they

6  weren't on notice is completely false.  Yet they waited until

7  almost a year later to file suit.  They're untimely, your

8  Honor.  Under 46110 of 49 U.S.C., the plaintiff who's

9  challenging an order has to file suit within 60 days.

10        Now, granted the plaintiffs didn't know about, it

11  would appear, the amendment to the OpSpecs on September 25th,

12  2012 when it occurred, but they certainly knew about it on May

13  28th, 2013 when their counsel was advised by FAA.  Yet, they

14  waited a long time, far beyond 60 days, to file their

15  complaint.

16        *Bellocchio*, Judge Simandle's decision in this court,

17  earlier last year, upheld the dismissal of a challenge that

18  was beyond 60 days.  The Third Circuit in a footnote affirmed

19  that, affirmed the *Bellocchio* decision on the basis of lack of

20  jurisdiction, and in the footnote it stated that they also

21  affirmed for untimeliness.

22        In this case, there's no fact, no case, that would

23  support this Court having jurisdiction over plaintiffs'

24  complaint or their amended complaint.  Their complaint and

25  their amended complaint, regardless of the characterization

00:31
00:31
00:32
00:32
00:33

1    advanced by plaintiffs' counsel --

2             THE COURT:  In the May 28th letter, was there a

3    statement that the FAA may undertake noise analysis, and

4    determine if mitigation is necessary?

00:33    5             MR. RUYMANN:  Yes, there was, your Honor.

6             THE COURT:  So, what happened with that?

7             MR. RUYMANN:  No noise analysis was done by the FAA.

8             THE COURT:  So, if you're looking at that May 28th

9    letter as the final order, it looks like it was subject to

00:33    10   something, you know.  It doesn't really make it final, it says

11   we're willing to undertake a noise analysis, and to determine

12   if mitigation is necessary; and I think it indicated you would

13   have a result by August of 2013.

14            MR. RUYMANN:  Correct, your Honor.  It stated that

00:34    15   they would be willing to undertake noise analysis.  It wasn't

16   -- it wasn't a promise, your Honor, that they were going to do

17   it, it didn't make -- it wasn't something that would lead this

18   Court to have jurisdiction over the FAA's decision to approve

19   the amendment to the OpSpecs.  If anything -- if anything --

00:34    20   I'm sorry, your Honor.

21            THE COURT:  No, go ahead.

22            MR. RUYMANN:  If anything, those couple of sentences

23   in the May 28th, 2013 letter could be viewed as going to the

24   timeliness of plaintiffs' complaint.  It does nothing as to

00:34    25   jurisdiction, your Honor.

1          THE COURT:  Well, you would think that the final

2    decision would come after you had the noise impact.

3          MR. RUYMANN:  Well, the final --

4          THE COURT:  That's what it would lead me to believe

5    anyway.

6          MR. RUYMANN:  Your Honor, the final decision was the

7    approval of the OpSpecs amendment request.  That's -- that is

8    the final decision.  That is the final order that would be

9    implicated in plaintiffs' challenge.

10          THE COURT:  Well, don't you think this issue about

11   doing noise analysis would be misleading to the public?

12          MR. RUYMANN:  Plaintiffs could certainly argue that.

13   And your Honor, if they were mislead by that that would go to

14   the timeliness of their complaint, it doesn't go to whether or

15   not this Court has jurisdiction.  That's an issue that

16   plaintiffs could bring to the appellate court.

17          THE COURT:  So, the timeliness looks like it's a

18   reasonableness test, right, what did they do know, so when did

19   it start; so how does the Third Circuit deal with that?  They

20   have no fact finding ability.  They have to collect affidavits

21   from everybody and then make an analysis on a factual basis?

22   It's kind of better to do that type of determination here in

23   district court where we have witnesses all the time.

24          MR. RUYMANN:  Your Honor, where that runs up against

25   a wall is the exclusive review provision of 49 U.S.C. 46110,

1  which states when an FAA order is implicated in a challenge

2  raised by a plaintiff, the exclusive review of that matter

3  goes to the Circuit.  So, it's a matter then for the Circuit

4  to be concerned with, not necessarily this Court.  This Court

00:36      5  doesn't have jurisdiction.

6          THE COURT:  I don't know about federal agencies; you

7  know, I probably should, but I haven't had a case like that

8  while I've been here, but I do know from my practice before I

9  came on to the bench I had a number of cases dealing with

00:37      10  administrative agencies in the State of New Jersey, and the

11  usual avenue of appeal from a final decision of a commissioner

12  would be to the appellate division.

13          And you used to always go through this analysis;

14  well, I need a factual basis, I need to develop a record, do I

00:37      15  go to the commissioner, or do I go to the appellate division

16  or do I go into Superior Court asking for relief because I

17  need a factual basis to make my claim.  And the only place to

18  develop that record would be in the trial court.

19          So, it's an issue that comes up from time to time,

00:38      20  and I know you've probably read a lot of administrative law

21  books and it's an issue that's discussed in those hornbooks on

22  it.  But what's happened with the FAA, when they have these

23  types of cases, you always say they go to the Circuit courts?

24          MR. RUYMANN:  Yes, your Honor.

00:38      25          THE COURT:  Really.

*United States District Court*
*Trenton, New Jersey*

1          MR. RUYMANN:  When it's a final order we have a

2    federal statute in play, that requires that it go to the Third

3    Circuit.  Or the D.C. Court of Appeals in this case.

4          THE COURT:  All right.

00:38    5          MR. RUYMANN:  And your Honor, the cases in the Third

6    Circuit support that, *Fleming*, *Bellocchio*, both in the

7    district, and also with the Court of Appeals.

8          So, as to jurisdiction, your Honor, this Court would

9    not have jurisdiction to entertain the case further, and the

00:38   10   proper place for a review of plaintiffs' challenge is in the

11   Circuit.  At the Circuit, plaintiff is certainly free to raise

12   the timeliness issue, the lack of publication, the issues that

13   your Honor's pointed out with regard to those few sentences in

14   the May 28th, 2013 letter.  But that's an issue that could be

00:39   15   addressed by the Circuit as to timeliness.

16          The FAA issued a final order when they approved the

17   OpSpecs amendment request.  That final order doesn't need to

18   be in writing, that final order doesn't need to be published

19   to be a final order, there doesn't have to be an extensive

00:39   20   record.  This decision was issued by the FAA and per the

21   federal statute, it should be reviewed if plaintiff wants it

22   reviewed at the Circuit, not in this Court.

23          THE COURT:  All right.

24          MR. RUYMANN:  If your Honor has any other questions

00:39   25   I'd be happy to entertain them.

1          THE COURT:  No, I don't have any other questions.

2          MR. RUYMANN:  Thank you, your Honor.

3          THE COURT:  Reply, Mr. Potter?

4          MR. POTTER:  Yes, briefly, your Honor.

5          Your Honor, I think we have here a -- something that

6   comes under the technical term of bait and switch.  On the one

7   hand the FAA says that the final order -- that the OpSpecs

8   amendment of 2012 is a final order that was issued and we

9   should have filed an appeal of that; your Honor, it was not

10  until August 18th, 2014 that we even saw this OpSpecs order.

11  And under *Avia Dynamics v. FAA*, the Circuit Court of Appeals

12  in Washington held that for an order to be final, it has to be

13  published in some form and have the indicia of finality.

14         There was no finality to the OpSpecs amendment, and

15  it was never issued, there was never any notice to anyone.

16  And if it -- and if we're to interpret this OpSpecs amendment

17  as providing unlimited right to expand flights into and out of

18  Trenton-Mercer Airport as the will of the owner of the air

19  carrier, then it would not subject to a categorical exclusion,

20  because it would be obviously a high frequency air carrier of

21  the sort which the FAA in 2008 formally ruled would require

22  the filing of an environmental assessment statement.

23         So, we're really passing each other on two different

24  things.  We are not challenging the FAA's OpSpecs amendment of

25  2012, because it had no significant environmental impact; two

1   flights per week, your Honor, that is all, and it was never

2   made public as well, your Honor.  What we're challenging is

3   the expansion of the number of flights, similar to *State of*

4   *Illinois ex rel. Scott v. Butterfield*, where the court said

00:41   5   that, of course the district court has authority to determine

6   whether or not an agency must comply with NEPA.

7           The cases cited by the Government all fall into the

8   category of challenges to an environmental impact statement

9   being inadequate.  That was *Bellocchio v. DEP* from 2014.

00:42   10   *Fleming* v. U.S. -- United States from the D.C. Circuit, the

11   court said that presence of an administrative record is the

12   touchstone for appeal -- of appellate review.  There is no

13   administrative record here, your Honor.  There was three

14   business days between when Frontier sought the OpSpecs

00:42   15   amendment approval, and when it came back with another e-mail

16   saying it's granted as set forth.  So --

17           THE COURT:  But you did receive this May 28th

18   letter, 2013; right?

19           MR. POTTER:  Yes, we did.

00:42   20           THE COURT:  So, how do you explain that?

21           MR. POTTER:  Well, that did not include the OpSpecs

22   amendment, your Honor.  We still didn't see the -- what was

23   actually done.

24           THE COURT:  But they did say that, you know, they

00:42   25   granted permission to Frontier to allow commercial passenger

1    service from Trenton Airport; right?

2              MR. POTTER:  Yes, your Honor, they did say that, but

3    they didn't say anything about an expansion of -- to an

4    unlimited use for a high frequency air carrier, which is what

00:43    5    we have now.  And furthermore, they said by the way, we

6    appreciate your concerns with the noise impacts, we're doing a

7    noise study that will be released in August of this year; so

8    we thought are we really going to file a lawsuit immediately

9    when we're waiting for this noise study.  I mean there was no

00:43   10    noise study and now I hear it was never done.

11              THE COURT:  This is the first time you heard that,

12    today?

13              MR. POTTER:  That it was never done?  Yeah, that's

14    the first time I heard that.

00:43   15              THE COURT:  Oh, really.

16              MR. POTTER:  Because the FAA did not respond to our

17    letter asking for a copy of the noise study.

18              THE COURT:  Oh, right, I remember.  Right.

19              MR. POTTER:  Thank you, your Honor.

00:43   20              MR. RUYMANN:  Your Honor, could be heard?  I have

21    two points, and a couple that my FAA co-counsel advised me of.

22              THE COURT:  All right.  I'm going to have to let Mr.

23    Potter respond again, you know that.

24              MR. RUYMANN:  More than happy for Mr. Potter to

00:43   25    respond.

1      THE COURT:  I have an attorney here, Mr. Adezio; I

2  know you're here from Mercer County.  I don't know whether you

3  have any position that you want to take, but I don't have any

4  problem with you making a statement if that's what you wish to

00:44      5  do.

6      MR. ADEZIO:  No statement would be made today, your

7  Honor.  I'm just observing the courtroom.

8      THE COURT:  Thank you.

9      MR. ADEZIO:  Thank you.

00:44     10      THE COURT:  You may proceed, Mr. Ruymann.

11      MR. RUYMANN:  Thank you, your Honor.  First, the

12  *Butterfield* decision that plaintiffs rely upon, does not

13  mention 49 U.S.C. 46110.  That decision was issued even before

14  the Airline Deregulation Act was passed.

00:44     15      THE COURT:  I understand that.  That's an older

16  case.

17      MR. RUYMANN:  It's an inapplicable case, your Honor.

18  Also --

19      THE COURT:  I guess we get to the same point.

00:44     20      MR. RUYMANN:  Also, your Honor, APA review requires

21  a final order.  And if the case were to go to the Circuit, an

22  administrative record would be assembled, whatever it is, and

23  would be put in front of the Third Circuit and argued.  So

24  there would be an administrative record.

00:45     25      Thank you, your Honor.

1          THE COURT:  All right, thank you.

2          Do you wish to respond, Mr. Potter?

3          MR. POTTER:  Just very briefly --

4          THE COURT:  So let's say they put together an

00:45      5  administrative record, do you think you need witnesses to

6  testify about when you received notice, things of that nature?

7          MR. POTTER:  I think that's already established as a

8  matter of record here in this courtroom.

9          THE COURT:  I don't know, but --

00:45      10         MR. POTTER:  But I think testimony is necessary in

11  this courtroom on the level of impacts from these unlimited

12  flights, and especially on what kind of mitigation measures

13  could be required.

14         THE COURT:  You don't expect me to do the

00:46      15  environmental assessment portion, do you?

16         MR. POTTER:  If your Honor wanted to do it I'd feel

17  very confident that it would be very well done, but I'm not

18  suggesting that.

19         THE COURT:  I don't think that's within my purview,

00:46      20  to tell you the truth.

21         MR. POTTER:  I understand, your Honor; nor mine.

22  But what we are asking is for this Court to issue an order to

23  the FAA to prepare an environmental impact statement, and

24  demonstrate through some kind of reasonable effort a noise

00:46      25  mitigation study, which we have been seeking -- my clients

*United States District Court*
*Trenton, New Jersey*

1   been seeking since 1999.  And in 2008 the FAA administrator

2   said that if there is a day coming when Trenton-Mercer has a

3   high frequency air carrier, we will do an environmental impact

4   statement.

00:46   5          Instead we have an exchange of e-mails over a six

6   day period, only three business days.  There's no record

7   mentioned, no findings of fact, nothing, it's just we want to

8   do two flights a week, can we have approval to do it.  And the

9   FAA responded sure, go ahead, but you're stuck with the terms

00:47   10  of your scheduled service in your OpSpecs amendment request.

11  So, there you have it, your Honor.

12          THE COURT:  Okay, thank you.

13          MR. POTTER:  Thank you.

14          THE COURT:  All right.  So --

00:47   15          MR. RUYMANN:  Your Honor, could I say one thing on

16  the published; this is an important point --

17          THE COURT:  I'm sorry, sir, I've given you -- we do

18  motions the same way.  The movant goes first, then we have the

19  reply, and I allow the movant to respond, and you've had

00:47   20  enough turns.

21          MR. RUYMANN:  Okay.

22          THE COURT:  I think we've concluded the argument for

23  the day.

24          I've read the briefs and things, and I'm going to

00:47   25  say that I was going to reserve on my decision.  Before I came

*United States District Court*
*Trenton, New Jersey*

1   out here today and I had assessed this issue, I thought there

2   were a lot of fact issues to decide, but now I have to go back

3   and determine whether or not one of these two or three letters

4   could actually be a final decision, and that would determine

5   the issue as to whether it should be here or before the Third

6   Circuit.

7        And I figured on the motion to amend the complaint,

8   generally we do jurisdiction issues first, and so I should

9   handle that, and then we'll see how that goes.  And I'll do

10  the motion to amend the complaint at a later date, based upon

11  the documents that I have from the parties at the present

12  time.  I don't think I need any further oral argument on that.

13       Any other comments with regard to this procedure?

14  It will probably take me a week or so to go through it.

15       MR. RUYMANN:  Nothing, your Honor.  Thank you for

16  your time.

17       MR. POTTER:  Thank you, your Honor, for your time

18  and for scheduling oral argument.

19       THE COURT:  I'm sorry I was late today; something

20  came up so I had to address it.  Thank you.

21       (Counsel say thank you.)

22       THE DEPUTY CLERK:  All rise.

23       (Matter concluded.)

24

25